# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:16-cv- 02981

TECH INSTRUMENTATION, INC., a Colorado corporation, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

EURTON ELECTRIC COMPANY, INC., a California corporation

        Defendant.

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**I.    INTRODUCTION**

Defendant Eurton Electric Company, Inc.'s ("Defendant" or "Eurton") Opposition to Plaintiff Tech Instrumentation, Inc.'s ("Plaintiff" or "TII") Motion for Class Certification (Dkt. 39) rests on one primary issue: the supposed need for individual inquiries into whether each Class member provided prior express permission or invitation to receive its faxes. (Def. Opp. at 10-16). Fortunately for Plaintiff and the members of the alleged Class, no individual issues predominate here. That is, Eurton, by employing its three-step process with respect to *every* class member, supposedly obtained permission from all class members using the exact same course of conduct.[1] Given this reality, the class TII seeks to certify here consists only of persons where

---

[1] As described in Plaintiff's Motion for Class Certification, Eurton's practice was to first locate businesses online that might use motors in their operations and then cold-call those businesses and ask whether the business would be interested in receiving more information. The company

1

prior express permission was supposedly obtained by Eurton using the three-step process, as follows:

> All persons in the United States who, from December 16, 2013 through the date notice is sent to the Class, received one or more faxes sent to Eurton's Tools List, where prior express permission or invitation to send the faxes was supposedly obtained by Eurton through its three-step procedure.

As such, this is not a case where consent was supposedly obtained in different ways or via different channels (notwithstanding Eurton's obtaining phone numbers, but not consent, from Google or other sources). Rather, each member of the class and Plaintiff provided prior express permission through the exact same corporate practice. In other words, this is a textbook Class action and Eurton's efforts to defeat predominance fail.

In a related argument, Eurton claims that it has somehow provided evidence of prior express permission or invitation here, such that certification would be inappropriate. (Def. Opp. at 16-18.) This too misses the mark. Aside from describing its unwritten three-step process that it (self-servingly) claims it utilized, Eurton hasn't produced a single piece of evidence suggesting that any members of the proposed class actually provided prior express permission to receive its faxes. Instead, Eurton makes vague assertions about the possibility of consent. In reality, Defendant failed to maintain adequate records to evidence the supposed permission it claims it obtained—class action defendants should not be able to skirt liability by keeping shoddy business records.

Moreover, and putting aside the issue of prior express permission, there are numerous common issues of law and fact that predominate here, including: (1) whether the faxes were

---

policy was to then ask the businesses if they agreed to receive more information, including by fax. (*See* Dkt. 36, at 3.)

advertisements, (2) who sent the faxes, (3) whether the opt-out notice complied with the TCPA, and (4) whether Eurton acted willfully. These common questions present a classic case for class treatment and all warrant certification, even without the common issue of whether Eurton's three-step process is sufficient to constitute prior express permission.

Finally, Eurton argues that Plaintiff fails to demonstrate a lack of consent to be faxed. (Def. Opp. at 18-20.) Eurton misapplies its own burden—that is, consent is an affirmative defense, on which Defendant bears the burden of proof. At the class certification stage, TII only bears a burden to demonstrate that the claims and defenses are capable of resolution on a class basis using common evidence. That is precisely the case here. With a single stroke, the Court can adjudicate the claims of each person who received Eurton's faxes where Eurton supposedly obtained consent via its three-step process. Because Eurton treated Plaintiff and members of the proposed class in an identical manner (subjecting everyone to the three-step process), Plaintiff has plainly met its burden to demonstrate that all claims and defenses are capable of resolution on a class basis. For everyone the question will be whether the three-step process was sufficient.

As such, and as explained further below, each of Defendant's arguments falls apart and the Court should certify the Class here.

## II. ARGUMENT

### A. The class definition here includes only those persons who Defendant claims to have used its three-step process to obtain prior express permission from—the predominance requirement is plainly met.

For its central argument, Eurton contends that TII cannot satisfy the predominance requirement because, according only to Eurton, individualized inquiries are needed across the Class on the issue of prior express permission or invitation. (Def. Opp. at 10-16.) This contention

3

is incorrect—the Class only consists of persons who Eurton claims it obtained permission from using the same corporate policy and standardized course of conduct.

