**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

**Civil Action No. 16-CV-2981-MSK-KMT**

**TECH INSTRUMENTATION INC., individually and on behalf of all others similarly situated,**

    Plaintiff,

*v.*

**EURTON ELECTRIC CO. INC.,**

    Defendant.

---

## ORDER CERTIFYING CLASS

---

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Class Certification (**# 36**), the Defendant's response (**# 39**), and the Plaintiff's reply (**# 42**). For the reasons that follow, the motion is granted.

This is a junk-fax case. Defendant Eurton Electric Co. supplies and repairs electric motors. Eurton engaged a company called WestFax to mount an advertising campaign via fax to a list of recipients that Eurton supplied. This list included Plaintiff Tech Instrumentation Inc. (TII) and over 1,000 other people/businesses. Eurton developed the list by locating potential customers online and cold calling them to ask whether they would be interested in receiving more information. Eurton does not have records of who it contacted or who agreed to receive more information.

Alleging it received two unsolicited faxes from Eurton, the Plaintiff, TII brought suit under the Junk Fax Prevention Act (JFPA). TII seeks to certify the following class: "All persons in the United States who, from December 16, 2013 through the date notice is sent to the Class, received one

1

or more faxes sent to Eurton's Tools List, where prior express permission or invitation to send the faxes was supposedly obtained by Eurton through its three-step procedure." For the reasons discussed, the Court will certify this class with some amendment to the description.

## A. Requirements of Rule 23(a)

A party seeking to pursue claims in a representative capacity must satisfy the requirements of Federal Rule of Civil Procedure 23. The first set of requirements are those set forth in Rule 23(a), which mandates that a putative class representative show that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. "A party seeking class certification must show under a strict burden of proof that all four requirements are clearly met." *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). "Whether a case should be allowed to proceed as a class action involves intensely practical considerations, most of which are purely factual or fact-intensive. Each case must be decided on its own facts, on the basis of practicalities and prudential considerations." *Monreal v. Potter*, 367 F.3d 1224, 1238 (10th Cir. 2004) (citation omitted).

### 1. Numerosity

Plaintiffs have the burden "to establish that the class is so numerous as to make joinder impracticable." *Peterson v. Okla. City Housing Auth.*, 545 F.2d 1270, 1273 (10th Cir. 1976). This determination is not subject to any "set formula" but rather is "a fact-specific inquiry." *Trevizo*, 455 F.3d at 1162. TII asserts that the proposed class contains over 1,000 fax recipients. Eurton does not appear to contest that the class is numerous. The Court therefore finds that the class is sufficiently numerous.

*2. Commonality*

The second requirement of Rule 23(a) is to show that there are questions of law or fact common to the class. TII argues that many issues are common to the proposed class: whether the faxes were advertisements, who sent the faxes, whether the opt-out notice complied with the TCPA, and whether Eurton acted willfully. As to these issues, consent - an affirmative defense raised by Eurton – is irrelevant.

The essence of Eurton's response to the motion is that a class action would require the Court to engage in mini-trials for each class plaintiff to determine whether it consented to receive Eurton's faxes. Viewed in a vacuum, this argument is appealing. In the normal course of business, a defendant might maintain records of what potential client was contacted and whether that potential client consented to receive further information. If there was information as to which potential clients consented and which did not, there might be a need to determine whether a consent foreclosed tha claim of any particular potential client. But that is not the situation here. Eurton has no records of who it contacted and who consented. Instead, it seeks to rely on its "normal practice" to obtain consent prior to sending faxes. In doing so, Eurton is relying on a standardized course of conduct, which other courts have found is sufficient to establish commonality and typicality. *See, e.g.*, *Hinman v. M & M Rental Ctr. Inc.*, 545 F. Supp. 2d 802, 806 – 07 (N.D. Ill. 2008) (noting that individualized inquiry is not required where the defendant engaged a third party to send 3,000 faxes to targeted businesses). In this way, the question to be adjudicated is not whether each class member consented to Eurton's faxes, but whether Eurton's standardized practice is sufficient to obtain consent under the JFPA. That is an issue common to all potential clients. Thus, the Court finds that TII's claims are sufficiently common to certify the class.

### *3. Typicality*

The next element TII must establish is that its individual claims are typical of the claims of the class members it seeks to represent. *Rector v. City & Cty. of Denver*, 348 F.3d 935, 949 (10th Cir. 2003) ("A prerequisite for certification is that the class representatives be a part of the class and possess the same interest and suffer the same injury as class members."). TII contends that it received the same faxes from Eurton that the other proposed class members received. TII also argues that Eurton acted the same way as to all putative class members and Eurton appears to agree. To the extent Eurton's arguments about consent determinations are applicable to typicality, the Court concludes that the claims are sufficiently typical of the class for the reasons discussed as to commonality.

### *4. Adequacy of Representative*

Finally, the Court must be satisfied that the class representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This question is determined by examining two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180 (10th Cir. 2002). There is no apparent conflict of interest with other class members and Eurton points to no reason why TII and its counsel could not prosecute the class claims vigorously. Therefore, TII has shown that it would be an adequate representative.

### B. Requirements of Rule 23(b)

If Rule 23(a) is satisfied as here, a party must then show that the case qualifies as one of three types of class actions under Rule 23(b). TII seeks to certify the class under Rule 23(b)(3), which provides in pertinent part:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

TII must therefore demonstrate that questions of law and fact predominate over issues affecting only individual members and a class action is superior to other available methods of fairly and efficiently adjudicating the controversy.

### 1. *Predominance*

Predominance "trains on the legal or factual questions that qualify each class member's case as a genuine controversy" and tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 624 (1997). TII argues that common questions predominate for the same reasons stated with regard to commonality. Having concluded that Eurton's common course of conduct obviates the need for individualized determinations of consent, the Court finds that the issue of whether this course of conduct was sufficient under the TCPA predominates among the entire class.

### 2. *Superiority*

Finally, to certify the class under Rule 23(b)(3), the Court must find that a class action is a superior method of fairly adjudicating the issues here. Eurton does not address the superiority of a class action except to say that the issue of express permission requires individual inquiries.

Having resolved that issue, the Court finds that a class action would be the superior vehicle to redress TII's claims.

### III.   CONCLUSION

For the foregoing reasons, TII's Motion for Class Certification (**# 36**) is **GRANTED**. However, the proposed designation of the class is clarified as follows:

Any person/entity who:

1) Received a cold call from Eurton pursuant to its three-step procedure; and

2) Is listed on a list prepared by Eurton and supplied to WestFax; and

3) Received one or more faxes sent by Eurton or WestFax between December 16, 2013 through the date notice is sent to the Class.

Dated this 29th day of May, 2018.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge