IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:16-cv-02981-MSK-KMT

TECH INSTRUMENTATION, INC., a Colorado corporation,
individually and on behalf of all others similarly situated,

    Plaintiff,

v.

EURTON ELECTRIC COMPANY, INC., a California corporation

    Defendant.

---

**DEFENDANT EURTON ELECTRIC COMPANY, INC.'S OPPOSITION
TO PLAINTIFF TECH INSTRUMENTATION, INC.' MOTION FOR APPROVAL OF
PLAINTIFF'S PROPOSED PLAN FOR DISSEMINATING NOTICE TO THE CLASS;
DECLARATION OF THEODORE E. BACON**

---

**I.    INTRODUCTION**

    Plaintiff Tech Instruments, Inc. ("Plaintiff") brings this Motion for the purposes of approving both its proposed summary notice to the class and the manner in which it will be distributed. Defendant Eurton Electric Company, Inc. ("Defendant") opposes this Motion on two grounds: (1) Defendant believes that its proposed version of the class notice is more in line with the requirements under Federal Rules of Civil Procedure Rule 23 ("Rule 23") and encourages readership, and (2) that Defendant's customer list should not be used for the purposes of determining the recipients of the class notice.

    First, and foremost, Defendant believes that Plaintiff's Motion is incomplete. The class notice that is being proposed by Plaintiff is a summary notice, which attempts to refer the recipient of said notice to a website for additional information, including the detailed notice. While the use of a summary notice is entirely proper, Defendant's has issue that it is presently in the dark as to what the contents and form of the both the website and the detailed notice. As such, Defendant believes that it would difficult to agree to send out the summary notice at this

1

time with no certainty as to the additional content that the summary notice is referring recipients to. In the Motion, Plaintiff claims that the "Parties can meet-and-confer about the specific contents of the Case website before it goes live." *See* Motion, p. 3. However, if there is a disagreement, the resolution would be for the parties to come back in front of the Court again.

Nonetheless, for the reasons stated below, Defendant believe that Court should utilize its proposed notice and list of recipients for purposes of providing notice to the potential class.

## II. PLAINTIFF'S PROPOSED NOTICE DOES NOT ENCOURAGE READERSHIP AND DOES NOT CLEARLY INFORM THE RECIPIENT THAT THEY MUST MAKE A DECISION NOW TO "OPT-OUT"

Defendant is in agreement with Plaintiff's resuscitation of the factors to be considered when determining if a class notice is proper as found on Page 2 of the Motion. To reiterate:

> The notice must explain, in easily understood language: (1) the nature of the action; (2) the class definition; (3) the claims, issues, and defenses; (4) that a class member may enter an appearance through their own attorney; (5) that class members may request exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment.

*See Kennet v. Bayada Home Health Care, Inc.* (2018 WL 3145400, *6 (D. Colo. Jun. 27, 2018).

However, more guidance on this issue can be found with the Federal Judicial Center and its Judge's Class Action Notice and Claim Process Checklist and Plain Language Guide (the "Guide"). Specifically, with regard to the utilization of summary notices, the Guide states as follows:

> Do the notices include the Rule 23 elements? Even the summary notice?
>
> Summary notices, whether mailed or published, ***encourage readership***, and the FJC illustrative notices show that even summary notices can include all elements required by Rule 23(c)(2)(B). ***But an overly short summary notice, one that mostly points interested readers to a detailed notice, can result in most class members (who read only the summary notice) being unaware of basic rights***.

*See* FEDERAL JUDICIAL CENTER, *Judges' Class Action Notice and Claims Process Checklist and*

*Plain Language Guide* 3 (20100 (p. 5) [emphasis added]. Moreover, with regard to the size of the notice itself, the Guide states:

> Is the size of the notice sufficient?
>
> Consider the balance between cost efficiency and effectiveness. A small publication notice will save money, but too small and it will not afford room for a noticeable headline, will not fit necessary information, and will not be readable if using fine print.

