**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.:  **1:16-cv- 02981**

**TECH INSTRUMENTATION, INC., a Colorado corporation, individually and on behalf of all others similarly situated,**

    **Plaintiff,**

**v.**

**EURTON ELECTRIC COMPANY, INC., a California corporation**

    **Defendant.**

---

**MOTION FOR LEAVE TO DISSEMINATE SECOND ROUND OF CLASS NOTICE**

---

**I.     Introduction**

The Court granted Plaintiff Tech Instrumentation, Inc.'s ("Plaintiff" or "TII") Motion for Class Certification on May 29, 2018 (dkt. 47) and granted in part and denied in part Plaintiff's Motion for Approval of Class Notice Plan on September 13, 2019 (dkt. 72). On December 12, 2019, the Court granted the Parties' Joint Motion for Extension of Time to Disseminate Class Notice (dkt. 76) and ordered that Notice be disseminated by January 30, 2020.

In accordance with the Court's December 12, 2019 Order, Class Counsel worked with the class action administrator RG2 Claims to disseminate notice to the Class in accordance to the Court's September 13, 2019 Order regarding the proposed notice plan. (*See* Declaration of Patrick H. Peluso, attached hereto as Exhibit A, ¶ 3.) This included the creation of a static website, www.rg2claims.com/eurtonelectric, which contains important case documents and a copy of the long form notice approved by the Court. (*Id*. ¶ 4.) The short form notice approved by the Court was also disseminated by the administrator via U.S. mail. (*Id*. ¶ 5.) The website went live and the short form notices were mailed by the January 30, 2020 deadline established by the Court. (*Id*. ¶ 6.)

A second round of notice is required, however, to provide notice to additional Class Members who were recently disclosed by Defendant. When Plaintiff moved for Class Certification, it explained that:

> While it only produced the latest iteration of its "Fax list" in discovery, Eurton has actually has three different data sets that can be used to locate Class members. First, Eurton has an "accounting database system," that includes a master list of persons with whom it has transacted business. (Eurton Depo. Tr. 102:12-13.) This list contains not only fax numbers, but also names, addresses, and sales. (Eurton Depo. Tr. 102:5-11.) The accounting database system is incomplete, however, because there are several entities with whom Eurton has transacted business with once or twice that don't make it into the accounting database system.

1

> Rather, customers and potential customers that haven't been entered yet into the accounting database system (and many who have been) are tracked on a second list, referred to as the potential customer/actual customer spreadsheet. (Eurton Depo. Tr. 102:14-18.) This spreadsheet captures both potential customers as well as actual customers (both those who've only had minimal sales and haven't been transferred yet into the accounting database system as well as those who've transacted substantial business with Eurton).
>
> The third data set is Eurton's "Fax list"—the spreadsheet produced in discovery of the persons Eurton has faxed. This list consists only of fax numbers but represents a significant portion of the Class in this case. Indeed, everyone on the list received the same faxes after supposedly providing permission or invitation to be called in the same way.

(Dkt. 36 at 6.) Thus, to prepare for notice dissemination, Class Counsel worked to gather the other datasets in addition to the "Fax List" containing 1,517 fax numbers which had already been produced by Eurton. (Peluso Decl. ¶ 7.)

Eurton's prior counsel, Theodore Bacon, assured Class Counsel repeatedly that the only list in Eurton's possession which contained fax numbers was the Fax List of 1,517 fax numbers (and only fax numbers, the list does not contain names and addresses) that had already been produced. (*See* Group Ex. B.) Mr. Bacon stated that "[The Fax List] was accurate at the time and client does not do faxes anymore, so it is current" (*See id.*) At Plaintiff's insistence, Eurton did eventually produce its "Customer List," but this list contained only names and addresses, and not fax numbers. Shortly thereafter Mr. Bacon stated "[t]he fax info for those who get the faxes is on a separate list—the one we previously provided. He does not have faxes for many or most of the clients on the list I just provided—only those he sends faxes to, which are all on the prior list." (*See* Ex. B.) Indeed, Eurton's Response in Opposition to Plaintiff's Proposed Notice Plan lobbied for the use of the Fax List to disseminate notice and stated "[w]ith regard to the fax number list,

Defendant keeps a running list of entities to send fax advertisements to, and would remove anyone from the list that requested to be removed. . . [h]owever, the removal percentage was low, with Defendant never receiving any request for removal from approximately 95% of the numbers on the list." (Dkt. 66 at 6-7.)

In other words, according to Eurton throughout the litigation, the only list of fax numbers that it had was the Fax List which it had produced. In reliance on that, and in order to disseminate notice to those on the Fax List, Class Counsel manually went through the list of 1,517 fax numbers and located business names and addresses associated with those numbers. (Peluso Decl. ¶ 8.) That effort was successful; after removing the Canadian entities from the list, the short form notice was mailed to 1,489 businesses whose fax numbers appeared on Eurton's Fax List by the January 30, 2020 deadline. (*Id.* 10.) According to a status report provided by the administrator, only 73 notices were returned as undeliverable, and no Class Member has opted-out. (*Id.* ¶ 11.)

While Class Counsel was in the midst of manually locating names and addresses for the fax numbers on the Fax List in order to meet the January 30, 2020 deadline to disseminate notice, Eurton hired new counsel. Eurton's new counsel, Stephen Watkins, advised Class Counsel on January 28, 2020 that "[Eurton] is working on building the class list" in line with the Court's September 13, 2019 Order regarding notice. (Peluso Decl. ¶ 12.) On February 28, 2020, Eurton served "Supplemental Disclosures" which included a spreadsheet containing 2,719 fax numbers, phone numbers, business names, and mailing addresses. (*Id*. ¶ 13.)

Shortly thereafter, Class Counsel was in contact with the administrator to discuss the need to send out a second round of notice to these newly-discovered Class Members. (Peluso

3

Decl. ¶ 14.) Unfortunately, due to the COVID-19 pandemic, the administrator's office closed and it provided notice on March 16, 2020 that it would not be able to complete any deliverables for 30 days. (*Id*. ¶ 15.) On April 17, 2020, the administrator advised Class Counsel that it has adapted to the situation and can now disseminate notice again. (*Id*. ¶ 16.)

Thus, Plaintiff respectfully requests that the Court grant the instant Motion and permit a second round of notice to be disseminated to the recently-produced Class Members who did not receive notice in the first round. Plaintiff requests 45 days to do so, in order for the administrator to have sufficient time to compare the list produced on February 28, 2020 with the original Fax List and to remove any duplicates and to then mail the short form notice.

Respectfully submitted,

Date: April 17, 2020                TECH INSTRUMENTATION, INC.


/s/ Patrick H. Peluso
Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
WOODROW & PELUSO, LLC
3900 East Mexico, Ave. Suite 300
Denver, CO 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Attorneys for Plaintiff and the Class*

4

## CERTIFICATE OF SERVICE

I, Patrick H. Peluso, an attorney, hereby certify that on April 17, 2020, I served the above and foregoing papers by causing a true and accurate copy of such papers to be filed with the Clerk of the Court and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

/s/ Patrick H. Peluso