# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-02981-MSK-KMT

TECH INSTRUMENTATION, INC., a Colorado corporation, individually and on behalf of all others similarly situated,

        Plaintiff

v.

EURTON ELECTRIC COMPANY, INC., a California corporation

        Defendant

---

**SECOND SET OF SUPPLEMENTAL DISCLOSURES**

---

**TO PLAINTIFF AND ITS COUNSEL OF RECORD**

    Defendant EURTON ELECTRIC CO., INC. ("Defendant"), through its counsel of record, submits the following supplemental disclosures, pursuant to Fed. R. Civ. P. 26(a)(1) and (e)(1). Defendant reserves the right, in accordance with Fed. R. Civ. P. 26(e)(1), to amend or supplement these disclosures as discovery progresses.

**General Objections**

    1.    Privileged information. Defendant reserves the right to object to the disclosure of information to the extent that such information is protected by the attorney-client privilege, or any other applicable privilege, on the grounds that such matters are exempted from discovery.

    2.    Work Product. Defendant reserves the right to object to the disclosure of information to the extent that such information is not discoverable by reason of the work-product or trial-preparation doctrine.

    3.    Relevancy. Defendant reserves the right to object to the disclosure of

{00135470;1}

information that is not relevant to any claim or defense.

**Supplemental disclosures under Rule 26(e)(1)(A)**

**INTERROGATORY NO. 4:**

For all Persons Identified in response to Interrogatory No. 3 above, Identify each Persons with whom You had an Established Business Relationship.

**AMENDED RESPONSE TO INTERROGATORY NO.4:**

Objection. The Interrogatory is vague, ambiguous, compound, overly broad in time and scope, it seeks information that is irrelevant and not likely to lead to admissible evidence, and therefore is burdensome, oppressive and harassing as phrased.

Subject to and without waiving, and notwithstanding the foregoing objections, Responding Party responds: Based upon the definition of "Established Business Relationship" as stated in 47 C.F.R. § 64.12000(6), Responding Party is unable to determine based upon its records in its possession whether all individuals, persons and/or businesses entities had an "Established Business Relationship" with Responding Party at the time in which said individuals, persons and/or business entities were sent a facsimile by Responding Party regarding Responding Party's goods. Responding Party does not maintain records of when facsimiles are sent to specific individuals, persons and/or business entities and the status of the business relationship at the time in which the facsimile is sent.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4**

Without waiving its previous objections, Defendant responds as follows:

   **1.    Class List**

In ordering class notice, the Court acknowledged Eurton's lack of evidence reflecting the actual numbers faxed by Westfax. The Court required notice be sent to the following the following persons or entities as a compromise:

   (i)    those listed on Eurton's 2017 fax logs;

   (ii)   those listed on any existing iteration of Eurton's "fax list"; and

   (iii) those who do not meet either of the first two criteria, but who are noted as having a fax number in either Eurton's accounting database or on its potential customer/actual customer spreadsheet.

  With respect to section (ii) Eurton previously produced a fax list in discovery as EE001-33. That list represents 1,498 fax numbers. However, 252 of those numbers are numbers that were not able to be faxed. Either the numbers are not listed as fax numbers, or the companies associated with the numbers are no longer in business.

  With respect to item (iii), persons in Eurton's database that do not overlap with the fax list, Eurton has identified 2,378 phone numbers, produced as EE002363.

  The potential customer/actual customer spreadsheet referenced at the deposition of Eurton was "Tools List for Mailer 5-2009", but those numbers are already included in EE001-33.

  With respect to item (i), Plaintiff's Complaint was filed on December 6, 2016. Eurton does not have fax logs prior to the lawsuit. The 2017 fax logs referred to by Eurton in Dkt. 66 and 66-1 are post-lawsuit faxes to confirm consent, as described below. Regardless, those numbers faxed are already set forth in EE001-33 and do not add numbers to the list.

