**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-02981-MSK-KMT

TECH INSTRUMENTATION, INC., a Colorado corporation, individually and on behalf of all others similarly situated,

                Plaintiff

v.

EURTON ELECTRIC COMPANY, INC., a California corporation

                Defendant

---

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**TO DECERTIFY CLASS**

---

**TO THE HONORABLE MARCIA S. KRIEGER, UNITED STATES DISTRICT JUDGE:**

Defendant Eurton Electric Company, Inc. hereby files this Memorandum of Law in Support of its Motion to Decertify Class.

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ..................................................................................................1

     A.      Eurton's Three-Step Process .................................................................2

     B.      Credit application forms document consent ..........................................2

     C.      Customer Contact Information Update Forms document consent...........3

     D.      Data Quote forms document consent.....................................................3

     E.      Post-lawsuit verification process ..........................................................3

IV.     PLAINTIFF'S CERTIFIED CLASS .................................................................4

V.      NOTICE IS SENT TO THE CLASS .................................................................4

VI.     ONCE CLASS MEMBERS WERE IDENTIFIED, EURTON DEVELOPED EVIDENCE OF CONSENT …………………………………………………………………5

VII.    ARGUMENT ......................................................................................................6

     A.      The Court's Basis for Holding Plaintiff's Class Established Predominance is Eviscerated by Facts Developed Post-Certification.................................6

     1.      Defendant has assembled substantial evidence of consent .....................9

     2.      Eurton developed evidence of consent to fax the Initial List and the Supplemental List …………………………………………………………………12

     3.      Eurton's post-lawsuit evidence of consent..........................................14

     4.      Plaintiff's Class lacks predominance due to individualized issues as to whether received a Fax from Eurton …………………………………………....14

     B.      Commonality...........................................................................................15

     C.      Plaintiff's Class Lacks Superiority Due to the Mini Trials Presented .................15

     D.      Plaintiff's Class lacks ascertainability ...............................................16

     E.      Numerosity .............................................................................................17

     F.      Faxes to Efaxes should be excluded …………………………………………17

VIII.   CONCLUSION....................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC*,
2020 WL 4937790 (W.D. Tenn. Aug. 24, 2020) ......................................................................... 17

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997) ...................................................................................................................... 7

*Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.*,
2014 WL 3089556 (D. Kan. July 7, 2014) .................................................................................. 6

*A-W Land Co., LLC v. Anadarko E&P Co. LP*,
2012 WL 4463869 (D. Colo. Sept. 27, 2012) ............................................................................ 15

*Bais Yaakov of Spring Valley v. FCC*,
852 F.3d 1078 (D.C. Cir. 2017) .................................................................................................. 8

*Barrett v. Wesley Fin. Grp., LLC*,
2015 WL 12910740 (S.D. Cal. Mar. 30, 2015) .......................................................................... 10

*Carpenter v. Boeing Co.*,
456 F.3d 1183 (10th Cir. 2006) ................................................................................................... 6

*Carrera v. Bayer Corp.*,
727 F.3d 300 (3rd Cir.2013) ....................................................................................................... 16

*CE Design Ltd. v. King Architectural Metals, Inc.*,
637 F.3d 721 (7th Cir. 2011) ....................................................................................................... 7

*Cox v. Allstate Ins. Co.*,
2012 WL 12860745 & n.14 (W.D. Okla. Mar. 28, 2012) ........................................................... 15

*Daubert v. NRA Grp., LLC*,
861 F.3d 382 (3d Cir. 2017) ........................................................................................................ 7

*Donaca v. Dish Network, LLC*,
303 F.R.D. 390 (D. Colo. 2014) ................................................................................................. 13

*Edwards v. Zenimax Media Inc.*,
2012 WL 4378219 (D. Colo. Sept. 25, 2012) ............................................................................ 16

*Fober v. Mgmt. & Tech. Consultants, LLC*,
886 F.3d 789 (9th Cir. 2018) ........................................................................... 8

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
304 F.R.D. 601 (D. Colo. 2015) ..................................................................... 16

*Gannon v. Network Tel. Services, Inc.*,
2013 WL 2450199 (C.D.Cal. June 5, 2013) .................................................. 16

*Gene And Gene LLC v. BioPay LLC*,
541 F.3d 318 (5th Cir. 2008) ........................................................................... 8

*General Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)......................................................................................... 6

*Gorss Motels Inc. v. A.V.M. Enterprises, Inc.*,
2019 WL 4278951 (D. Conn. Sept. 10, 2019) .............................................. 11

*Gorss Motels, Inc. v. AT&T Mobility LLC*,
2019 WL 625699 (D. Conn. Feb. 14, 2019) ................................................. 11

*Gorss Motels, Inc. v. Brigadoon Fitness Inc.*,
331 F.R.D. 355 (N.D. Ind. 2019) .................................................................. 15

*Gorss Motels, Inc. v. Brigadoon Fitness Inc.*,
2019 WL 5692168 (N.D. Ind. Nov. 4, 2019) ........................................ 11, 12

*Hinman v. M & M Rental Ctr. Inc.*,
545 F. Supp. 2d 802 (N.D. Ill. 2008) .............................................................. 9

*Jeffries v. Pension Trust Fund*,
172 F.Supp.2d 389 (S.D.N.Y. 2001)............................................................. 17

*Johnson v. Yahoo*,
2018 WL 835339 (N.D. Ill. Feb. 13, 2018) ................................................. 12

