**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-02981-MSK-KMT

TECH INSTRUMENTATION, INC., a Colorado corporation, individually and on behalf of all others similarly situated,

        Plaintiff

v.

EURTON ELECTRIC COMPANY, INC., a California corporation

        Defendant

---

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO STRIKE ERRATA AND TO DECLARE DISCOVERY CLOSED**

---

## I. INTRODUCTION

Plaintiff's Motion concedes there is no current deadline for discovery as to the merits of its individual claim. (Motion at 2, 3 & Dkt 63) Eurton has propounded limited final discovery as to the merits of Plaintiff's individual claim and noticed Plaintiff's deposition as to limited individual merits issues. Eurton asserts discovery should not close until Plaintiff responds to this final limited discovery and attends its deposition.

## II. BACKGROUND

### A. May 29, 2019 Court Certifies Class

The Court's May 29, 2018 Order certified the following class:

Any person/entity who:

1) Received a cold call from Eurton pursuant to its three-step procedure; and
2) Is listed on a list prepared by Eurton and supplied to WestFax; and
3) Received one or more faxes sent by Eurton or WestFax between December 16, 2013 through the date notice is sent to the Class.

(Dkt. 47 at 6)

### B. Dispute as to Class List delays class notice

Prior the sending of notice to the class, Plaintiff and Eurton disputed the data that should be used to populate the class list. Eurton requested that the recipients of the class notice should be based upon the fax list and fax logs, instead of Plaintiff's customer list of 7,500 persons.

In ruling on the dispute, on September 13, 2019 the Court held as follows:

> "[E]urton has produced three collections of information that 'can be used to locate class members':
>
> (i)     its 'accounting database system,' that lists all persons and entities (including fax numbers) that have done business with Eurton;
>
> (ii)    the 'potential customer/actual customer spreadsheet' that "captures both potential customers as well as actual customers" (including actual customers who might not have been entered into the accounting database); and
>
> (iii)   Eurton's 'fax list,' which Tech concedes "represents a significant portion of the class in this case," but which may be either over-inclusive (because it includes persons who may have expressly authorized Eurton to send fax advertisements) or under-inclusive (because it omits persons who received unsolicited faxes and who contacted Eurton asking to be removed.)

The Court therefore directed that class notice be sent to the following persons or entities:

(i)     those listed on Eurton's 2017 fax logs;

(ii)    those listed on any existing iteration of Eurton's "fax list"; and

(iii)   those who do not meet either of the first two criteria, but who are noted as having a fax number in either Eurton's accounting database or on its potential customer/actual customer spreadsheet.

(Dkt 72 at 4.)

### C. January 27, 2020 – Current Eurton Counsel first appears

On January 27, 2020, current counsel for Eurton, Carlson & Messer first appeared into the case.

### D. January 30, 2020 – Notice sent to first set of class members

On January 30, 2020, notice was sent to the first set of class members set forth in EE001-

33 (See Dkt. 86 at 3.)

### E. June 12, 2020 Notice Sent to second list of Class Members

After new defense counsel Carlson & Messer appeared in the case on January 27, 2020, it became apparent to Eurton that Plaintiff's list for class notice did not include the fax numbers relating to section iii of the Court's class notice order. The parties worked to to provide additional information in order to comply with the Court Order. (Declaration of Stephen A. Watkins, ¶ 4.) Notice was sent to the second class list on June 12, 2020. (Watkins Decl.¶ 6.)

### F. July 30, 2020 Meet and Confer

After Plaintiff received Eurton's substantial supplemental disclosures, the parties met and conferred several times, including on July 30, 2020. At that time, Plaintiff reiterated it would oppose any decertification motion based on Eurton's supplemental disclosures. (Watkins Decl. ¶ 8.) When Eurton informed Plaintiff that it wanted to take Plaintiff's deposition, Plaintiff stated to send a notice. (Watkins Decl. ¶ 9.)

### G. September 30, 2020 – Eurton files its motion to decertify class

On September 30, 2020, Eurton filed its Motion to Decertify Class. Dkt. 90.

### H. October 1, 2020 – Eurton notices Plaintiff's deposition on individual merits issues

On October 1, 2020, Eurton noticed Plaintiff's deposition for October 23, 2020. See Watkins Decl., Ex. A.

## II. ARGUMENT

### A. Mr. Buchanan's errata should not be stricken

#### 1. The Court has discretion not to strike the errata

Eurton acknowledges that Federal Rule of Civil Procedure 30(e) requires that changes to a deposition on an errata sheet must be provided within 30 days of being notified that a transcript is available. However, the Court is also permitted to exercise its discretion in determining whether to permit or strike evidence in a case and has the discretion to extend the time by which an errata

sheet must be filed. *Macon v. United Parcel Serv. Co.* Inc., 674 Fed. Appx. 943, 953 (11th Cir. 2017); *EBC, Inc. v. Clark Bldg. Sys.,* 618 F.3d 253, 266, fn. 12 (3rd Cir.2010 ("The natural language of the rule, then, does not preclude courts from allowing more time upon a request or forgiving minor untimeliness after the fact. Instead, the rule grants courts discretion to do so under appropriate circumstances.").

