**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-02981-MSK-KMT

TECH INSTRUMENTATION, INC., a Colorado corporation, individually and on behalf of all others similarly situated,

                       Plaintiff

v.

EURTON ELECTRIC COMPANY, INC., a California corporation

                       Defendant

---

**DEFENDANT'S REPLY IN SUPPORT OF MOTION
TO DECERTIFY CLASS**

---

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff has a continuing duty to demonstrate that its class satisfies Rule 23, even after class certification. *Sibley v. Sprint Nextel Corp.*, 315 F.R.D. 642, 651 (D. Kan. 2016). Rather than face the fact Plaintiff cannot meet its burden to show its certified class satisfies Rule 23, Tech's Opposition argues that Eurton is "relitigating" the case. This argument ignores "that Rule 23(c)(1)(C) permits the district court to alter or amend a certification decision ... parties may suggest such changes as the factual record and legal theories develop." *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1191 (10th Cir. 2006).

The certified class definition was different than the individuals that received notice. Post-certification, Eurton matched its consent evidence to the persons that actually received notice. This is the very definition of developing facts under Rule 23(c)(1)(C).

Plaintiff's class should be decertified.

/ / /

/ / /

## II.     ARGUMENT

### A.     Eurton's Motion is timely

Plaintiff, in its Opposition, appears perplexed that Eurton would challenge the certification order.  Eurton's Motion is timely.  *Anderson v. Boeing Co*., No. 02 CV 0196 CVE FHM, 2006 WL 2990383, at *2 (N.D. Okla. Oct. 18, 2006).  In granting a motion for decertification, the Court in *Anderson* noted that "it could modify or decertify a class or subclass at any time before final judgment."  (citing *Weinman v. Fid. Capital Appreciation Fund* (*In re Integra Realty Res., Inc*.), 354 F.3d 1246, 1261 (10th Cir.2004) ("[A] trial court overseeing a class action retains the ability to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment"); Fed.R.Civ.P. 23(c)(1)(C) ("An order under [Rule 23] may be altered or amended before final judgment").

Indeed, the Supreme Court noted that, even after a thorough consideration of Rule 23(a) requirements, judicial flexibility is allowed to accommodate developments during litigation which may result in the need to modify the certification order.  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982).  The initial certification order, therefore, is "inherently tentative." *Id.*

Plaintiff characterizes this as a "four-year old" case, but the class certification decision was not until May 29, 2018.  The parties disputed how the class was to receive notice, such that the persons who were to receive notice was not determined until in the Court's September 13, 2019 Order.  (Dkt No. 72.)  It is Plaintiff's burden to provide class notice (Rule 23(c)(2)(B)) and it did not move to do so until March 4, 2019.  (Dkt. 65.)

There is no current discovery cut off and there is no trial date.  Although Eurton started providing supplemental disclosures in June 2020, not once did Plaintiff take any discovery with respect to these supplemental disclosures.  Nor did Plaintiff move to declare discovery closed and seek a trial date until September 18, 2020.  (Dkt. 88.)  Plaintiff's Opposition omits any reference of COVID with respect to this "four-year old" case, which delayed Eurton assembling its evidence of consent.  (Buchanan Decl. ¶¶ 4, 37-38.) (Dkt. 90-3)

It is Plaintiff's duty to demonstrate that the certified class continues to satisfy Rule 23. *Sibley*, 315 F.R.D. at 651.  Plaintiff chose not to take discovery with respect to Eurton's supplemental disclosures.  It cannot claim prejudice from Eurton's motion to decertify where there is no discovery cut off and no trial date.  Plaintiff simply failed to satisfy its continuing duties.

**B.**    **A motion for decertification is not a motion for reconsideration**

Plaintiff attempts to circumvent its continuing burden to demonstrate that its class satisfies the Rule 23 requirements by asserting Eurton's motion is a motion for reconsideration (Opp. at 4), which requires "new" evidence.  However, a motion to decertify a class is not the same as a motion for reconsideration.  *Anderson Living Tr. v. WPX Energy Prod., LLC*, 308 F.R.D. 410, 438 (D.N.M. 2015).  The Court in *Anderson* clarified the distinction as follows:

> Rule 23 enables a district court to alter or amend its class certification decision any time before final judgment. A court may change its mind in either direction; it can:
> • certify a class that it initially rejected, or
> • decertify or modify a class that it initially approved.
> While both types of motions are plausible, decertification and modification are far more common than reconsideration.

*Id.*  The Court in *Anderson* went on to state:

> **The difference is easily explained: courts experience themselves as having somewhat unfettered discretion to decertify or modify as part of their oversight of the class suit**, but they tend to adjudicate motions for reconsideration through the standard approach to such motions—namely, that they are an exception to the law of the case doctrine—and that approach makes reconsideration highly unlikely.

*Id.*  (emphasis added).