"Courts determine whether issues of individualized consent defeat commonality and predominance in a TCPA on a case-by-case basis after evaluating the *specific evidence available to prove consent*." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 298 (N.D. Ill. 2014). Furthermore, when it comes to the issue of consent, "[f]actual variations amongst class members' claims, however, do not necessarily defeat class certification as long as the representatives claims are based on *the same course of conduct and legal theory* as the class as a whole." *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324 *5 (N.D. Ill. Aug. 20, 2009) (emphasis added) (citing *De LaFuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983); *see also Palm Beach Gold Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) ("the Court finds that common issues predominate over any individual issues that may arise. The facts necessary to establish liability relate to Defendant's *common course of conduct* and the transmissions of the faxes, and not to issues with individual class members.") (emphasis added).

The case of *Dr. Robert L. Meinders D.C., Ltd v. Emery Wilson Corporation* (hereafter "*Emery Wilson*"), in which the court found predominance was met based on a common course of conduct of sending faxes, is instructive. Case No. 14-cv-596-SMY-SCW, 2016 WL 3402621 *7 (S.D. Ill. June 21, 2016). In *Emery Wilson*, the defendant maintained "a customer contact database known as the 'central file' containing customer information." *Id.* at *1. Further, Defendant "contend[ed] that its employees were trained to obtain consent prior to faxing advertisements." *Id.* Additionally, Emery Wilson's "unwritten policy is to obtain verbal consent

4

to send faxes. [Defendant] did not regularly maintain copies of materials sent to customers, notes regarding which faxes were sent, or documentation of the consent allegedly obtained." *Id.* at *2.

This is precisely the case here. Plaintiff has tailored its class definition to only those individuals whom Eurton claims it procured permission using the same course of conduct Eurton employed to obtain TII's supposed permission. That is, Plaintiff seeks to certify a class including only those persons "where prior express permission or invitation to send the faxes was supposedly obtained by Eurton through its three step procedure." (See Dkt. 36 at 10.) This course of conduct is based upon an unwritten internal policy that requires employees to obtain consent prior to sending fax advertisements. However, just as in *Emery Wilson*, Eurton failed to maintain records of its alleged consent; instead, it bases its defense off of its internal unwritten policy. This lack of documentation—which as further explained below cannot be the basis for denial of class certification—means that when given the opportunity at trial to present its consent defense, Defendant's evidence will be identical for each and every class member: a description of its three-step process.

The cases cited by Eurton as supposed support for its contention that a class can't be certified here are seriously off-point. Eurton relies primarily upon two cases: *Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp. 1162 (S.D. Ind. 1997) and *Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008). Both are inapposite. First, in *Kenro*, the court found that the class definition was defined in a manner that required the court to inquire into the merits of each individual's claim. 962 F.Supp. 1162, 1170 (S.D. Ind. 1997). That is, the plaintiff proposed to certify a class comprised of:

> all persons or entities who have received and/or are currently receiving a publication from Fax Daily, Inc. via telephone facsimile machine containing any

> material advertising the commercial availability or quality of any property, goods, or services *without the prior expressed invitation of permission* of such person or entity.

*Id.* at 1169. In declining certification, the *Kenro* court explained that "the definition of Kenro's proposed plaintiff class would require the court to address the central issue of liability; in fact, Kenro has simply incorporated the language of the statutory prohibition into its class definition." *Id.* This is not the case here at all. Plaintiff doesn't simply define its class as anyone who didn't consent. Rather, Plaintiff narrowed its class to all persons "where prior express permission or invitation to send the faxes was supposedly obtained by Eurton through its three step procedure." Whether the three-step process is ultimately found to be sufficient or insufficient to constitute prior express permission or invitation is a question to be answered in the exact same way with respect to each member of the Class—satisfying Rule 23(b)(3) predominance.

Turning to *Gene*, the Fifth Circuit declined to certify a class because the class involved multiple sources of *consent*. *See Gene And Gene LLC v. BioPay LLC*, 541 F.3d at 328 (5th Cir. 2008) ("the evidence shows that BioPay culled fax numbers from purchased databases but also periodically culled fax numbers from various other sources."). Here, of course, Eurton cannot show a variety of consent sources; instead, Eurton procured supposed permission in the exact same way: by using its three-step process. The fact that Eurton collected *phone numbers* from different sources is a red-herring: what matters is that *consent* is obtained in a uniform manner— not phone numbers. Accordingly, Defendant's interpretation of and reliance on *Gene* is seriously misplaced.