*Id.* (p. 6)

Defendant's proposed class notice is attached hereto as Exhibit 1. While Defendant has attempted to keep its proposed notice as reasonably short as possible, Defendant believes that the contents and form of its proposed notice encourage readership and clearly explains each recipients rights at this time. It should be noted that Defendant utilized an illustrative example of a summary notice from the Federal Judicial Center as reference in drafting its proposed notice. *See* Exhibit 2 attached hereto.

### A. The Front of the Postcard

*First*, Defendant's proposed formatting of the front of the class notice will draw the attention of the recipient. This formatting of would more than likely draw the recipient's eye to the phrases "Fax Advertisement," "Eurton Electric, and "Class Action Lawsuit." This would potentially allow the recipient to more readily understand the purpose of the notice.

*Second*, Defendant's proposed notice replaces Plaintiff's statement "Learn More at: www.[websiteURL].com" with the phrase "PLEASE READ THIS NOTICE IMMEDIATELY TO KNOW YOUR RIGHTS!" Plaintiff's attempt to at the outset to direct recipients to the website does not comport with Guide's emphasis on encouraging readership. On the other hand, Defendant proposed change to the class notice entices the recipient to actually read the notice.

### B. The Back of the Postcard

In following the illustrative example from the Federal Judicial Center, Defendant proposed changes to the class notice (1) uses plain language (refraining from use of legalese), (2) puts the recipient on notice of the main claim and defense in this lawsuit, (3) provides the present

4754472.1 -- B2144.4

status of the lawsuit, and (4) states the recipient's present obligation of making a determination of either staying part of the class action or requesting an exclusion.

*First*, instead of simply stating "Summary Notice" at the top of the page, Defendant's proposed notice summarizes the issue for the recipient: "*YOU MAY BE AFFECTED BY A CLASS ACTION LAWSUIT ABOUT WHETHER EURTON ELECTRIC SENT UNSOLICITED FAX ADVERTISEMENTS.*"

*Second*, unlike Plaintiff's initial summary, Defendant's proposed notice tries to provide plain language to explain the present status of litigation and actually explains to the recipient a "Class."

*Third*, under the subheading "Nature of Action," Plaintiff fails to explain the main affirmative defense of Defendant. As such, Defendant's proposed notice more clearly explains each side's position in this lawsuit to the recipient, that a determination on the merits has not occurred, and that the Class will still have to prove their claims at a trial.

*Fourth*, Defendant's proposed notice attempts to utilize plan language to explain the scope of the class.

*Fifth*, Defendant's proposed notice better explains to the recipient the "Class Counsel," how the "Class Counsel" will be compensated, and each recipient's right to obtain their own counsel at their own expense.

*Sixth*, Defendant's propose notice clearly and succinctly states what each of the recipient's options are at this time. Moreover, it clearly states that the recipient has to decide now. This follows the illustrative example from the Federal Judicial Center. On the other hand, Plaintiff's propose notice appears to bury the recipient's option in an unclear paragraph. Indeed, instead of succinctly stating the recipient's choice at the beginning of this section, Plaintiff's proposed notice first states "You can discuss the case with Class Counsel."

A comparison of Defendant's proposed notice to Plaintiff's proposed notice demonstrates that Defendant's proposed notice encourages to recipient to read the notice, provides greater understanding, and succinctly states the recipients options at this time. As such, Defendant's proposed notice should be approved as the class notice for this lawsuit.

### III. DEFENDANT'S CUSTOMER LIST SHOULD NOT BE USED FOR THE DISTRIBUTION OF THE CLASS NOTICE

In the Motion, Plaintiff asserts that "because Eurton has addresses for business on its customer list, notice via direct mail, following a search inquiry for any updated addresses, is most appropriate under the circumstances." *See* Motion, p. 3. Defendant disagrees. '

The confidential customer list that has been provided to Plaintiff has more than approximately 7,500 customers on it. However, there is no indication which portion of these customers actually received an offending fax which would qualify the recipient to not only be a member of the class, but to have standing in this lawsuit. This idea is an overarching issue that will have to be addressed soon by class discovery in this lawsuit.