  **2.** **Documents evidencing consent**

  Documents relating to consent to call the class list are described in greater detail below, but in summary:

| | |
|---|---|
| EE001-33 (first part of class list) | See EE001290-1410, (Prior permission to fax documents); EE1411-1501 (Credit App list recipients plus updates and permissions), EE2023-2361 (List Recipients with update forms and corresponding statements)<br><br>EE0039-1285 (Verified Contacts with Permission to Fax Approvals)<br><br>EE2362 – summary spreadsheet |

| | |
|---|---|
| EE002363 (second part of class list) | EE1502 -2022 (A, B and C evidence of consent to fax) EE2364 – summary spreadsheet |
| Both lists | EE2365-3060 – Fax flyers from customers and potential customers |

Eurton's practice to obtain fax numbers has been described as a three-step process.

First, Eurton would locate businesses online that might use motors in their operations.

Second, Eurton would then cold-call those businesses and ask whether the business would be interested in receiving more information.

Third, the company policy was to then ask the businesses if they agreed to receive more information, including by fax.

In addition to the 3 Step Process (above), another main way Eurton collected information from customers and potential customers is that they would seek out Eurton on their own for their rewinding/repairing and parts services and request to be faxed and/or added for future faxing.  See EE2365-3060 - Fax flyers from customers and potential customers.

It was also a matter of company policy that Eurton would remove anyone when "mistakes" occurred.   However, these removals were few and far in between.

Prior to deposition, John Buchanan did a cursory search for "opt outs."  Mr. Buchanan only located two opt outs.  However, an opt-out does not necessarily mean there was not initial permission to fax, only that the recipient no longer desired faxes.

During the three-step process consent to fax was often obtained orally. However, consent to fax was also reflected by potentially three different documents: (1) Prior Permission to Fax Form; (2) Credit Application; and (3) Updated Customer Information Form.

    **a.**    **Prior Permission to Fax Form documents consent**

As one example, Kalamazoo Electric Motor Inc. signed a Prior Permission to Fax

form with the following language:

"Eurton Electric has had permission to contact us via: phone calls, faxes, emails and mailings.  Sending flyers, catalogs, postcards, etc. to keep us informed on the latest rewinds, repair parts, products, sales and specials offered from time to time."
(EE001288)

Although this form is undated, Kalamazoo Electric states it has been a client of Eurton for 10 to 20 years, as do over 100 other list recipients

### b. Credit application form documents consent

As part of its customer process, Eurton would have customers fill out a credit application.  A sample of this credit application for Kalamazoo Electric Motor Inc. is set forth at (EE01289), which includes the following language:

"This information provides us with the best way of contacting you for all normal business communications, including:  invoices, sales orders, catalogs, promotional flyers, pricing updates, etc.:

### c. Customer Contact Information Update Form

As part of its customer process, Eurton would have customers periodically fill out Customer Contact Information Update Forms. A sample of this Customer Contact Information Update Form for Kalamazoo Electric Motor Inc. is set forth at (EE01287) and includes the following language:

"The above information is current and is the best way of contacting us through normal business communications including:  invoices, sales orders pricing, sales promotions, references, phone, facsimiles, specials and catalog and brochure mailers, etc."

Many of Eurton's customers have been customers over five to ten years.  In this regard, much of the documentation relating to prior permission, credit applications, and updated credit applications has been lost over time.

Eurton maintains an accounting database.   This is a master list that has names, addresses, fax numbers, and sales of people that have done business with Eurton.

However, it was Eurton's policy and procedure such that every person who was listed in the customer database would have completed a credit application. Not every credit application would have specifically had the language referencing faxes for "sales and specials," for several reasons.

First, many of Eurton's customer's applications date back before faxing. Second, many customers would submit their own pre-filled out credit forms with their contact information which includes their fax numbers among other contacts. Moreover, Eurton changed credit application forms over the years. Although the specific verbiage was not included, Eurton implied the information given included all forms of normal business communications which included faxing for promotions.