*Karhu v. Vital Pharm., Inc.*,
621 F. App'x 945 (11th Cir. 2015)................................................................ 14

*Keim v. ADF MidAtlantic, LLC*,
328 F.R.D. 668 (S.D. Fla. 2018) ................................................................... 10

*KHS Corp. v. Singer Fin. Corp.*,

2018 WL 4030699 (E.D. Pa. Aug. 23, 2018) ............................................................... 8

*Kostmayer Constr., LLC v. Port Pipe & Tube, Inc.*,
2019 WL 1523045 (W.D. La. Apr. 8, 2019).......................................................... 9, 11

*Licari Family Chiropractic Inc. v. eClinical Works, LLC*,
2019 WL 7423551 (M.D. Fla. Sept. 16, 2019) ........................................................ 11

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
289 F.R.D. 674 (S.D. Fla. 2013)............................................................................. 10

*Menocal v. GEO Grp., Inc.*,
882 F.3d 905(10th Cir. 2018) ............................................................................... 6, 9

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) ................................................................................. 16

*Physicians Healthsource, Inc. v. Cephalon, Inc.*,
954 F.3d 615 (3d Cir. 2020)..................................................................................... 7

*Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co.*,
2008 WL 11338389 (W.D. Okla. 2008) ................................................................... 6

*Porcell v. Lincoln Wood Prod., Inc.*,
713 F. Supp. 2d 1305 (D.N.M. 2010) ..................................................................... 15

*Pueblo of Zuni v. United States*,
243 F.R.D. 436 (D.N.M. 2007)............................................................................... 15

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
863 F.3d 460 (6th Cir. 2017) ........................................................................... passim

*Sawyer v. KRS Biotechnology, Inc.*,
2018 WL 2425780 (S.D. Ohio May 30, 2018) .......................................................... 9

*Sibley v. Sprint Nextel Corp.*,
315 F.R.D. 642 (D. Kan. 2016)................................................................................. 6

*Tomeo v. CitiGroup, Inc.*, No. 13 C 4046,
2018 WL 4627386 (N.D. Ill. Sept. 27, 2018) ........................................................ 12

*Torres v. S.G.E. Mgmt., L.L.C.*,
838 F.3d 629 (5th Cir. 2016) ................................................................................... 9

*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*,

BRIEF IN SUPPORT OF MOTION TO DECERTIFY CLASS
iv

725 F.3d 1213 (10th Cir. 2013) ................................................................................. 6

*Wal–Mart Stores, Inc. v. Dukes*,
131 S.Ct. 2541 (2011) ........................................................................................... 15

*Warnick v. Dish Network LLC*,
301 F.R.D. 551 (D. Colo. 2014) ........................................................................... 16

*Wilson v. Badcock Home Furniture*,
329 F.R.D. 454 (M.D. Fla. 2018) ......................................................................... 14

## Statutes

42 U.S.C. § 227(a)(5) .............................................................................................. 7
47 U.S.C. § 227 ....................................................................................................... 1
47 U.S.C.A. § 227(b)(2)(D)(i)-(iii) ......................................................................... 8

## Rules

Fed. R. Civ. P. 23(b)(3) ..................................................................................... 7, 15
Federal Rule of Civil Procedure 23(c)(1)(C) ......................................................... 6
Rule 23 ............................................................................................................... 6, 16

## Other

*In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling*,
34 F.C.C. Rcd. (CGAB 2019) .............................................................................. 17
*In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 1,
4014, 14129 (F.C.C. 2003), 2003 WL 21517853 .................................................. 7
*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*,
21 F.C.C. Rcd. 3787 (2006) ................................................................................... 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On May 29, 2018, the Court certified Plaintiff's class (Dkt. No. 47) with respect to their claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") against Defendant Eurton Electric Company, Inc. ("Eurton")  The linchpin of the Court's Order certifying the class was that "Eurton has no records of who it contacted and who consented."  (May 29, 2018 Order at 2.)

However, Eurton has now developed its factual record of documents showing consent to fax Plaintiff's Class.    This evidence confirms that Plaintiff's class lacks commonality, predominance, ascertainability, numerosity and superiority.

Eurton is a small business that has been operating for over 30 years (Buchanan Decl. ¶ 5) and has faxed its customers with consent.



(Ex. 12 to Buchanan Decl.)

Plaintiff's Class should be decertified.

## II.    BACKGROUND

Eurton supplies and repairs electric motors. (Declaration of John Buchanan, ¶ 4.) It is a small business with 30 employees.  (Buchanan Decl. ¶ 4.)  Eurton engaged a company called WestFax to mount an advertising campaign via fax to a list of recipients that Eurton supplied. (Buchanan Decl. ¶ 8.)  This list included Plaintiff Tech Instrumentation Inc.  (TII) and over 1,000 other people/businesses.  (Buchanan Decl. ¶ 9.)  Eurton developed the list by locating potential

1

customers online and cold calling them to ask whether they would be interested in receiving more information.   (Buchanan Decl. ¶¶ 12-16.)   Eurton does not have records of who it faxed. (Buchanan Decl. ¶ 10-11.)   A subpoena to WestFax only produced invoices.   (Declaration of Stephen A. Watkins, ¶ 2 & Ex. 14.)