Moreover, under Federal Rule of Civil Procedure 6(b)(1)(B), this Court is further permitted to extend a party's time to act under the federal rules upon a motion made after the time for acting has expired upon excusable neglect.

Courts around the country, including this one, have noted that missing a deadline to provide an errata sheet alone is not justification for striking an errata sheet in every case and that the untimely submission of an errata sheet can be forgiven after the fact. *Griffin v. Harvey*, No. 1:05-CV-355-BBM-JMF, 2006 WL 8431894 (N.D. Ga. July 13, 2006); *Veolia Water Solutions & Tech. N.A., Inc.*, 123 F. Supp. 3d 695, 704-05 (W.D. Pa. 2015) ("failure to comply with all the technical requirements of Rule 30(e) does not automatically result in exclusion of a deponent's errata sheet"); *Int'l Longshore & Warehouse Union v. Port of Portland*, No. 3:12-cv-01494-SL, 2014 WL 1343422, at *6 (D. Org. April 3, 2014); *Hambleton Bros. Lumber Co. v. Balkin Enter., Inc*., 397 F.3d 1217, 1224 (9th Cir. 2005) (noted as a leading authority for permitting courts to exercise discretion in accepting an untimely errata sheet).

Mr. Buchanan's confusion only became apparent after new defense counsel worked with him to develop evidence of consent for Eurton's decertification motion. (Watkins Decl. ¶ 12.) The Court should exercise its discretion and permit the errata.

2. **Buchanan's changes should be permitted**

Under Fed.R.Civ.P. 30(e), a deponent is allowed to review and make changes to a deposition transcript, "in form or substance," and may sign a statement listing those changes and the reasons for making them. "Rule 30(e) permits any changes to deposition testimony, except those material changes that fail the *Burns* test." *Summerhouse v. HCA Health Servs. of Kan*., 216

F.R.D. 502, 208 (D.Kan.2003). The *Burns* test refers to the Tenth Circuit's decision in *Burns v. Board of County Commissioners of Jackson County*, which explains that material changes to deposition testimony under Rule 30(e) should be considered under the "sham affidavit" analysis. 330 F.3d 1275, 1282–83 (10th Cir.2003).

Under that analysis, the Court considers the following factors: "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Id.* at 1282 (applying *Franks v. Nimmo*, 796 F.2d 1230 (10th Cir.1986)); *Porter v. W. Side Rest., LLC*, No. 13-1112-JAR-KGG, 2014 WL 1642152, at *5 (D. Kan. Apr. 24, 2014).

In *Porter*, the plaintiff brought a putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), claiming violations of the FLSA's minimum wage and overtime pay requirements. *Id.* at *1. In support of their summary judgment reply, the defendants relied on in part on a deposition errata sheet of defendant Tayssir Issa, doing business as IHOP. *Id.* the plaintiff moved to strike. *Id.*

The Court held that during Tayssir's deposition, the plaintiff's counsel asked a series of questions to determine (1) the scope of the IHOP expediter's duties; and (2) whether IHOP explained the tip credit or tip pool to its servers. *Id.* *3.

With respect to server and expediter duties, the plaintiff relied on Tayssir's deposition testimony to support her argument that the expediter remains at the "back of the house" near the kitchen and does not interact with the customers. *Id.* at *4. Plaintiff's counsel asked Tayssir to review the IHOP employee manual, and confirm that the main job of the expediter is to "be at the pass bar, which is in the back of the house." Tayssir responded: "Right." *Id.*

On the errata sheet, Tayssir corrected his reply of "right" on page 178 by saying that two questions were posed, and his response was only to the first one about the expediter being at the

passbar. The Court agreed that Tayssir was asked a compound question and his answer could reasonably be construed as replying to the first and not necessarily the second question. *Id*. It held the response provided in the errata sheet was a reasonable clarification of Tayssir's answer. "Because the errata sheet and declaration attempt to clarify and not necessarily change his deposition testimony, the Court does not find that it should be excluded under Burns." *Id*. at *4.

Moreover, the Court held "[e]ven if it they are considered material corrections, the Court finds that the deposition transcript provided reflects confusion to which the deponent tries to explain." *Id*. at *4.