Moreover, when a district court certifies a class action, it has an ongoing responsibility to modify or decertify the class as the need arises, and there is no presumption against doing so if the circumstances warrant.  *Id.* at 440 n. 16.  As noted by the Court in *Anderson*:

> This responsibility stands in contrast to the strict application of the law-of-the-case doctrine to which many district courts adhere, and creates a one-sided standard wherein **class action defendants have an easier time seeking reconsideration of adverse rulings than class action plaintiffs do**

*Id.* (emphasis added).   In line with this reasoning, the Court in *Arkalon Grazing Ass'n v. Chesapeake Operating, Inc*., No. 09-1394-CM, 2014 WL 3089556, at *1 (D. Kan. July 7, 2014) declined to treat a motion to decertification as one for reconsideration.  In doing so, the Court in *Akalon* rejected the authorities cited by Plaintiff in our case, *Schell v. OXY USA Inc*., No. 07–1258–JTM, 2013 WL 4857686, at *3 (D.Kan. Sept. 11, 2013) and *In re Motor Fuel Temperature Sales Practices Litig*., 279 F.R.D. 598, 600 n. 2, 615 (D.Kan.2012),  (Opp. at 4).  Instead, the Court chose to follow Rule 23(c)(1)(C):

> Although some courts have applied a standard more similar to one used when deciding a motion for reconsideration, see, e.g., Schell v. OXY USA Inc., No. 07–1258–JTM, 2013 WL 4857686, at *3 (D.Kan. Sept.11, 2013); In re Motor Fuel Temperature Sales Practices Litig., 279 F.R.D. 598, 600 n. 2, 615 (D.Kan.2012), the court finds that Rule 23(c)(1)(C) is most on point. But the court does agree that "the defendant must logically provide some reason for the court to change its conclusion ." Schell, 2013 WL 4857686, at *3. Yet, it remains the plaintiff's burden to prove that the requirements of Rule 23 are met. See Roderick, 725 F.3d at 1218.

*Id.*  It only makes sense to apply the specific Federal Rule that is dedicated to class action review, Rule 23, rather than either Rule 59 or inherent authority for reconsideration.  Plaintiff's attempt to recharacterize Eurton's motion as a motion for reconsideration should be denied.

### C.  Rule 23 authorizes post-certification review of Eurton's developed factual record

### 1.  The class definition was not finalized until after certification

Eurton's evidence is properly before the Court on decertification.  Buried in a footnote, Plaintiff asserts "Eurton's contention that it could not "develop[] evidence of consent" until class members were identified (Dkt. 90 at 5) is specious."  (Opp. at 4, n.1 )  Plaintiff asserts that the class list was produced by Eurton itself and it had records of who was in the Class throughout the duration of the case.  Plaintiff's Opposition never addresses the fact that the parties disputed who should be in the class after certification.

 On May 29, 2018, the Court granted certification under Federal Rule of Civil Procedure to the following Class:

> Any person/entity who:
> (1) received a cold call from Eurton pursuant to its three step procedure; and
> (2) is listed on a list prepared by Eurton and supplied to WestFax; and
> (3) **received one or more faxes sent by Eurton or WestFax between December 16, 2013 through the date notice is sent to the Class**.

(Dkt. 47.) (emphasis added).

There is no record of the faxes actually sent.  (Declaration of John Buchanan, ¶ 11 (Dkt. 90-3 at 2); See also Dkt. 72 at 3, 90-17.  Under *Sandusky*, this alone is sufficient to decertify the class.  *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc*., 863 F.3d 460, 473 (6th Cir. 2017) ("To our knowledge, no circuit court has ever mandated certification of a TCPA class where fax logs did not exist, and we decline to be the first.")

 Plaintiff originally proposed sending notice to all known customers of Eurton.  (Dkt 72 at 2.)  Eurton proposed notice only to those who were known to have been faxed in 2017 and those who are listed on a "fax list" kept by Eurton.  (Dkt 72 at 2)

This Court held that the best scope of notice would be bounded by class definition itself: element (ii) of the class definition requires that class members be "listed on a list prepared by Eurton and supplied to WestFax,".   (Dkt 72 at 2-3.)

However, it was not clear to the Court that a specific list of this type actually existed: the Court noted its "review of Tech's Motion for Class Certification (# 36) seems to indicate that WestFax has no such document(s) and that Eurton has deleted any records that it might have that meet this description."  (Dkt 72 at 3.)

Thus the Court held, "Reliance on the fax list, as augmented by the technique described by Tech to restore deleted entries, thus comes closest to ensuring that notice is set to all persons who might have received faxes (wanted or otherwise) from Eurton."  (Dkt 72 at 4.)

Therefore, the Court directed that Tech's notice of this action be sent to the following persons or entities:

(i)        those listed on Eurton's 2017 fax logs;

(ii)       those listed on any existing iteration of Eurton's "fax list"; and

(iii)    those who do not meet either of the first two criteria, but who are noted as having

a fax number in either Eurton's accounting database or on its potential customer/actual

customer spreadsheet.

(Dkt. 72 at 4.)

The specific class certified was a definition to which notice could not be specifically sent

as there were no records of who were actually faxed.  The individuals that were identified for the

purposes of class notice new information which Eurton was within its rights to challenge, with its

evidence under either Rule 23(c)(1)(C) or a reconsideration standard.  Plaintiff's reliance on *Bell

v. Brockett*, 922 F.3d 502, 513 (4th Cir. 2019) is inapposite as the Court's ruling in *Bell* specifically

held that the case had progressed to the point of payment of funds to class members.

## 2.    Eurton developed a fuller factual record post-certification

The Tenth Circuit has recognized "that Rule 23(c)(1)(C) permits the district court to alter

or amend a certification decision ... parties may suggest such changes as the factual record and

legal theories develop."  *Carpenter,* 456 F.3d at 1191.  A class action may also be decertified

"where new facts have been developed to justify such a redetermination, as where issues the court

has identified as substantial later appear insufficient to justify the class procedure.

*Ponca Tribe of Indians of Oklahoma v. Cont'l Carbon Co.*, No. CIV-05-445-C, 2008 WL

11338389, at *2 (W.D. Okla. July 1, 2008).