Finally, Eurton's efforts to distinguish *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 647 (W.D. Wash. 2007) fall flat. (Def. Opp. at 12-13). In that case, "Omnipak allege[d] that it

6

obtained all of the recipients' facsimile numbers from the Manufacturers' News database. Therefore, whether...inclusion in the Manufacturers' News database constitutes express permission to receive advertisements via facsimile is a common issue." *Id.* This is the same as the instant facts. Not to belabor the point, but the instant case involves only those persons where Eurton alleges it obtained permission in the same way—via its supposed three-step process—and whether the three-step process was sufficient to obtain express permission will be answered the same for everyone. No other sources of consent are at issue in this case at all. Simply put, *Kavu* supports Plaintiff's Motion for Class Certification.

    Since Plaintiff's class definition includes only those persons whose supposed permission was obtained through Defendant's identical course of conduct, no individualized issues of consent predominate, and Plaintiff's Motion should be granted.

**B.    Defendant's failure to maintain adequate records is not a valid basis for denying class certification.**

Eurton next claims that by failing to maintain adequate records and relying solely on its unwritten company policy (its supposed three-step process) it has presented the court with sufficient evidence of consent. (Def. Opp. at 16-18.) Such a contention cannot stand.

Eurton isn't the first TCPA defendant to try to escape class certification by self-servingly relying on its own failure to maintain appropriate records. As courts faced with such defenses have explained, "issues of individualized consent predominate when a defendant sets forth *specific evidence* showing that a significant percentage of the putative class consented to receiving calls on their cellphone." *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92, 106-107 (N.D. Ill. 2013) (emphasis added). Conversely, "if the defendants fail to set forth this specific evidence and instead only make vague assertions about consent, then individualized

7

issues regarding consent will not predominate over common questions of law or fact so as to prevent class certification." *Id.* at 107. Furthermore, courts have repeatedly found that a Defendant's own failure to maintain adequate records cannot be the basis for avoiding class certification. *See Daniels v. Hollister Co.*, 440 N.J.Super. 359, 368 ( N.J. Super. Ct. App. Div. 2015) ("Allowing a defendant to escape responsibility for its alleged wrongdoing by dint of its particular recordkeeping policies . . . is not in harmony with the principles governing class actions."); *see also Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014) ("[D]efendants are essentially arguing that the contours of the class should be defined by defendants' own recordkeeping. . . . Doing this . . . would create an incentive for a person to violate the TCPA on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct.").

As the *Emery Wilson* court explained, "a helpful rule that can be extracted from TCPA cases regarding whether issues of individualized consent predominate over common questions of law or fact is that "individualized consent predominate when a defendant sets forth specific evidence showing that a significant percentage of the putative class consented." *Emery Wilson Corporation*, 2016 WL 3402621 at *1. Further, in regards to the lack of records, the court reasoned that:

> Although Sterling has provided some evidence that class members *may* have consented to receiving fax advertisements, this evidence is far from overwhelming. That evidence includes the affidavits of twelve clients (out of a class of potential thousands) attesting to providing Sterling prior express consent for fax transmittals and the testimony of two Sterling employees that consent was routinely elicited prior to sending fax transmittals. Sterling also contends that there is no way to determine consent due to lack of record keeping. However, Sterling may not rely on its own failure to obtain and retain records of who consented to receiving fax advertisements in order to defeat class certification in this matter.

*Id.* at *6.

Applied here, Defendant claims that it has presented sufficient evidence of individualized issues, based solely on its description of its three-step process. The reality for Eurton is that it failed to maintain adequate records to support such contentions. Indeed, Eurton fails to produce any actual evidence, through declarations or otherwise, that even a single potential class member gave express permission or invitation to receive faxes. Surely Eurton could've provided such evidence if it in fact existed—the silence speaks volumes. As a result, Eurton is left with only its unwritten supposed internal policy as a defense—a defense which applies to each Class member with equal force and which can be adjudicated uniformly with a single stroke at an appropriate stage of the litigation.