To provide a summary, this lawsuit seeks damages pursuant to the Telephone Consumer Protection Act ("TCPA"), it is unlawful for any person in the United States "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine an unsolicited advertisement[.]" *See* 47 U.S.C. § 227(b)(1)(C). The TCPA defines the term "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person *without that person's prior express invitation or permission, in writing or otherwise*." *See* 447 U.S.C. § 227(a)(5) [emphasis added]. In sum, to have standing to assert a claims under the TCPA, the plaintiff, or class member, would, *at the minimum*, have to have received the facsimile. Indeed, in determining that a plaintiff had not sustained a concrete injury under the TCPA, the District Court for the Western District of Pennsylvania explained that "there is insufficient evidence to determine that what was actually sent was a fax that violated the TCPA or that an unsolicited fax was received." *See Community Vocational Schools of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.* 307 F.Supp.3d 402, 418 (W.D. Penn. 2018).

For claims relating to the transmitting of unsolicited faxes, class wide proof is usually in the form of "fax logs," reports the identify the recipient and whether that recipient received a successful fax transmission. However, "[w]ithout fax logs of successful transmissions or other

such evidence, the only way potential class members could prove they were 'sent' junk faxes, as required by the class definition, is through individual testimony." *See St. Louis Heart Center, Inc. v. Vein Centers for Excellence, Inc.* 2017 WL 2861878, *4 (E.D. Miss. Jul. 5, 2017).

In this lawsuit, Defendant is in possession of fax logs for fax transmission that occurred in 2017, but has not been able to locate any fax logs prior to said transmissions in 2017. *See* Exhibit 3 attached hereto. As such, for any claims prior to 2017, there will have to be discovery on this issue of standing and the receipt of a fax by each of the class members. Indeed, such appears to have been acknowledged by Plaintiff in its Motion for Class Certification that discovery would have to be done on this issue:

> To the extent there remains any doubt, Class Members can provide records, including affidavits and documents including phone bills and copies of the faxes themselves, to establish class membership. [...] Documentary evidence, together with sworn declarations from class members, can be used to show class membership.

*See* Docket #36 (p. 11).

Defendant is not trying to put the cart before the horse in this Opposition, but is attempting to put this Motion in context of what will be requested next by Defendant. Nonetheless, the use of the customer list will make this task more burdensome during discovery. The use of an "opt-out" notice along with the class list would mean a greater chance of including people and business that do not have standing in this lawsuit, which would create a significant due process issue for Defendant.

Therefore, instead of utilizing the customer list, Defendant proposed using the fax logs from 2017, along with its fax number list. *See* Exhibit 4 attached hereto. With regard to the fax number list, Defendant keeps a running list of entities to send fax advertisements to, and would remove anyone from the list that requested to be removed:

> Q. Is it your testimony that there were more and you just don't have the e-mail anymore?
>
> A. Correct. Yeah.
>
> Q. About how many more?

6

4754472.1 -- B2144.4

> A. If we would get asked, I would take the number, remove them from the list, update the list, and it would be gone.
>
> Q. And then you would probably delete the e-mail?
>
> A. I'd delete the e-mail or usually, the funny thing is, more people would fax it back to me.
>
> Q. And what would you do with those faxes?
>
> A. I would tell them please don't fax me.
>
> Q. Would you remove them from the list?
>
> A. Yes, of course.
>
> Q. Would you save the fax or throw it out?
>
> A. I would throw it out after I removed them.
>
> Q. Okay. So there is no pile of faxes sitting somewhere from people asking you not to fax them anymore?
>
> A. Correct.

*See* Exhibit 5 attached hereto (RT, 35:8-36:2). However, the removal percentage was low, with Defendant never receiving any request for removal for approximately 95% of the numbers on the list. *See* Exhibit 5 attached hereto (RT, 123:21-124:9).

In the Motion, Plaintiff states that a "notice plan that reaches at least 70% of the class is reasonable." *See* Motion, p. 2. Thus, the utilization of the fax list and the fax logs from 2017, the parties should be able to send notice to at least 70% of the potential class. Moreover, while using this method would not alleviate the need for class discovery, it will make the act of performing class discovery less burdensome.