Regardless, it was Eurton's practice to orally inform customers who completed credit applications the various reasons faxes would be sent.

Eurton does not have "Permission to Fax" forms for all of the persons on the class list, for multiple reasons. First, many of Eurton's business relationships are so old, that even if it had a "Permission to Fax" form five, ten years ago, those paper documents have been lost or destroyed over time. Also, Eurton would obtain permission to fax orally, and did not believe a form was necessary. Customers and potential customers would ask to be faxed. Moreover, Eurton would ask to fax in a mutual, free exchange of business relations.

Eurton does not have credit application forms for all of the persons it faxed, for multiple reasons. First, many of Eurton's business relationships are so old, that even if it had a credit application form five, ten years ago, those paper documents have been lost or destroyed over time. Second, persons faxed included both potential and actual customers, whereas credit applications were usually completed by actual customers.

Eurton has located approximately 150 prior permission to fax forms and, two to three-thousand credit applications, and several hundred updated customer update forms. See EE001290-1410, (Prior permission to fax documents), EE2023-2361 (List Recipients

with update forms and corresponding statements), and EE1502-2022 (Credit App list recipients plus updates and permissions). These documents relate to EE00-33.

With respect to the 2,378 fax numbers, produced as EE002363, it was too burdensome and voluminous to assemble records for the entirety of the numbers, but it was able to assemble for letters A, B and C evidence of consent to fax. (EE002023-2361, and spreadsheet EE02362)

Eurton does not possess any records of faxes actually sent ("fax logs") from WestFax. Only Exhibit C's fax logs were supplied by Eurton Electric. Such fax logs would likely be in the possession of Westfax. Any fax logs received from Westfax would have been deleted in the regular course of Eurton's business prior to notice of Plaintiff's lawsuit in late 2016.

   d.    **Eurton's post-lawsuit verification process**

Plaintiff's Complaint was filed on December 6, 2016. In 2017, without involvement of defense counsel, Eurton directly contacted its customers to verify consent fax. In this regard,

Eurton would call these customers to orally confirm/verify the fax numbers because the numbers on the list were only numbers, they needed to be reverse engineered from having just a fax number to get the further needed information (company name, address, phone, etc). During this verification processs, Eurton would then send these persons who had given their previous permission to fax them a flyer to confirm their prior consent and numbers to receive faxes.

All 1,100 + fax flyers, have the contacts, verified numbers and have "Permission to Fax was given by contact at the top of the flyer" and an extensive opt out message. (See EE0039-1285.)

This confirmation is noted spreadsheet set forth at EE2362. (Recipient List Verification) All of the persons Eurton was able to contact (92% of the spreadsheet) confirmed consent. This spreadsheet only relates to the list set forth as EE001-33.

When Eurton refers to a "fax list", it refers to a list of fax phone numbers that it maintained that were presumably sent to WestFax. Eurton periodically updated this list with Excel.

At deposition, Eurton referred to a spreadsheet as the source of fax list numbers only. Eurton was referring to "Tools List for Mailer 5-2009" ("Tools List"). It was Eurton's mailing list for potential and current customers at that time (2009). This collection was independent and not part of Eurton's customer database. The list was assembled for mailing, but as Eurton added contact names, fax numbers, and permissions, the fax numbers were put on the fax list in question.

841 of the 1,523 numbers on the Tools List had been contacted and name and fax numbers had been added. Only 1,287 of the 1,523 numbers on the Tools List had verifiable fax numbers. Of the 1,287 verifiable numbers, 1,084 (92%) verified their information and gave permission to fax and were faxed (EE2362). The remaining 682 numbers could not been updated and were not faxed because 1. The numbers were no longer a faxable number. 2. The number/customer could not be contacted or verified after 3 attempts. 3. The recipient/company is no longer in business. All of the aforementioned 841 contacts are already set forth in EE001-33.