### A.      Eurton's Three-Step Process

Eurton's three step process for obtaining fax consent is described as follows:

<u>First Step</u>:  Eurton's practice was to first locate businesses online that might use motors in their operations.  (Buchanan Decl. ¶ 13.)

<u>Second Step</u>:  Cold-call those businesses and ask whether the business would be interested in receiving more information.  (Buchanan Decl. ¶ 14.)

<u>Third Step</u>:  The company policy was to then ask the businesses if they agreed to receive more information, including by fax.  (Buchanan Decl. ¶ 15.)   This was an admittedly imperfect system, so it was also a matter of company policy that Eurton would remove anyone when "mistakes" occurred. (Buchanan Decl. ¶ 17.)   This was few and far in between. (Buchanan Decl. ¶ 17.)

In this regard, consent to fax would be obtained orally. (Buchanan Decl. ¶¶ 13-15.) Moreover, during this process, consent to fax was also obtained via completion of initial credit application, and periodic customer updates, as shown below.

### B.      Credit application form documents consent

As part of its customer process, Eurton would have potential customers complete a credit application and provide their fax number. (Buchanan Decl. ¶ 34-36 & Exhs. 4-5.)   These applications set forth the following permission language with respect to faxes:



(Ex. 4 to Buchanan Decl. at pg. EE1289)

### C.      Customer Contact Information Update Forms document consent

It was Eurton's regular business practice to have its customers complete Customer Contact Update Forms. (Buchanan Decl. ¶¶ 43-47 & Exhs. 6-7.)   These forms set forth the following permission language with respect to faxes:

> "The above information is current is best way of contacting us through normal business communications including: invoices, sales orders, pricing, sales promotions, references, phone, facsimile, e-mails, specials and catalog and brochure mailers, etc.

(Ex. 7 to Buchanan Decl. at EE1287).

### D.      Data Quote form documents consent

Every day, potential customers and long-established customers request and fax to Eurton quotation data sheet flyers and other information.  (Buchanan Decl. ¶¶ 66-67 & Ex. 8)



### E.      Post-lawsuit verification process

Plaintiff's Complaint was filed on December 6, 2016.   Post-lawsuit, without consulting counsel, and because the initial list in question was just a list of numbers, Eurton confirmed consent for potential class members by orally obtaining consent to fax and sending a confirmation fax.  (Buchanan Decl. ¶ 70.)

Eurton would call customers to orally confirm/verify the fax numbers.  (Buchanan Decl. ¶¶ 71-72.)  During this verification process, Eurton would then send these persons who had given their previous permission to fax them a flyer to confirm their prior consent and numbers to receive faxes.  (Buchanan Decl. ¶ 72.)   These fax flyers, have the contacts, verified numbers and have "Permission to Fax was given by contact at the top of the flyer".  (Buchanan Decl. ¶ 73 & Ex. 9.)

## IV.   PLAINTIFF'S CERTIFIED CLASS

The Court's May 29, 2018 Order certified the following class:

Any person/entity who:

1) Received a cold call from Eurton pursuant to its
   three-step procedure; and
2) Is listed on a list prepared by Eurton and supplied to WestFax; and
3) Received one or more faxes sent by Eurton or WestFax between
   December 16, 2013 through the date notice is sent to the Class.

(Dkt. 47 at 6)

## V.   NOTICE IS SENT TO THE CLASS

Prior the sending of notice to the class, Plaintiff and Eurton disputed the data that should

be used to populate the class list.  Eurton requested that the recipients of the class notice should

be based upon the fax list and fax logs, instead of Plaintiff's customer list of 7,500 persons.

In ruling on the dispute, the Court held as follows:

"[E]urton has produced three collections of information that 'can be used to locate class members':

(i)      its 'accounting database system,' that lists all persons and entities (including fax numbers) that have done business with Eurton;

(ii)     the 'potential customer/actual customer spreadsheet' that "captures both potential customers as well as actual customers" (including actual customers who might not have been entered into the accounting database); and

(iii)    Eurton's 'fax list,' which Tech concedes "represents a significant portion of the class in this case," but which may be either over-inclusive (because it includes persons who may have expressly authorized Eurton to send fax advertisements) or under-inclusive (because it omits persons who received unsolicited faxes and who contacted Eurton asking to be removed.)

The Court therefore directed that class notice be sent to the following persons or entities:

(i)      those listed on Eurton's 2017 fax logs;

(ii)     those listed on any existing iteration of Eurton's "fax list"; and

> (iii) those who do not meet either of the first two criteria, but who are noted as having a fax number in either Eurton's accounting database or on its potential customer/actual customer spreadsheet.

(ECF)

For the purposes of class notice, Eurton produced data relating to (ii) those listed on any existing iteration of Eurton's "fax list" and (iii) those who do not meet either of the first two criteria, but who are noted as having a fax number in either Eurton's accounting database or on its potential customer/actual customer spreadsheet. (Buchanan Decl. ¶¶ 21-23.) Eurton did not have any 2017 fax logs other than fax attempts to verify the persons under (ii) and (iii) post-lawsuit. (Buchanan Decl. ¶ 23.)

On January 30, 2020, notice was sent to the first set of class members set forth in EE001-33 (See Dkt. 86 at 3.) Notice was sent to the second class list on June 12, 2020. (Watkins Decl.¶ 25.)