Similarly, Plaintiff makes no argument that the errata seeks material corrections. Even if it could, Mr. Buchanan was clearly confused during his deposition as to whether Plaintiff's attorney was referring to his individual client or the entire putative class:

The errata seeks to correct pages 59, 66, 76, 93, 94, 95, 96, 101, 115, and 136. The key errata at issue is page 66 of the Deposition Transcript of John Buchanan. Errata is in italics.

> Q. But we have already established that you have no evidence that any fax sent to my client was solicited; correct?
> A. No.
> Q. You do have evidence?
> A. I'm sorry. Evidence, no. No evidence. You're right.
> Q. In fact, you don't have evidence, sitting here today, that any of the faxes you sent were solicited; correct?
> A. I need to clarify what we said earlier. Yes. To answer the earlier question prior to this lawsuit, I had no evidence or e-mails. [**with respect to your client only**]

(Buchanan Depo. at pg. 66, Ex. B to Watkins Decl.) (See also Declaration of John Buchanan, Dkt 90-3 at ¶ 33 pg. 5)

Just as in *Porter*, referring to prior question which was limited (in our case to Plaintiff), led to confusion or ambiguity as to a subsequent question. 2014 WL 1642152, at *3-4. Plaintiff has asserted that this meant the entire class. However, the evidence of consent submitted in support of Eurton's motion for decertification supports the argument that this errata is clarification. *Mason*

674 F. App'x at 953 (errata was clarification where changes were consistent with other evidence presented).

Plaintiff's motion to strike the Buchanan errata should be denied.

**B.      Plaintiff's motion is premature because Eurton is entitled to conduct merits discovery**

Plaintiff complains that "it's now September 2020 and Eurton believes it's entitled to serve a new round of discovery requests, almost 3 years after it served its first request." (Motion at 6.) First, Plaintiff concedes there is no current deadline for discovery as to Plaintiff's merits claims. Second, Eurton's limited additional discovery was specifically targeted at Plaintiff's individual claims. Finally, Plaintiff did not previously dispute Eurton's right to take its deposition. (Watkins Decl. ¶ 9.) Plaintiff's motion should be denied, as shown below.

**1.      Eurton's Supplemental Disclosures were in support of its now-filed motion to decertify class**

Plaintiff's characterizes Eurton's post-certification supplemental disclosures as an attempt to "relitigate", but it was simply putting before Plaintiff, Eurton's likely evidence in support of a decertification motion. The Tenth Circuit has recognized "that Rule 23(c)(1)(C) permits the district court to alter or amend a certification decision ... parties may suggest such changes as the factual record and legal theories develop." *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1191 (10th Cir. 2006).

Until the class members were identified, Eurton was no in position to develop evidence in support of decertification—i.e., to match credit applications and update forms to actual class members. The persons to receive class notice were not even finalized until June 1, 2020. (Watkins Decl. ¶ 5.)

Eurton produced its extensive supplemental disclosures to comply with Fed. R. Civ. P. 26. Moreover, these supplemental disclosures provided sufficient background so that the meet and confer pursuant to Local Rule 7.1 regarding Eurton's decertification motion would be fully

informed. Plaintiff asserts "[if Eurton has a basis for moving to decertify the Class, it should present a motion." (Motion at 6.) Eurton has now done so. (Dkt 90.)

Eurton did not propound any additional class discovery, and Plaintiff's motion is notably devoid of reference to any such discovery.

### 2. Eurton's final discovery is targeted at Plaintiff's individual claims

There is no current deadline for discovery as to Plaintiff's merits claims. Plaintiff will not be prejudiced by final discovery on these claims. "The Court does not believe that Plaintiffs would be prejudiced by having to prove the merits of their claims, particularly considering the fact that **this case has no discovery cutoff or trial date set**." *See, e.g., Harbour v. Sirico*, No. 18-CV-01055-JWD-EWD, 2019 WL 2929510, at *6 (M.D. La. July 8, 2019) (emphasis added) (setting aside default judgment).

Second, Eurton's discovery was specifically targeted at Plaintiff's individual claims:

> INTERROGATORY NO. 14: Identify YOUR "telephone facsimile machine" that allegedly received DEFENDANT's fax, by make, model no., and type of device.
>
> INTERROGATORY NO. 15 Please state how the equipment that received DEFENDANT's fax could transcribe a fax onto paper.
>
> INTERROGATORY NO. 16 If YOU ever listed or provided (303) 840-8568 to any directory, please identify what directory and when and how the number was provided.
>
> INTERROGATORY NO. 17 Please state whether DEFENDANT's fax was received as an e-mail or other online service.