At a minimum, the evidence of consent developed by Eurton is the fuller development of

facts contemplated by Rule 23(c)(1)(C).  *In re FleetBoston Fin. Corp. Sec. Litig.*, No. CIV A 02-

4561 (GEB), 2007 WL 4225832, at *9 n.6 (D.N.J. Nov. 28, 2007).  In that case, the plaintiff sought

to redefine the class definition with specific additions.  The Court analyzed whether the motion

properly filed under Rule 23(c)(1)(C) should be construed as a motion pursuant to 59(e) or 60(a).

*Id.* at *3-4.

The Court held that Rule 23(c)(1) applied rather than Rule 59(e) in part due to, the language

and history of Rule 23(c)(1)(C), as well as the common practice of federal judiciary.  2007 WL

4225832, at *6.  The defendants in *In re FleetBoston* asserted that in order to obtain an alteration

of the class definition, the plaintiffs had to assert "new" facts, i.e., facts qualitatively different from those stated in the Complaint. *Id.* at *9, n. 14. The Court rejected this "new evidence" standard, for "fuller development," stating in pertinent part:

> While the "new evidence" inquiry is a part of Rule 59(e) considerations, see Fed.R.Civ.P. 59(e), Rule 23(c)(1)(C) allows a motion to be made upon a "fuller development of the facts," **even if the very same facts were already outlined by the time of original class certification.**

*Id.* (citing Notes of Advisory Comm., Subdivision (c)(1) (1966)) (emphasis added). "Essentially, Rule 23(c)(1)(C) is triggered by the development of more facts that may render the original determination unsound." *Durand v. Hanover Ins. Grp., Inc.*, 294 F. Supp. 3d 659, 673 (W.D. Ky. 2018) (citing *In re FleetBoston,* 253 F.R.D. at 338).

This is consistent with *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 921 (10th Cir. 2018). The Court in *Menocal* held that after three months of discovery regarding class certification issues, the defendant did not present any individualized rebuttal evidence to the district court that would cause individual causation questions to predominate at trial. However, it noted that "the district court may revisit its decision and choose to decertify the class should [defendant] eventually produce individualized rebuttal evidence." *Id.* (citing *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 645 (5th Cir. 2016)).

Plaintiff asserts that although identifying class members for the purpose of notice was not performed until after class certification, that matching documents of consent to those now identified class members is not "development of new facts." Plaintiff is wrong. *See, e.g.*, *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 500 (E.D. Cal. 2014). In *Arredondo*, the court granted partial decertification of a class of federal and state law wage and hour violations. *Id.* at 498. In support of decertification, the defendant presented thirty-nine new declarations of workers and foremen. *Id.* at 500-501. There was no showing that these declarations were not available prior at the time of certification. The Court decertified the post-work and tray washing subclasses. *Id.* at 542.

Similarly, in *Westways World Travel, Inc. v. AMR Corp.*, No. EDCV 99-386, 2005 WL 6523266, at *6 (C.D. Cal. Feb. 24, 2005), the court decertified a civil RICO class action seeking recovery from the defendant's scheme to charge the class members monetary penalties for ticketing violations committed by airline passengers who purchased tickets from travel agencies. *Id.* at *1. Post certification, the defendants produced evidence that "individualized reliance issues related to plaintiffs' knowledge, motivations, and expectations bear heavily on the causation analysis" in this case. *Id.* at *6.

The Ninth Circuit affirmed decertification, despite the dissent asserting the very argument Plaintiff makes in this case—that this reliance information was available at the time of certification and not new. *Westways World Travel, Inc. v. AMR Corp.*, 265 F. App'x 472, 476 (9th Cir. 2008). *See also Edwards v. First Am. Corp.*, 289 F.R.D. 296, 304 (C.D. Cal. 2012) (although plaintiff asserted evidence on decertification was not new, "Nevertheless, the Court will consider defendants' 'new' evidence on the merits in the interest of judicial economy, as it would be a waste of the resources of this Court and the parties to continue this litigation as a class action if the class ultimately proves to be unmanageable.")

The facts at the time of class certification were (1) a class definition that required the class member receive a fax; and (2) that there were no records of who actually received a fax, but there was a list of persons <u>likely</u> faxed. Post-certification, this Court ruled that the class notice be sent to certain individuals, even if there was no evidence that they received a fax. Eurton maintains that its cross-matching of its consent evidence to the persons identified for class notice is new evidence (satisfying the reconsideration standard), or at a minimum, fuller development of facts outlined at the time of class certification (satisfying Rule 23(c)(1)(C)).

Therefore, Plaintiff's argument that Eurton had an obligation to present this evidence at the time of opposition to class certification or it is waived (Opp. at 7) lacks merit.

### D. Decertification is warranted under the reconsideration standard

"Although the Tenth Circuit has not precisely defined 'manifest injustice' ... that term is commonly defined as 'a direct, obvious, and observable error in a trial court ....' Where

reconsideration is sought due to manifest injustice, the moving party can only prevail if it demonstrates that the injustice from the case is apparent to the point of being indisputable." *Tri-State TruckIns., Ltd. v. First Nat'l Bank*, No. 09-4158-SAC, 2011 WL 4691933, at *3 (D. Kan. Oct. 6, 2011).

For this court to maintain certification of this class when there is clearly significant evidence of consent to fax class members constitutes manifest injustice.   As set forth more extensively in Eurton's opposition to strike Errata, Eurton's deponent was confused as to whether Plaintiff meant whether Eurton had consent to fax the lead Plaintiff as opposed to anyone in the class.  (Dkt. 91 at 4-7.)