### C. Consent is one of several common questions to all members of the class.

As a separate matter, Eurton's laser focus on consent ignores the numerous other common questions of law and fact present in this case.

"[A]n important focus of the predominance inquiry is whether plaintiffs can establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof.'" *Morris v. Davita Healthcare Partners, Inc.*, 308 F.R.D. 360, 374 (D. Colo. 2015). "It is not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that the answers to those common questions be dispositive." *CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014).

Contrary to Eurton's characterization of the claims, consent is but one of several common issues of law and fact present in this case. That is, in addition to the issue of whether Eurton's

three-step process was sufficient to procure prior express permission or invitation under the TCPA, other common issues this proceeding will resolve using the same evidence include: (1) whether the faxes were advertisements, (2) the identity of the entity that sent the faxes, (3) whether the opt-out notice complied with the TCPA, and (4) whether Eurton acted willfully. All of these issues will be answered uniformly for the class members based on common evidence, and no individualized questions determine the answer with respect to any individual class member. Further, each of these questions are central to the case and are likely to drive the litigation forward toward resolution.

As such, the Court should find that the litany of common issues predominates and certify the Class.

### D. Plaintiff only has the burden of providing a valid theory by which the case may be resolved on a class basis—TII does not have the burden of proving a lack of consent at this stage.

As a final argument, Euron posits that TII has failed to sufficiently provide evidence that it did not consent to receive its fax advertisements. (Def. Opp. at 18-20.) This argument gets the burden of burden proof backwards.

"The burden of proof is on defendant to establish that plaintiff expressly consented to be contacted." *Chavez v. Advantage Group*, 959 F.Supp.2d 1279, 1280 (D. Colo. 2013). Meanwhile, "plaintiff bears the burden of establishing that common issues predominate." *Donaca v. Dish Netwrok, LLC.*, 303 F.R.D. 390, 401 (D. Colo. 2014). In other words, at the certification stage Plaintiff bears only the burden to demonstrate that an element of a claim or defense is capable of resolution on a class basis using *common evidence*; TII does not, however, bear the ultimate burden of proof to show that consent was invalid. *See Messner v. Northshore University*

*HealthSystem*, 669 F.3d 802, 818 (7th Cir. 2012) ("[P]laintiffs' 'burden at the class certification stage [was] not to prove the element of antitrust impact,' but only to 'demonstrate that the element of antitrust impact is *capable of proof at trial* through evidence that is common to the class rather than individual to its members.'" (citations omitted)).

To reiterate a final time, Plaintiff's proposed class is limited to only those persons "where prior express permission or invitation to send the faxes was supposedly obtained by Eurton through its three-step procedure." (Plaintiff's Mot. at 10.) In turn, Defendant does not have any specific evidence that any individuals consented at all; instead, it has the same evidence for all class members—testimony regarding its unwritten three-step process. In other words, Eurton's only evidence of consent is the same for every class member—a recitation of its supposed three-step process and its concomitant belief that employees followed through with the procedure (and that, where mistakes happened, people could ask to be removed). This situation presents a clear case for resolution on a class basis because Defendant's course of conduct was identical for each member of the class and the Court can uniformly adjudicate whether the course of conduct was sufficient to constitute prior express permission or invitation. Eurton fails to point to even a single person or business that testifies it gave express permission or invitation or from whom it obtained consent in a manner outside its supposed three-step process.

As such, the Court should find that Plaintiff has carried its burden of demonstrating that these common issues predominate in the present case.

### III.     CONCLUSION

Plaintiff's proposed Class definition is sufficiently tailored to meet the requirements of Fed. R. Civ. P. 23, and common issues of fact and law predominate over any supposed individual

11

issues. As such, the Court should grant class certification and award such additional relief as the Court deems necessary, reasonable, and just.

      \*      \*      \*      \*      \*      \*

Dated: December 11, 2017      Respectfully submitted,

**TECH INSTRUMENTATION INC.**, individually and on behalf of all others similarly situated,

By: /s/ Steven L. Woodrow
One of Plaintiff's Attorneys

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF system on this 11th day of December, 2017 to all counsel of record.

/s/ Steven L. Woodrow