If this method the utilization of the fax list and fax logs is agreeable, Defendant will work with Plaintiff to try to readily identify the businesses associates with each fax number in order to allow for the summary notice to be sent by mail. Moreover, for fax numbers in which the owner cannot be identified, notice could be sent to those potential class members by facsimile. Indeed, other cases have utilized such methods of delivery when appropriate. *See St. Louis Heart Center, Inc. supra,* 2017 WL 2861878 at *2 ("…class notice was sent to potential class members by fax and then U.S. Mail, if necessary.").

## IV. CONCLUSION

Based upon the foregoing, Defendant respectfully requests (1) that its proposed notice, attached hereto as Exhibit 1, it utilized as the class notice in this lawsuit, and (2) that recipients of the class notice are based upon the fax list and fax logs, attached as Exhibits 3 and 4, instead of Plaintiff's customer list.

DATED: March 25, 2019

Respectfully submitted,

ALVARADOSMITH
A Professional Corporation

By:   /s/ Theodore E. Bacon
     Theodore E. Bacon
     Jacob Clark
     ALVARADOSMITH, APC
     633 W. Fifth Street, Suite 900
     Los Angeles, California 90071
     Tel: (213) 229-2400

## DECLARATION OF THEODORE E. BACON

I, THEODORE E. BACON, declare as follows:

1. I am an attorney licensed to practice law in the U.S. District Court for the District of Colorado, and am an member of the law firm of AlvaradoSmith, a Professional Corporation, attorneys of record for Defendant Eurton Electronic Company, Inc. ("Defendant"). I am responsible for Defending this matter on behalf of Defendant. As such, I have personal knowledge of all the facts except as to those matters stated on information and belief, and, as to those matters, I believe them to be true. If called as a witness to testify as such, I could and would testify competently under oath.

2. Attached hereto as **Exhibit 1** is Defendant's Proposed Class Notice.

3. Attached hereto as **Exhibit 2** is a true and correct copy of the "Employment Discrimination Class Action Certification: Publication Notice," which was obtained from the website for the Federal Judicial Center at www.fjc.gov, on or about March 21, 2019.

4. Attached hereto as **Exhibit 3** is a true and correct copy of a portion of Defendant's document production, documents bate stamp 000097, 108, 127, 140, 166, 168, 188, 227, 228, 230, 231, 233, 234, 236, 237, 239, 240, 242, 243, 245, 246, 248, 249, 251, 253, 254, 257, 258, 260, 261, 270, 306, 371, 384, 385, 506, 519, 520, 648, 684, 853, 854, 855, 856, 863, 866, 869, 870, 871, 874, 875, 891, 893, 896, 897, 899, 971, 982, 999, 1006, 1029, 1196.

5. Attached hereto as **Exhibit 4** is a true and correct copy of a portion of Defendant's document production, documents bate stamp 000001-33.

///

///

///

4754472.1 -- B2144.4

6. Attached hereto as **Exhibit 5** is a true and correct copy of pages 1-3, 35-36, 123-124 and 149 of the Reporter's Transcript for the Deposition of John Buchanan that occurred on September 12, 2017.

I declare under penalty perjury under the laws of the United States that the forging is true and correct.

Executed on March 25, 2019 at Los Angeles, California

                                                  /s/ Theodore E. Bacon

                                                  THEODORE E. BACON

## CERTIFICATION OF SERVICE

I hereby certify that on this 25th day of March 2019, I electronically filed the foregoing **DEFENDANT EURTON ELECTRIC COMPANY, INC.'S OPPOSITION TO PLAINTIFF TECH INSTRUMENTATION, INC.' MOTION FOR APPROVAL OF PLAINTIFF'S PROPOSED PLAN FOR DISSEMINATING NOTICE TO THE CLASS; DECLARATION OF THEODORE E. BACON** with the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of the filing to all Counsel of record.

/s/ *Theodore E. Bacon*
Theodore E. Bacon