Eurton also maintains an accounting database. This is a master list that has names, addresses, fax numbers, and sales of companies that have done business with Eurton. It is unknown whether these companies would have actually been faxed at those numbers without having fax logs from Westfax.

Eurton asserts that EE1-23060 and 10,000+ business transactions between Eurton and List Recipients) are all evidences of consent to call, email or fax, the persons on the class list, and also evidences an existing business relationship with these customers.

**REQUEST TO PRODUCE NO.22:**

Any and all Documents sufficient to evidence any action taken in furtherance of Your supposed three-step procedure as set forth in you Amended Responses to Request

to Produce No. 2 served July 7, 2017, including without limitation any and all Internet browsing history, telephone call records/bills, notes of discussions with potential customers, proof of facsimile transmission/fax reports, communications with any third party vendor You hired to send the Faxes, or any other documents evidencing actions taken in furtherance of or consistent with your supposed three-step procedure.

**RESPONSE TQ REQUEST TO PRQDUCE NO.22:**

Objection. Responding Party objects on the grounds that this request is vague and ambiguous as to the terms/phrases "sufficient," "evidence," "furtherance," "three-step procedure," "Internet browsing history," "telephone call records/bills," "proof of facsimile transmission/reports," and "third-party vendors." Further, Responding Party objects an the grounds that this request is overly broad as to both time and scope. Responding Party also objects on the grounds that this request is not reasonably calculated to lead to the discovery of admissible evidence. Responding Party objects on the grounds and to the extent that this request seeks information protected by the attorney-client privilege and/or attorney work product.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 22**

Without waiving its previous objection, Eurton responds as follows: See EE1-3060.

DATED: June 10, 2020            **CARLSON & MESSER, LLP**

By: __/s/ David J. Kaminski_____ _____
    David J. Kaminski, Esq.,
    Stephen A. Watkins, Esq.,
    Attorney for Defendant
    TECH INSTRUMENTATION, INC.

## **PROOF OF SERVICE**

STATE OF CALIFORNIA )
) ss
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California.

I am over the age of eighteen years and not a party to the within action. My business address is 5901 West Century Blvd., Suite 1200, Los Angeles, California 90045.

On **June 10, 2020**, I served the foregoing document(s) described as: **SECOND SET OF SUPPLEMENTAL DISCLOSURES** on all interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

[] **BY MAIL:** I sealed such envelope(s) and placed it (them) for collection and mailing on this date following the ordinary business practices of Carlson & Messer LLP. I am readily familiar with the business practices of Carlson & Messer LLP for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence would be deposited with the United States Postal Service at Los Angeles, California this same day in the ordinary course of business with postage thereon fully prepaid.

[X] **BY ELECTRONIC MAIL:** Based on Court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the said documents to be sent to the persons at the electronic mail addresses listed below (see attached service list). I did not receive within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[] **PERSONAL SERVICE BY HAND:** I personally served document to address stated on POS Service List.

[] **(STATE):** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X] **(FEDERAL):** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed this **10th** day of **June, 2020** at Los Angeles, California.

_____
Susie Valiente

{00135498;1}

## SERVICE LIST
*Tech Instrumentation, Inc. v. Eurton Electric Company, Inc.*
Case No. 1:16-cv-02981-MSK-KMT
File No. 11042.20

| | |
|---|---|
| Patrick H. Peluso<br>Taylor True Smith<br>Steven Lezell Woodrow<br>**WOODROW & PELUSO LLC**<br>3900 East Mexico Avenue, Suite 300<br>Denver, CO 80210<br>Tel: (720) 213-0676<br>Fax: (303) 927-0898<br>Email: ppeluso@woodrowpeluso.com<br>        tsmith@woodrowpeluso.com<br>        swoodrow@woodrowpeluso.com | **Attorneys for Plaintiff:**<br>*TECH INSTRUMENTATION, INC.* |

{00135498;1}