## VI. ONCE CLASS MEMBERS WERE IDENTIFIED, EURTON DEVELOPED EVIDENCE OF CONSENT

Once the Court's Order certifying class and identifying the means to give notice was finalized, Eurton applied its limited resources to developing evidence of consent for these class members. (Buchanan Decl. ¶ 34.) The following chart sets forth the documents that are the basis for Eurton's evidence of consent to fax Plaintiff's Class.

| EE001-33 (first part of class list) | EE002363 (second part of class list) |
|---|---|
| EE1411-1501 (Credit App list recipients plus updates and permissions) EE2023-2361 (List Recipients with update forms and corresponding statements) | EE1502 -2022 (A, B and C evidence of consent to fax) |
| EE2365-3060 – Fax flyers from customers and potential customers faxed to Eutron Electric | EE2365-3060 – Fax flyers from customers and potential customers |
| EE0039-1285 (Verified Contacts with Permission to Fax Approvals) | EE0039-1285 (Verified Contacts with Permission to Fax Approvals) |

## VII.   <u>ARGUMENT</u>

Federal Rule of Civil Procedure 23(c)(1)(C) specifically contemplates that "[a]n order that grants or denies class certification may be altered or amended before final judgment." *Id*.; *see, e.g.*, *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (noting that "[e]ven after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation"); *Menocal v. GEO Grp., Inc*., 882 F.3d 905, 921(10th Cir. 2018) (acknowledging that defendant had the right to file a motion to decertify).

A court may modify a certification order due to, among other things, matters such as lack of numerosity, lack of commonality, or the inadequacy of the named plaintiff as class representative. *Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co*., 2008 WL 11338389, *2 (W.D. Okla. 2008) (citation omitted).  The Tenth Circuit has recognized "that Rule 23(c)(1)(C) permits the district court to alter or amend a certification decision ... parties may suggest such changes as the factual record and legal theories develop." *Carpenter v. Boeing Co*., 456 F.3d 1183, 1191 (10th Cir. 2006).

When faced with a motion to decertify—that is, even after the Court has granted a motion for class certification—the party seeking certification continues to bear the burden of meeting the requirements of Rule 23. *Sibley v. Sprint Nextel Corp*., 315 F.R.D. 642, 651 (D. Kan. 2016) (citing *Arkalon Grazing Ass'n v. Chesapeake Operating, Inc*., 2014 WL 3089556 at *1 (D. Kan. July 7, 2014) ("it remains the plaintiff's burden to prove that the requirements of Rule 23 are met") (citing *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc*., 725 F.3d 1213 (10th Cir. 2013).

As shown below, Plaintiff cannot meet its continued burden to show by a preponderance of the evidence that its class satisfies Rule 23.  Plaintiff's class list lacks commonality, predominance, numerosity, ascertainability and superiority, as shown below.

### A.   The Court's Basis for Holding Plaintiff's Class Established Predominance is Eviscerated by Evidence of Consent Developed Post-Certification

Eurton has assembled substantial evidence of consent such that Plaintiff's class lacks predominance.  Predominance "trains on the legal or factual questions that qualify each class

member's case as a genuine controversy" and tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 624 (1997). Predominance requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This inquiry is "far more demanding" than that for commonality. *Id.* at 623–24, 117 S.Ct. 2231.

Plaintiff's Complaint and its motion for class certification asserted two different basis for liability:

(1)    That the faxes sent by Eurton lacked "prior express invitation or permission."

(2)    That the faxes sent by Eurton did not have a sufficient "opt out" notice.

First, with respect to sending faxes without "prior express invitation or permission," the TCPA only prohibits faxed advertisements that are "unsolicited." *Physicians Healthsource, Inc. v. Cephalon, Inc*., 954 F.3d 615, 618–19 (3d Cir. 2020). An "unsolicited advertisement," is that which is sent "to any person without that person's prior express invitation or permission, in writing or otherwise." *Id.* § 227(a)(5). Thus, fax advertisements sent with the recipient's prior express invitation or permission (i.e., solicited faxes) are not violative of the TCPA. *Id.*

Whether a fax recipient expressly consented to receive fax advertisements must be assessed "on a case-by-case basis" and express permission requires "that the consumer understand that by providing a fax number, he or she is agreeing to receive faxed advertisements." *CE Design Ltd. v. King Architectural Metals, Inc*., 637 F.3d 721, 726 (7th Cir. 2011) (internal quotation marks and emphasis omitted) (quoting *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014, 14129 (F.C.C. 2003), 2003 WL 21517853). The statute does not require a specific form of invitation or permission. *CE Design*, 637 F.3d at 726; 42 U.S.C. § 227(a)(5) (stating that it can be "in writing or otherwise").

The voluntary provision of a number—phone or fax—by a message-recipient to a message-sender, constitutes express consent such that a received message is solicited and thus not prohibited by the TCPA, if the message relates to the reason the number was provided. *Physicians Healthsource*, 54 F.3d at 618 (citing *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 389 (3d Cir. 2017);

*Fober v. Mgmt. & Tech. Consultants, LLC*, 886 F.3d 789, 793 (9th Cir. 2018) (concluding that the provision of a phone number and receipt of a call that relates to "the reason why the called party provided his or her phone number in the first place" constitutes express consent such that the calls were deemed solicited); *KHS Corp. v. Singer Fin. Corp.*, No. 16-55, 2018 WL 4030699, at *4 (E.D. Pa. Aug. 23, 2018) (concluding the same, but in the context of fax advertisements, and collecting cases).