(88-3 at pg. 4)
> REQUEST FOR PRODUCTION NO. 15:
> Any and all exhibits YOU may introduce at the trial of this matter
> REQUEST FOR PRODUCTION NO. 16:
> All DOCUMENTS responsive to any subpoenas issued by YOU.
> REQUEST FOR PRODUCTION NO. 17:
> All DOCUMENT Supporting YOUR contention that DEFENDANT's junk faxes caused the recipients to lose paper and toner consumed in the printing of the Defendant's faxes.
> REQUEST FOR PRODUCTION NO. 18:

> All DOCUMENTS supporting YOUR contention that DEFENDANT's faxes cost YOU time, as YOU allegedly wasted time receiving, reviewing and routing DEFENDANT's unauthorized faxes.
> REQUEST FOR PRODUCTION NO. 19:
> All DOCUMENTS showing YOU received DEFENDANT's fax via a physical fax machine.
> REQUEST FOR PRODUCTION NO. 20:
> DOCUMENTS reflecting the machine that received DEFENDANT's fax.
> REQUEST FOR PRODUCTION NO. 21:
> DOCUMENTS reflecting any directory to which YOU submitted the number (303) 840-8568

(88-3 at pg. 10)

Similarly, Eurton's deposition notice for October 23, 2020 is targeted at Plaintiff's individual claims. (Watkins Decl. ¶ 10, Ex. A.)

Eurton should be entitled further discovery on the merits of Plaintiff's individual claims, as there are several defenses. In 2019, *Amerifactors Financial Group, LLC* ("*Amerifactors*") "filed a petition for declaratory ruling asking the Commission to clarify that faxes sent to 'online fax services' are not faxes sent to 'telephone facsimile machines.' " *In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling,* CG Docket Nos. 02-278, 05-338, 34 F.C.C. Rcd. 11950, 11950 ¶ 2 (CGAB 2019) [hereinafter "*Amerifactors Ruling*"].

On December 9, 2019, the FCC Consumer and Governmental Affairs Bureau ("CGAB") granted the petition, concluding that "[t]o the extent an unsolicited facsimile advertisement is sent to a service that effectively receives faxes 'sent as email over the Internet' and is not itself 'equipment which has the capacity ... to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper," such service is not "telephone facsimile machine" and does not trigger the statutory prohibition." *Id.* at 11952 ¶ 8. The *Amerifactors Ruling* was grounds to modify a class definition to exclude such faxes in *Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC*, No. 117CV01149JDBJAY, 2020 WL 4937790, at *2 (W.D. Tenn. Aug. 24, 2020).

Eurton asserts that at minimum, if Plaintiff received the faxes at issue as email over the Internet, it does not have a claim under the TCPA.

As another defense, if Plaintiff provided its number on a directory, that is a defense to a TCPA claim that it was not consented.

> The ban on unsolicited facsimile advertisements specifically does not apply if: (1) the sender has an "established business relationship" with the recipient, 47 U.S.C. § 227(b)(1)(C)(i); (2) the sender obtained the recipient's facsimile number from "a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution," 47 U.S.C. § 227(b) (1)(C)(ii); or (3) the advertisement contains a disclosure statement that easily enables the recipient to unsubscribe from any future distributions, 47 U.S.C. § 227(b)(1)(C)(iii).

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc*., No. CIV.A. 11-2658 JBS, 2014 WL 4755487, at *4 (D.N.J. Sept. 24, 2014).

Eurton is entitled to discovery on these claims. Eurton is only seeking Plaintiff's deposition as to individual merits claims and for Plaintiff to respond to these final written discovery requests. Eurton will not be propounding any other additional discovery.

### III.   CONCLUSION

The Court previously vacated the discovery deadline for Plaintiff's individual claims. Eurton is not seeking discovery on class discovery issues. Eurton is merely seeking some final discovery as to Plaintiff's individual claims. Plaintiff's motion to declare discovery closed should be denied to extent it seeks to preclude its deposition and to avoid responding to limited final written discovery.

| October 2, 2020 | /s/ David J. Kaminski |
|---|---|
| | David J. Kaminski |
| | Stephen A. Watkins |
| | Carlson & Messer LLP |
| | 5901 W. Century Blvd., #1200 |
| | Los Angeles, CA 90045 |
| | kaminskid@cmtlaw.com |
| | (310) 242-2200 |

### CERTIFICATE OF SERVICE

I hereby certify that, on the 2nd day of October 2020, a true and correct copy of the above and foregoing has been served by electronic notification by filing with the Clerk of Court using the CM/ECF system, which sent notification via e-mail to the following:

ppeluso@woodrowpeluso.com
tsmith@woodrowpeluso.com
woodrow@woodrowpeluso.com

   /s/ David J. Kaminski
David J. Kaminski
Stephen A. Watkins
Carlson & Messer LLP
5901 W. Century Blvd., #1200
Los Angeles, CA 90045
kaminskid@cmtlaw.com
(310) 242-2200

{00140457;1} 1