Moreover, at a minimum, the ruling on December 9, 2019 in *In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling,* 2019 WL 6712128, CG Docket Nos. 02-278, 05-338, 34 F.C.C. Rcd. 11950, 11950 ¶ 2 (CGAB 2019) [hereinafter "*Amerifactors Ruling*"]  that took place post-certification is a change in the law that warrants exclusion of online faxes.  See ` Section II.E.7 *infra*.

E.   **Plaintiff fails to meet its continuing burden to demonstrate its class satisfies Rule 23**

Whether a fax recipient expressly consented to receive fax advertisements must be assessed "on a case-by-case basis" and express permission requires "that the consumer understand that by providing a fax number, he or she is agreeing to receive faxed advertisements."  *CE Design Ltd. v. King Architectural Metals, Inc*., 637 F.3d 721, 726 (7th Cir. 2011) (internal quotation marks and emphasis omitted) (quoting *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014, 14129 (F.C.C. 2003), 2003 WL 21517853).  The statute does not require a specific form of invitation or permission. *CE Design*, 637 F.3d at 726; 42 U.S.C. § 227(a)(5) (stating that it can be "in writing or otherwise").

The voluntary provision of a number—phone or fax—by a message-recipient to a message-sender, constitutes express consent such that a received message is solicited and thus not prohibited by the TCPA, if the message relates to the reason the number was provided.  *Physicians*

*Healthsource, Inc. v. Cephalon, Inc.,* 954 F.3d 615, 619 (3d Cir. 2020) (citing *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 389 (3d Cir. 2017); *Fober v. Mgmt. & Tech. Consultants, LLC*, 886 F.3d 789, 793 (9th Cir. 2018) (concluding that the provision of a phone number and receipt of a call that relates to "the reason why the called party provided his or her phone number in the first place" constitutes express consent such that the calls were deemed solicited); *KHS Corp. v. Singer Fin. Corp.*, No. 16-55, 2018 WL 4030699, at *4 (E.D. Pa. Aug. 23, 2018) (concluding the same, but in the context of fax advertisements, and collecting cases).

Plaintiff argues that Eurton's documentation of evidence relating to permission to consent is irrelevant pursuant to the Seventh Circuit's decision in *Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC*, 950 F.3d 959 (Opp. at 7)   [hereinafter "*A-S Medication*"] This argument lacks any merit.

Some background on *A-S Medication* is critical.  In that case, the defendant A-S Medication Solutions, LLC ("AMS") sent a fax advertisement to 11,422 different numbers from a recently acquired customer list as part of purchase of part of Allscripts, Inc.'s business.  *Id.* at 963.  The plaintiff, Physicians Healthsource, Inc. ("PHI") filed a putative class action suit asserting that those faxes violated the TCPA.  *Id.*

Sometime after the transaction, AMS started sending faxes to the customer list.  *Id.* AMS never sought or obtained permission from any of the recipients prior to sending the fax.  Indeed, a representative for the defendant later testified that he believed "[AMS] didn't need to."  *Id.*

The class was certified, but defendant AMS expressly did not appeal the certification decision, only summary judgment.  *Id.* at 963-64.  The Seventh Circuit held that AMS must rely upon the affidavits of customers asserting they gave Allscripts prior express permission to fax them ads.  *Id.* at 964.  Those affidavits fell into three general categories:

(1)     The first category at issue in *A-S Medication* were statements suggesting that the individual or entity generally gave permission to receive faxes from Allscripts.  *Id.* at 965-66.  The Seventh Circuit held however, evidence of permission to generally send faxes does not establish prior express permission to fax ads.  *Id.*  This is not the issue in our case where Eurton's forms

specifically mention promotion.  (See Dkt Nos. 90-7 to 9-10.)

(2)  The second category in *A-S Medication* included post hoc statements that an individual would have given consent.  *Id.*  at 966.  The Seventh Circuit held that they failed because they did not show AMS had prior express permission to send the faxes in question.  *Id.*  This does not apply to our case, because the credit applications, update forms, and data quote forms were generally prior to faxing.  (Buchanan Decl. ¶ 42)  (Dkt 90-3 at 6.) (See also Dkt. 90-7 to 90-11.)

(3)  The third category in *A-S Medication* included statements that the affiants and their employers consented to receive "Allscripts' product information" at the beginning of their business relationship with Allscripts.  *Id.*  For example, an employee of one of Allscripts' customers provided an affidavit attesting that after her employer bought some medication and software from Allscripts, she wanted information regarding them and thus consented to receive this information via fax.  *Id.*  Similarly, AMS submitted several identical affidavits from other Allscripts customers stating that:

> I do not specifically remember receiving any particular faxes from Allscripts
> (or a predecessor) promoting its (or others') products or services, but in general,
> I have consented to receiving such communications from Allscripts and others,
> in the past and currently as well.

*Id.* at 966.  The Seventh Circuit's decision as to this third category turned on the fact that it was not clear if this consent was vague whether this meant consent to receive faxes regarding the "product information" of the product just purchased, rather than "promotional materials or product information regarding products or services not yet purchased."  950 F.3d at 967.  In other words, whether the consent was "prior".  In contrast, Eurton's forms clearly contemplate faxing in the future (Buchanan Decl. ¶ 42; Exhibits 4-8)  (Dkt 90-3 at 6, Dkt Nos. 90-7 to 9-11.)