Second, with respect to Plaintiff's class allegations that Eurton's notices did not satisfy the TCPA's opt-out notice rules[1], that does not apply to solicited faxes.   *Bais Yaakov of Spring Valley v. FCC,* 852 F.3d 1078 (D.C. Cir. 2017).  In other words, prior express permission or invitation is a complete defense to an opt-out notice claim.

*Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 328-29 (5th Cir. 2008) is directly on point.  That Court denied class certification of a TCPA fax case due to lack of predominance. In that case where was no class-wide proof for TCPA claim where the defendant obtained consent in different ways (culled fax numbers from purchased databases but also periodically culled fax numbers from various other sources—from information submitted by merchants through BioPay's website, from information submitted at trade shows BioPay attended, and also from lists of companies with which BioPay or its affiliates had an established business relationship).

In granting certification, this Court declined to follow the rationale of *Gene and Gene* because at the time Eurton had not produced documentary evidence of consent, only testimony on how consent would have been orally provided:

> **The essence of Eurton's response to the motion is that a class action would require the Court to engage in mini-trials for each class plaintiff to determine whether it consented to receive Eurton's faxes. Viewed in a vacuum, this argument is appealing**. In the normal course of business, a defendant might maintain records of what potential client was contacted and whether that potential client consented to receive further information. If there was information as to which potential clients consented and which did not, there might be a need to determine whether a consent foreclosed the claim of any particular potential client. **But that**

---

[1] 47 U.S.C.A. § 227(b)(2)(D)(i)-(iii); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C. Rcd. 3787, 3802–03 (2006)

> **is not the situation here. Eurton has no records of who it contacted and who consented**. Instead, it seeks to rely on its "normal practice" to obtain consent prior to sending faxes.  In doing so, Eurton is relying on a standardized course of conduct, which other courts have found is sufficient to establish commonality and typicality. See, e.g., Hinman v. M & M Rental Ctr. Inc., 545 F. Supp. 2d 802, 806 – 07 (N.D. Ill. 2008) (Plaintiffs could identify these users at a specific point in time.

(Dkt. 47 at 3) (emphasis added).  At the 30(b)(6) deposition of Eurton, Eurton's representative meant to state that Eurton had no records of consent with respect to the lead class representative Tech—not that Eurton had no records of consent at all.  (Buchanan Decl. ¶ 33.)

Notwithstanding the foregoing, courts have found that individual inquiries preclude certification where "the defendant's employees kept no records and could not distinguish which recipients gave express consent and which did not, but the record reflected they had collected fax numbers over time from a variety of sources." *Sawyer v. KRS Biotechnology, Inc.,* No. 1:16-CV-550, 2018 WL 2425780 at *12 (S.D. Ohio May 30, 2018), *report and recommendation adopted sub nom. Sawyer v. KRS Glob. Biotechnology, Inc.,* No. 1:16-CV-550, 2018 WL 4214386 (S.D. Ohio Sept. 5, 2018); *Kostmayer Constr., LLC v. Port Pipe & Tube, Inc.,* No. 16-CV-1012, 2019 WL 1523045, at *3 (W.D. La. Apr. 8, 2019) (denying class certification where the defendant received fax numbers from a variety of sources and failed to document in its databases which recipients consented to receive fax advertisements).

Regardless, Defendant has now compiled substantial records demonstrating consent to call specific class members.  As the class list was not developed until post-certification, this is the very definition of developing a fuller factual record.  Plaintiff's class should be decertified, as shown below.

### 1.      Defendant has assembled substantial evidence of consent

Eurton is permitted to present newly developed rebuttal evidence on decertification. *Menocal*, 882 F.3d at 921.  In *Menocal*, although the 10th Circuit affirmed class certification, it noted that "the district court may revisit its decision and choose to decertify the class should [the defendant GEO] eventually produce individualized rebuttal evidence." *Id.* (citing *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 645 (5th Cir. 2016)).

This in line with multiple TCPA decisions inviting later decertification if the defendant could  develop evidence of consent.  *See Keim v. ADF MidAtlantic, LLC*, 328 F.R.D. 668, 686 (S.D. Fla. 2018) ("The Court does not mean to suggest that Defendants cannot seek to decertify the class if Defendants provide more substantial arguments and evidence to show that some forwarders did have the requisite authority to act on the class members' behalf in regard to the texting program."); *Barrett v. Wesley Fin. Grp., LLC*, No. 13CV554-LAB (KSC), 2015 WL 12910740, at *5 (S.D. Cal. Mar. 30, 2015) ("If it uncovers evidence, the Court can consider decertification."); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 695 (S.D. Fla. 2013) (holding "Should the circumstances change and should the Defendants have more substantial arguments or evidence in their favor suggesting that individualized consent…then they are welcome to move for decertification at a later time.")

Eurton developed evidence of prior express permission defeats any claim of predominance, in line with the Sixth Circuit's decision in *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017).

In *Sandusky*, 863 F.3d at 467–70, the Sixth Circuit affirmed a district court's denial of class certification in a TCPA "junk fax" case where the lower court found that "questions of consent presented an individualized issue" which would "entail[ ] combing through hundreds of thousands of customer forms that [the defendant] had produced as evidence of consent, a recipient-by-recipient inquiry that was prohibitive of class certification." *Id*. at 467.