Plaintiff asserts that there is nothing on Eurton's forms that approaches the standard explained in *A-S Medication*.  The Seventh Circuit in *A-S Medication* recognized that  FCC has stated, "a company that requests a fax number on an application form could include a clear statement indicating that, by providing such fax number, the individual or business agrees to receive facsimile advertisements from that company. Such statement, if accompanied by the recipient's signature, will constitute the necessary prior express permission to send facsimile

advertisements to that individual or business."). 950 F.3d at 966 (citing 18 F.C.C. Rcd. at 14129) (See also Opp. at 7.)  Plaintiff treats this FCC language as the exclusive method of establishing prior express permission, but the FCC states it is merely providing an example.

Moreover, Plaintiff's Opposition omits the key sentence in *A-S Medication*. The Seventh Circuit acknowledged the FCC's example of prior express permission, but went on to state:

> "It would be a different matter if the affidavits explicitly suggested that that consent included **promotional materials or product information** regarding products or services not yet purchased."

*Id.* (emphasis added).

Eurton's forms make it clear consent includes consent for "promotional materials regarding products or services not yet purchased."

Plaintiff claims the credit application forms (Opp. at 9) were provided only in the context of credit, but Eurton testified the credit form is at the beginning of the business relationship. (Buchanan Decl. ¶¶ 39-42, 75)

Moreover, those forms expressly state:

> "This information provides us the best including: Invoices, Sales Orders, Catalogs, **Promotional Flyers,** Pricing Updates, Etc."

(Dkt 90-7 at 2.) (emphasis added).

Plaintiff asserts that there is nothing on the Customer Information Update Forms that satisfies the standard explained in *Physicians Healthcare* (Opp. at 10), but they expressly state:

> "The above information is current and is the best way of contacting us through normal business communications including: invoices, sales orders, pricing, sales **promotions**, references, phone, facsimile, e-mails, specials, and catalog and brochure mailers, etc."

(Dkt 90-9 at 2.)

Eurton's forms explicitly reference future faxes unrelated to a specific purchase by use of the word "promotions".  This is in stark contrast to the affidavits  in *A-S Medications*.  (See Exhibits 1-5 to Request for Judicial Notice in Support of Reply.)

With respect to the Data Quote Forms (Dkt 90-11), Plaintiff argues that when these individuals faxed to Eurton a form requesting a quote and providing their fax number, this is insufficient to establish prior express permission.  However, this argument ignores the three-step process (Dkt 90-3 at 2-3) that presumably put the individual on notice of the various faxes.  *See Gorss Motels Inc. v. A.V.M. Enterprises, Inc*., No. 3:17-CV-01078 (KAD), 2019 WL 4278951, at *4 (D. Conn. Sept. 10, 2019) [hereinafter "*AVM*"] (denying certification of TCPA fax class and holding the evidence of ongoing business relationships where individuals provided fax numbers and requested quotes "were probative on the issue of consent and must be examined upon individualized proof.")

Eurton also faxed class members after oral confirmation a form that states stating "Permission for Faxing was given by the contact at the top of this flyer". (Dkt. 90 at 3, Dkt. 90-12.)  Even if these forms are not dispositive of consent for these class members, they are indicative of a business relationship between Eurton and those class members.

The decision *Kaye v. Merck & Co*., No. 3:10-CV-1546(RNC), 2020 WL 1492794, at *5 n. 4 (D. Conn. Mar. 27, 2020) makes clear the distinction between our case, involving forms establishing prior express permission, and the after the fact testimony regarding consent in *A-S Medication*.  The Court in *Kaye* distinguished *A-S Medication Solutions*, as a case where "defendants relied on the fact that they had received permission in the past to send specific faxes, as well as the fact that the plaintiffs had not checked a box on Salesforce opting out of receiving faxes."  In contrast to that decision, "Here, defendants asked for and received permission to send an invitation to a symposium sponsored by Merck, i.e., an advertisement."  *Id.*

This Court's prior order on certification made it clear that records of consent were important:  "If there was information as to which potential clients consented and which did not, there might be a need to determine whether a consent foreclosed the claim of any particular potential client. But that is not the situation here. Eurton has no records of who it contacted and who consented."  (Dkt 47-3.)

Moreover, Eurton asserts these forms were provided along with oral explanation. (Buchanan Decl. ¶ 42.)  Evaluating Eurton's forms in a vacuum does not address the context in which the forms were presented.

### 1.     Plaintiff fails to meet its burden to maintain ascertainability

The Court in *Warnick v. Dish Network LLC,* 301 F.R.D. 551 (D. Colo. 2014) held that an overbroad TCPA subclass lacked ascertainability because it included persons called with consent. *Id.* (citing *Gannon v. Network Tel. Services, Inc.*, No. 12–9777–RGK, 2013 WL 2450199, at *2–3 (C.D.Cal. June 5, 2013) (finding in a situation where the defendant provided evidence that some of the putative class members may have provided consent to text messages that the proposed TCPA class was "unascertainable and unidentifiable" because the class definition would require individualized inquiry into whether the class members consented.)

Plaintiff does not specifically address this issue in the context of ascertainability.  (Opp. at 11.)  Plaintiff argues that Eurton's proof of consent should be disregarded, but as shown above, that argument fails.  [See Section II.A-D, *supra*.]