In that case, the defendant gathered consent forms from each customer for facsimile broadcasts, amounting to "over 450,000 pages of various forms." *Id.* at 468. Thus, "identifying these individuals would [have] require[d] manually cross-checking 450,000 potential consent forms against the 53,502 potential class members." *Id.* at 469 (internal quotation marks omitted). The presentation of such cumbersome evidence of actual consent was central to the court's finding that the class should not have been certified. *Id.* at 470 ("Because [the defendant] presented actual evidence of consent to the district court, which required the need for individualized inquiries in

order to distinguish between solicited and unsolicited ... faxes, the district court did not abuse its discretion in denying class certification.").

The court further emphasized the lack of generalized proof regarding who received the defendant's fax because the fax logs no longer existed. *Id*. at 472–73. Thus, the district court would have been forced to conduct an individualized inquiry of each class member to determine who received the fax. *Id.*

Numerous district courts have denied class certification based on sufficient records of consent to fax. *See Gorss Motels Inc. v. A.V.M. Enterprises,* Inc., No. 3:17-CV-01078 (KAD), 2019 WL 4278951, at *4 (D. Conn. Sept. 10, 2019); *Gorss Motels, Inc. v. AT&T Mobility LLC*, No. 3:17CV403 (JBA), 2019 WL 625699, at *6 (D. Conn. Feb. 14, 2019); *Kostmayer Constr., LLC v. Port Pipe & Tube, Inc*., No. 16-CV-1012, 2019 WL 1523045, at *3 (W.D. La. Apr. 8, 2019); *Licari Family Chiropractic Inc. v. eClinical Works, LLC*, No. 8:16-CV-3461-MSS-JSS, 2019 WL 7423551, at *11 (M.D. Fla. Sept. 16, 2019).

Eurton's case aligns with the *Sandusky* decision and these similar cases. Eurton has now developed actual evidence of consent, amounting to thousands of pages of forms. Eurton's documents reflecting consent to fax a significant percentage of the class suffices to decertify the class. *See Gorss Motels, Inc. v. Brigadoon Fitness Inc.*, No. 1:16-CV-330-HAB, 2019 WL 5692168, at *5 (N.D. Ind. Nov. 4, 2019). The Court in that case held that the defendant did not have specifically identify a member of the proposed class that provided prior express permission or produce a log that compiles all prior express permissions. The defendant avoided certification simply by showing that fax numbers were obtained from a variety of sources. *Id.*

Key to the decision in *Brigadoon* was that that the plaintiff had the burden of establishing that class certification is appropriate, and therefore the plaintiff had to propose a viable method of determining a recipient's consent that did not require individualized, fact-based mini-trials for each potential class member. *Id.* "Answering the bona fide issue of whether a particular fax was solicited—as Plaintiff argues Brigadoon must do at this stage—would require an individualized inquiry."

Eurton does the defendant in *Brigadoon* one better—it has identified members of the class that provided prior express permission, as shown below.

**2.    Eurton developed evidence of consent to fax the Initial List and the Supplemental List**

Eurton has developed its evidence of individualized consent determinations for both the Initial Class List and the Supplemental Class List and this Court should decertify the class.

With respect to Initial Class List, the credit applications, update forms, and data quote forms from class members to Eurton clearly demonstrate prior express permission to be faxed. With respect to credit applications, those persons provided their fax numbers at the beginning of the process to become customers.  (Buchanan Decl. ¶ 34B) Those credit applications and Customer Contact Information Update forms include specific language putting them on notice of promotional faxes.  (Exhs. 4-7 to Buchanan Decl.).   These potential and actual customers also provided their fax numbers in Data Quote forms sent to Eurton.  (Buchanan Decl. ¶¶ 66-68 & Ex. 8.)

With respect to the Supplemental Class List, the credit applications and updates clearly demonstrate prior express permission to be faxed.  (Buchanan Decl. ¶¶ 62-65 & Exhs. 5, 7, 11)

In all of these documents, it is clear that the class member voluntarily provided the fax number.  Moreover, these forms make it readily apparent that the number is being provided to facilitate communication with Eurton, including faxing of promotional flyers.

Where a defendant can demonstrate that a significant portion of putative class members may have provided consent, certification is inappropriate, because individualized inquiries relating to consent predominate.  *See, e.g., Johnson v. Yahoo*, No. 14 CV 2028, 2018 WL 835339, at *2 (N.D. Ill. Feb. 13, 2018).  In decertifying the class in *Johnson*, the court noted that "Defendant now has evidence sufficient to justify an individual consent inquiry for a significant percentage of the class (perhaps between 20 to 25%, maybe more)" *Id.* at *3.  Similarly, in *Tomeo v. CitiGroup, Inc*., No. 13 C 4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018), an error rate of 15% precluded certification of a TCPA class.

With respect to the Initial Class List of 1,428 numbers, Eurton has assembled Credit Applications, Customer Information Update Forms and Data Quote forms for approximately 24 percent of the numbers.   (Watkins Decl. ¶¶ 3-16 & Ex. 15.) (Buchanan Decl. ¶¶ 34-68 & Exhs. 1, 3-4, 7, 8, 10).   If the 252 bad numbers are excluded, Eurton's percentage of consent forms rises to 29 percent.  (Watkins Decl. ¶ 17 & Ex. 15.)

With respect to the Supplemental List, credit applications for 90% of contacts beginning with A, B, or C were able to be located.  Buchanan Decl. ¶ 62-65 & Exh 2, 5,7, &11).  Review of credit applications and updates for letters D-Z was prohibitive given Eurton's lack of manpower and COVID-19.  (Buchanan Decl. ¶¶ 37-38).