With respect to the Initial Class List of 1,428 numbers, Eurton has assembled Credit Applications, Customer Information Update Forms and Data Quote forms for approximately 24 percent of the numbers.   (Watkins Decl. ¶¶ 3-16 & Ex. 15.) (Dkt. 90-17, 90-18) (Buchanan Decl. ¶¶ 34-68 & Exhs. 1, 3-4, 7, 8, 10) (90-3).    If the 252 bad numbers are excluded, Eurton's percentage of consent forms rises to 29 percent.  (Watkins Decl. ¶ 17 & Ex. 15.) (Dkt. 90-17, 90-18)

With respect to the Supplemental List, credit applications for 90% of contacts beginning with A, B, or C were able to be located.  Buchanan Decl. ¶ 62-65 & Exh 2, 5,7, &11).  (Dkt 90-3, 5,10, 14)  Review of credit applications and updates for letters D-Z was prohibitive given Eurton's lack of manpower and COVID-19.  (Buchanan Decl. ¶¶ 37-38 ) (Dkt 90-3)

With respect to class members of Eurton, whereby Eurton received oral confirmation of consent, and therefore Eurton faxed them confirmation, this increases evidence of consent to call

the Initial List to 76%, and 92% if the 252 bad numbers are excluded.  (Watkins Decl. ¶ 21 & Exh 15) (Dkt. 90-17, 90-18) (Buchanan Decl. ¶¶  70-74 & Exhs. 9, 10) (Dkt. 90-3, 90-12, 9-13).

Therefore, Eurton's proof of consent to fax class members demonstrates Plaintiff's class is overbroad and therefore not ascertainable.   Moreover, the lack of fax logs also demonstrates lack of ascertainability.  *See Sandusky, supra*.  Plaintiff's Class should be decertified.

### 2.      Plaintiff fails to meet its continuing burden to demonstrate numerosity

Eurton asserts that Plaintiff's class lacks numerosity, as its current class definition is overbroad.  Plaintiff has not identified any class member faxed without consent other than itself.  (Opp. at 11.)  *See Jeffries v. Pension Trust Fund*, 172 F.Supp.2d 389, 394 (S.D.N.Y. 2001) (noting that while the court may make "common sense assumptions to support a finding of numerosity," it may not "do so on the basis of pure speculation without any factual support," where plaintiff alleged that a large number of union's members were unemployed but failed to proffer evidence of how many laid-off members suffered the alleged injury).

Summarily stating that a class was provided notice does not establish that these persons were ever faxed or that these persons were faxed without consent.   Plaintiff's class lacks numerosity.

### 3.      Plaintiff fails to meet its continuing burden to demonstrate predominance

Plaintiff's documentary evidence combined with its testimonial evidence present too many individualized inquiries to maintain predominance.   Plaintiff's assertion that Eurton realized it had "no evidence of consent" (Opp. at 6) is false.  This Court merely held that this testimonial evidence did not create individualized inquiries.  (Dkt. 47 at 5.)   Such testimonial evidence is still evidence.  *See, e.g., Sawyer v. KRS Biotechnology, Inc.*, No. 1:16-CV-550, 2018 WL 2425780, at *11 (S.D. Ohio May 30, 2018), *report and recommendation adopted sub nom. Sawyer v. KRS Glob. Biotechnology, Inc.*, No. 1:16-CV-550, 2018 WL 4214386 (S.D. Ohio Sept. 5, 2018) (finding no reason to distinguish between documentary evidence and testimonial evidence at the class certification stage and denying certification of fax TCPA class).

Plaintiff also omits the Court's statement that "If there was information as to which potential clients consented and which did not, there might be a need to determine whether a consent foreclosed the claim of any particular potential client." (Dkt 47 at 3.) Without citing any authority, Plaintiff asserts that "just as the issue of whether Eurton's three-step process was sufficient consent satisfied the predominance requirement, so too does the issue of whether Eurton's credit application forms are sufficient consent. The analysis has not changed, and predominance is satisfied." (Opp. at 13)

However, there is significant authority to contrary. The Sixth Circuit in *Sandusky* held that review of forms to determine if consent was obtained constituted individualized inquiries such that there was no predominance. *Sandusky*, 863 F.3d at 467–70.

Most importantly, Plaintiff does not address that consent was potentially provided both via multiple documents and orally over the lifespan of the business relationship. As just one example: Kalamazoo Electric Motor, Inc. provided both a credit application (Ex. 4 to Motion, EE001289) (Dkt. 90-7 at 2) and a "Customer Contact Information Form" with its fax number (Ex. 7 to Motion, EE001287) (Dkt. 90-10 at 2.) Eurton also produced substantial evidence of its business relationships with invoices as far back as 1999 and 2003. (Buchanan Decl. ¶ 75 & Ex. 13) (Dkt. 90-3 & Dkt 90-16.) EE4840 reflects invoices as early as 1999 for Kalamazoo Electric. (Dkt 90-16 at 9.)

Additionally, Eurton faxed class members after oral confirmation a form that states "Permission for Faxing was given by the contact at the top of this flyer". (Buchanan Decl. ¶¶ 70-74 & Ex. 9) (Dkt. 90-3, Dkt. 90-12.) Even if these forms are not dispositive of consent for these class members, they are indicative of a business relationship between Eurton and those class members.

The chart set forth as Exhibit 15 of Eurton's Motion (Dkt. 90-18) shows that many class members provided multiple documents (credit application, customer information update form, data quote form, prior permission verification form) relating to consent. When class members provide multiple forms over the lifespan of a relationship, this presents a lack of predominance.

*See, e.g., Powell v. YouFit Health Clubs LLC*, No. 17-CV-62328, 2019 WL 926048, at *4 (S.D. Fla. Feb. 22, 2019) (denying reconsideration of denial of TCPA class certification and holding class lacked predominance where "one member may have signed multiple forms of membership agreement containing different consent language prior to December 30, 2015….")