This documentation of consent bolsters Eurton's evidence of its oral three-step process to obtain consent.  *Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 400 (D. Colo. 2014) (denying certification of TCPA class).   In that case, the plaintiff argued the "mere possibility of consent should not be sufficient to defeat class certification."  *Id.*  Judge Jackson agreed, but held that oral testimony established that every person in the group called by EMI for Paramount Media Group did expressly consent to receive the calls.  *Id.*

In that case, Paramount Media Group hired a California company called Europe Media International or "EMI," which in turn obtained telephone sales leads from a Florida sales-lead generator Robert Tantalo.  *Id.* at 399.   Both Paramount Media Group and Tantalo presented testimony supporting their assertion that all of the class members consented to calls.  *Id.* at 401.  Predictably, in his reply, the plaintiff argued that neither the Paramount representative nor Mr. Tantalo could produce documentation proving that each of the persons on the Tantalo list executed a written consent.  *Id.* at 401.  The Court rejected this argument, holding it was the plaintiff's burden to demonstrate absent of consent can be demonstrated on class wide basis.  *Id.*

In our case, not only does Eurton have oral testimony of consent to fax the class as in *Donaca*, Eurton has documents establish how it obtained consent via forms in the regular course of business.   Plaintiff class should be decertified.

### 3.      Eurton's post-lawsuit evidence of consent

Eurton's evidence of consent only increases once its post-lawsuit verification efforts are included. With respect to class members of Eurton, whereby Eurton received oral confirmation of consent, and therefore Eurton faxed them confirmation, this increases evidence of consent to call the Initial List to 76%, and 92% if the 252 bad numbers are excluded.  (Watkins Decl. ¶ 21 & Exh 15) (Buchanan Decl. ¶¶ 70-74 & Exhs. 9, 10).

### 4.      Plaintiff's Class lacks predominance due to individualized issues as to whether received a Fax from Eurton

In *Sandusky*, the Court held "To our knowledge, no circuit court has ever mandated certification of a TCPA class where fax logs did not exist, and we decline to be the first."  863 F.3d at 473.  In doing so, the Sixth Circuit affirmed the district court ruling that the plaintiff's class therefore lacked predominance and ascertainability.  *Id.*  The Court in *Sandusky* focused on the fact that (1) the fax logs no longer exist; (2) they are not likely to emerge; and (3) fax recipients are not realistically expected to remember receiving a one-page fax sent seven years ago.  *Id.*  All three factors are present in our case as well as the fax logs do not exist (Watkins Decl. ¶ 2 & Ex.14) (Buchanan Decl. ¶ 10-11.).

The Sixth Circuit in *Sandusky* also affirmed the district court's rejection of an affidavit process for self-identification.  *Sandusky*, 863 F.3d at 473.  Similarly, in *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 458 (M.D. Fla. 2018), the Court rejected use of affidavits in a TCPA class, given that the defendant could face up to $ 1500 per call.  "This amount is relevant both as an incentive for individuals to improperly enter the class and, as discussed more fully below, a danger that impacts due process protections for Defendant".  *Id.*  (citing *Karhu v. Vital Pharm., Inc.,* 621 F. App'x 945, 948-49 (11th Cir. 2015).

Plaintiff's Class lacks predominance due to the individualized inquiries as to whether Class Members received a fax.  Plaintiff's Class should be decertified.

### B.        Commonality

Plaintiff's class lacks commonality for the same reasons it lacks predominance—the individualized inquiries presented as to whether a class member consented to a fax. "[T]he crux of the commonality examination is not simply whether there are commonalities among the potential class members, but rather, whether a classwide proceeding will be efficacious in 'generat[ing] common answer**s** apt to drive the resolution of the litigation.'"   *A-W Land Co., LLC v. Anadarko E&P Co. LP*, No. 09-CV-02293-MSK-MJW, 2012 WL 4463869 at *3 (D. Colo. Sept. 27, 2012), *on reconsideration in part sub nom. A-W Land Co., LLC v. Anadarko E & P Co. LP*, No. 09-CV-02293-MSK-MJW, 2013 WL 3199986 (D. Colo. June 24, 2013) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).

Plaintiff's class presents only individualized inquiries as to consent. "Whether a fax was sent without express permission…is an individual question if members of the proposed class will need to present evidence that varies from member to member."   *Gorss Motels, Inc. v. Brigadoon Fitness Inc.*, 331 F.R.D. 355, 360 (N.D. Ind. 2019) (denying certification).

As Plaintiff's class lacks commonality, it should be decertified.

### C.        Plaintiff's Class Lacks Superiority Due to the Mini Trials Presented

Plaintiff's class lacks superiority given the mini-trials presented on the issue of consent and receipt of a fax. Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R Civ. P. 23(b)(3) "Predominance and superiority are closely related: the number of individualized issues affects the manageability of a class action."   *Porcell v. Lincoln Wood Prod., Inc.*, 713 F. Supp. 2d 1305, 1325 (D.N.M. 2010).   "The specter of mini-trials is relevant to the superiority question as well as the predominance question." *Pueblo of Zuni v. United States*, 243 F.R.D. 436, 452 (D.N.M. 2007); *Cox v. Allstate Ins. Co*., No. CIV-07-1449-F, 2012 WL 12860745, at *8 & n.14 (W.D. Okla. Mar. 28, 2012) (same).   *See also Sandusky*, 863 F.3d at 471 (noting but not deciding, that the lack of fax logs could be part of superiority analysis).