Moreover, Plaintiff does not address Eurton's argument and evidence that oral representations regarding consent where made during the obtaining of the credit applications. (Buchanan Decl. ¶ 42.)  That Eurton obtained fax numbers orally or via forms during the long-term business relationships, presents individualized inquiries.  *Gorss Motels Inc. v. A.V.M. Enterprises, Inc*., No. 3:17-CV-01078 (KAD), 2019 WL 4278951, at *4 (D. Conn. Sept. 10, 2019) [hereinafter "*AVM"*]

In *AVM*, the plaintiff brought a TCPA class action asserting that supplier A.V.M. sent fax advertisements to plaintiff and other Wyndham franchisees without consent.  2019 WL 4278951, at *2.  In denying the plaintiff's motion for class certification, the Court in *AVM* held that consent presented individualized inquiries.  *Id.*  at *4.  First, the fact finder would need to examine the nature and scope of each putative class member's contractual relationships with and obligations to Wyndham to determine whether that member consented to receiving fax advertisements from approved suppliers, like A.V.M.  *Id.*

Most importantly, the Court in *AVM* held that "the fact-finder might need to consider any written or oral communications between the franchisee and Wyndham concerning the dissemination, by Wyndham, of product advertisements for approved suppliers, which, potentially, could involve the testimony at trial of each franchisee."  *Id.*

Finally, the defendant, submitted evidence that it had an ongoing relationship with many Wyndham properties and received fax numbers directly from many Wyndham franchisees who wanted not only quotes from A.V.M. but also leads about its products and any sales.  *Id.*  "The nature of these ongoing relationships and the specific communications between A.V.M. and these franchisees are also probative on the issue of consent and must be examined upon individualized proof."  *Id*.

This is not a case where class members provided consent via a single form without any supplemental oral representations.  These forms were provided during an oral dialogue regarding consent to faxes and ongoing business relationships.  (Buchanan Decl. ¶¶ 42, 70-75, Ex. 13 (90-3, 90-16)  This compounds the individualized inquiries, just as it did in *AVM*.  *See also Gorss Motels, Inc. v. Otis Elevator Co*., No. 3:16-CV-1781 (KAD), 2019 WL 1490102, at *5 (D. Conn. Apr. 4, 2019) [hereinafter "*Otis Elevator*"].  The Court in *Otis Elevator* denied class certification of a TCPA fax class in part because the defendant identified "many putative class members with whom it had a pre-existing relationship".  *Id.*  The Court held this presented too many individualized inquiries to satisfy predominance:

> The nature of any such relationship is directly probative on the issue of consent. And an individualized inquiry into any prior communications, to include their frequency, nature or content, between the class members and the Defendant would likewise be required.

*Id.* at *5.

Finally, Plaintiff does not address Eurton's argument that whether a class member actually received a fax also demonstrates lack of predominance.  The court in *Sandusky* emphasized the lack of generalized proof regarding who received the defendant's fax because the fax logs no longer existed. 863 F.3d at 472–73. Thus, the district court would have been forced to conduct an individualized inquiry of each class member to determine who received the fax.  *Id.*

Therefore, for each class member, as a minimum:

- It would have to be determined whether they received a fax at all (*See Sandusky*, *supra*);

- Whether Eurton's three types of documentary evidence for that class member (credit application, customer information update forms, data quote forms) constituted prior express permission (*See Sandusky*, *Powell, supra*);

- Whether the class member ever provided consent via credit application, customer update form, data quote form, even if Eurton did not currently possess such document, given the age of the file (*See AVM, Otis Elevator*, *supra*);

- Whether Eurton's oral explanation provided concurrently with the providing of a form (Buchanan Decl. ¶ 42) established prior express permission (*AVM, Otis Elevator, supra)*;

- Whether the class member ever provided the number during the long business relationship with Eurton such that the totality of circumstances established prior express consent (*See AVM*, *Otis Elevator, supra*);

- Whether the class member ever provided consent pursuant to Eurton's "three-step" oral process;

The Court's Order certifying the class only held that the last factor by itself did not establish lack of predominance.  Per the above authorities, the other individualized inquiries establish lack of predominance.  Moreover, Plaintiff has not produced any evidence that each class member did not provide a fax number pursuant to the oral "three-step" process, which means all of the class members had advance notice of the use of their fax numbers prior to completing any form.

### 4.   Plaintiff does not meet its burden to show the class maintains commonality

Plaintiff's class lacks commonality for the same reasons it lacks predominance—the individualized inquiries presented as set forth above.   "[T]he crux of the commonality examination is not simply whether there are commonalities among the potential class members, but rather, whether a classwide proceeding will be efficacious in 'generat[ing] common answer**s** apt to drive the resolution of the litigation.'"  *A-W Land Co., LLC v. Anadarko E&P Co. LP*, No. 09-CV-02293-MSK-MJW, 2012 WL 4463869 at *3 (D. Colo. Sept. 27, 2012), *on reconsideration in part sub nom. A-W Land Co., LLC v. Anadarko E & P Co. LP*, No. 09-CV-02293-MSK-MJW, 2013 WL 3199986 (D. Colo. June 24, 2013) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).

As shown above, Plaintiff's class presents only individualized inquiries as to consent. "Whether a fax was sent without express permission…is an individual question if members of the proposed class will need to present evidence that varies from member to member."  *Gorss Motels,*

*Inc. v. Brigadoon Fitness Inc.*, 331 F.R.D. 355, 360 (N.D. Ind. 2019) (denying certification).