---

This Court recognized the dangers of mini-trials presented by Plaintiff's class. "The essence of Eurton's response to the motion is that a class action would require the Court to engage in mini-trials for each class plaintiff to determine whether it consented to receive Eurton's faxes. Viewed in a vacuum, this argument is appealing." (Dkt 47 at 3) The vacuum has now been filled with evidence of consent. Given the 4,000 plus mini-trials presented by Plaintiff's class, Plaintiff's class lacks superiority. The Court should decertify the class.

### D.   Plaintiff's Class lacks ascertainability

Plaintiff's overbroad Class is not ascertainable. Although not specifically mentioned in the rule, an essential prerequisite to an action under Rule 23 is that there must be a class." *Edwards v. Zenimax Media Inc.*, No. 12-CV-00411-WYD-KLM, 2012 WL 4378219 at *5 (D. Colo. Sept. 25, 2012). A class is sufficiently defined if it is "'administratively feasible for the court to determine whether a particular individual is a member.' " *Id.* at *4. " 'Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry.' " *Carrera v. Bayer Corp.*, 727 F.3d 300, 307–08 (3rd Cir.2013) (quotation omitted). If the class "can be ascertained by reference to objective criteria", then it is adequately defined. *Edwards*, 2012 WL 4378219, at *4.

Related to ascertainability are problems with overbreadth of the class. A class is overbroad, and should not be certified, if it includes "a great number of members who could not have been harmed by the defendant's allegedly unlawful conduct." *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 304 F.R.D. 601, 606 (D. Colo. 2015) (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012)); *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 559 (D. Colo. 2014) (same).

The Court in *Warnick* held that an overbroad TCPA subclass lacked ascertainability because it included persons called with consent. *Id.* (citing *Gannon v. Network Tel. Services, Inc.*, No. 12–9777–RGK, 2013 WL 2450199, at *2–3 (C.D.Cal. June 5, 2013) (finding in a situation where the defendant provided evidence that some of the putative class members may have provided consent to text messages that the proposed TCPA class was "unascertainable and

unidentifiable" because the class definition would require individualized inquiry into whether the class members consented.)

Defendant's proof of consent to fax class members demonstrates Plaintiff's class is overbroad and therefore ascertainable.   Moreover, the lack of fax logs also demonstrates lack of ascertainability.  *See Sandusky, supra*.  Plaintiff's Class should be decertified.

### E.      Numerosity

Eurton asserts that Plaintiff's class lacks numerosity, as its current class definition is overbroad.  Plaintiff has not identified any class member faxed without consent other than itself. *See Jeffries v. Pension Trust Fund*, 172 F.Supp.2d 389, 394 (S.D.N.Y. 2001) (noting that while the court may make "common sense assumptions to support a finding of numerosity," it may not "do so on the basis of pure speculation without any factual support," where plaintiff alleged that a large number of union's members were unemployed but failed to proffer evidence of how many laid-off members suffered the alleged injury).

### F.      Faxes to Efaxes should be excluded

In 2019, *Amerifactors Financial Group, LLC* ("*Amerifactors*") "filed a petition for declaratory ruling asking the Commission to clarify that faxes sent to 'online fax services' are not faxes sent to 'telephone facsimile machines.' " *In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling,* CG Docket Nos. 02-278, 05-338, 34 F.C.C. Rcd. 11950, 11950 ¶ 2 (CGAB 2019) [hereinafter "*Amerifactors Ruling*"].

On December 9, 2019, the FCC Consumer and Governmental Affairs Bureau ("CGAB") granted the petition, concluding that "[t]o the extent an unsolicited facsimile advertisement is sent to a service that effectively receives faxes 'sent as email over the Internet' and is not itself 'equipment which has the capacity ... to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper," such service is not "telephone facsimile machine" and does not trigger the statutory prohibition." *Id.* at 11952 ¶ 8.  The *Amerifactors Ruling* was grounds to modify a class definition to exclude such faxes in *Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC*, No. 117CV01149JDBJAY, 2020 WL 4937790, at *2 (W.D. Tenn. Aug.

24, 2020).  However, to exclude such class members would require the same reliance on affidavits that is discouraged by *Sandusky*.  Plaintiff's Class should be decertified for this reason alone.

## VII.    CONCLUSION

For the reasons stated above, Eurton respectfully submits that Plaintiff's Class be decertified.

September 30, 2020                                          /s/ David J. Kaminski
                                                           David J. Kaminski
                                                           Stephen A. Watkins
                                                           Carlson & Messer LLP
                                                           5901 W. Century Blvd., #1200
                                                           Los Angeles, CA 90045
                                                           kaminskid@cmtlaw.com
                                                           (310) 242-2200

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 30th day of September 2020, a true and correct copy of the above and foregoing has been served by electronic notification by filing with the Clerk of Court using the CM/ECF system, which sent notification via e-mail to the following:

ppeluso@woodrowpeluso.com
tsmith@woodrowpeluso.com
woodrow@woodrowpeluso.com

   /s/ David J. Kaminski
David J. Kaminski
Stephen A. Watkins
Carlson & Messer LLP
5901 W. Century Blvd., #1200
Los Angeles, CA 90045
kaminskid@cmtlaw.com
(310) 242-2200