As Plaintiff's class lacks commonality, it should be decertified.

**5**.    **Plaintiff fails to meet his burden to show the class maintains superiority**

Plaintiff asserts that its class is superior for the same reasons predominance continues to be established.  However, "The specter of mini-trials is relevant to the superiority question as well as the predominance question." *Pueblo of Zuni v. United States*, 243 F.R.D. 436, 452 (D.N.M. 2007).

This Court previously recognized the dangers of mini-trials presented by Plaintiff's class. "The essence of Eurton's response to the motion is that a class action would require the Court to engage in mini-trials for each class plaintiff to determine whether it consented to receive Eurton's faxes. Viewed in a vacuum, this argument is appealing."  (Dkt 47 at 3.)  The individualized issues presented by Plaintiff's class demonstrate a lack of predominance.  Those same issues present mini-trials such that Plaintiff's class lacks superiority.

**6.**    **Plaintiff and its counsel do not remain adequate**

Plaintiff's opposition raises the issue of adequacy.  As set forth above, Plaintiff did not conduct any discovery with respect to Eurton's supplemental disclosures.  Eurton asserts this lack of diligence demonstrates lack of adequacy.

**7.**    **Plaintiff fails to show that online fax services are part of its class**

In 2019, Amerifactors filed a petition for declaratory ruling asking the Commission to clarify that faxes sent to 'online fax services' are not faxes sent to 'telephone facsimile machines.' " *Amerifactors Ruling*, 34 F.C.C. Rcd. 11950, 11950 ¶ 2.

On December 9, 2019, the FCC Consumer and Governmental Affairs Bureau ("CGAB") granted the petition, concluding that "[t]o the extent an unsolicited facsimile advertisement is sent to a service that effectively receives faxes 'sent as email over the Internet' and is not itself 'equipment which has the capacity ... to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper," such service is not "telephone facsimile machine" and does not trigger the statutory prohibition." *Id.* at 11952 ¶ 8.  The *Amerifactors Ruling* was grounds to modify a class definition to exclude such faxes in *Advanced Rehab & Med.,*

*P.C. v. Amedisys Holding, LLC*, No. 117CV01149JDBJAY, 2020 WL 4937790, at *2 (W.D. Tenn. Aug. 24, 2020).

Plaintiff asserts that deference to *Amerifactors* is not warranted because the definition of "telephone facsimile machine" is unambiguous. The Court in *Advanced Rehab* rejected this argument, holding that Congress did not define "equipment" or any of the other terms used in the definition of a telephone facsimile machine, and the ordinary definitions of those terms do not shed light on whether an online fax service is included in that definition." *Id.* at *5. The Court also noted that online fax services were not developed until after the enactment of the TCPA. *Id.*

The Court in *American Rehab* also rejected the same argument Plaintiff makes in our case—that it is inconsistent with *In re Westfax, Inc. Petition for Consideration and Clarification*, CG Docket Nos. 02-278, 05-338, 30 FCC Rcd. 8620, 8621–22 ¶¶ 4–5 (CGAB 2015) [hereinafter, "*Westfax Ruling*"]. It held that in *Amerifactors*, the CGAB specifically noted that the *Westfax Ruling* was not controlling since that decision had "assumed that the 'efax' in question was sent to a computer with an attached modem that had the capacity to print the fax." 2020 WL 4937790 at *8. (citing *Amerifactors Ruling*, 34 FCC Rcd. at 11954 ¶ 15.) It also held that Bureau's interpretation was not inconsistent with the 2003 Order whereby the FCC concluded that "computerized fax servers" and "personal computers equipped with, or attached to, modems" are equipment that fall within the statute's definition of a telephone facsimile machine; whereas in the Amerifactors Ruling, the Bureau determined that an "online fax service" itself is not such equipment. *Id.*

"An order from a subordinate unit of the FCC ... becomes final if no application for review before the full Commission is filed." *Georgia Power Co. v. Teleport Commc'ns Atlanta, Inc.*, 346 F.3d 1047, 1050 (11th Cir. 2003). But once an application for review is filed, "the subordinate unit's order is non-final." *Id.* It appears that the *Amerifactors Ruling* is still pending. See https://ecfsapi.fcc.gov/file/1012304105191/AmeriFactors%20Opposition%20to%20Application%20for%20Review.pdf

Therefore, this Court is not bound to follow it.  However, Eurton maintains that the reasoning is still persuasive, and that online faxes in Plaintiff's class should be excluded.

## IX.    CONCLUSION

Eurton has now presented both documentary and testimonial evidence of consent to fax the nearly all of the class that received notice.  For the reasons stated above, Eurton respectfully submits that Plaintiff's Class be decertified.

November 20, 2020                                  /s/ David J. Kaminski
                                                   David J. Kaminski
                                                   Stephen A. Watkins
                                                   Carlson & Messer LLP
                                                   5901 W. Century Blvd., #1200
                                                   Los Angeles, CA 90045
                                                   kaminskid@cmtlaw.com
                                                   (310) 242-2200

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 20th day of November 2020, a true and correct copy of the above and foregoing has been served by electronic notification by filing with the Clerk of Court using the CM/ECF system, which sent notification via e-mail to the following:

ppeluso@woodrowpeluso.com
tsmith@woodrowpeluso.com
woodrow@woodrowpeluso.com

    /s/ David J. Kaminski
David J. Kaminski
Stephen A. Watkins
Carlson & Messer LLP
5901 W. Century Blvd., #1200
Los Angeles, CA 90045
kaminskid@cmtlaw.com
(310) 242-2200