## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-02981-MSK-KMT

TECH INSTRUMENTATION, INC., a Colorado corporation, individually and on behalf of all others similarly situated,

> Plaintiff

v.

EURTON ELECTRIC COMPANY, INC., a California corporation

> Defendant

---

## DEFENDANT'S MOTION FOR RECONSIDERATION OF
## ORDER DENYING MOTION TO DECERTIFY CLASS

---

Defendant, Eurton Electric Company, Inc. (hereafter "Eurton"), by and through counsel, Carlson & Messer LLP, hereby submits its Motion for Reconsideration of the Court's September 9, 2021 Order denying Eurton's Motion for Decertify, and in support thereof, states as follows:

**D.C.COLO.L.CivR 7.1A Certificate:**

Counsel for Eurton has conferred with Plaintiff's counsel and Plaintiff opposes the relief requested herein.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.   <u>INTRODUCTION</u>

Eurton's Motion to Decertify Plaintiff's Class ("Motion") presented evidence that Eurton's oral three-step process was just part of how Eurton would obtain consent to send faxes to a particular consumer.  This process included receiving applications and other forms whereby its customers and others would provide fax numbers.  As set forth in Eurton's Reply in support of its Motion to Decertify:

> Moreover, Eurton asserts these forms were provided along with oral explanation. (Buchanan Decl. ¶ 42.) Evaluating Eurton's forms in a vacuum does not address the context in which the forms were presented.

(Dkt 98 at 14.)

In other words, the same consumer would provide oral consent, and likely provide the fax number in an application or update once provided additional oral clarity.  When the Court denied Eurton's Motion to Decertify, it held that Eurton's forms were an either/or proposition – either a consumer was subjected to Eurton's three-step oral consent process and was potentially a class member, or a consumer provided a written form with a fax number and could possibly be excluded as a class member.

Eurton's Motion asserted that every class member potentially provided written consent to faxes in addition to the oral three-step process, but that its customers' relationships were so long standing, that much of the written documentation was lost.  Eurton's evidence was not evaluated in terms of a "lifespan" of oral and written consent evidence for each class member that presents individualized inquiries demonstrating lack of predominance.  Instead, it appears the Court applied a binary notion of either consumer was subject to an oral three-step process or provided a fax number via a written application or update.

Reconsideration must be granted.

## II.  BACKGROUND

On May 29, 2018, the Court certified Plaintiff's class (Dkt. No. 47) with respect to its claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") against Defendant Eurton Electric Company, Inc. ("Eurton").  The Court's May 29, 2018 Order certified the following class:

> Any person/entity who:
>
> 1) Received a cold call from Eurton pursuant to its three-step procedure; and
> 2) Is listed on a list prepared by Eurton and supplied to WestFax; and
> 3) Received one or more [faxed advertisements][1] sent by Eurton or WestFax between December 16, 2013 through the date notice is sent to the Class.

(Dkt. 47 at 6)

Eurton's three step process for obtaining fax consent is described as follows:

First Step: Eurton's practice was to first locate businesses online that might use motors in their operations.

Second Step: Cold-call those businesses and ask whether the business would be interested in receiving more information.

Third Step: The company policy was to then ask the businesses if they agreed to receive more information, including by fax.

(Dkt 90-1 at 8)

Eurton's Motion asserted that as part of its customer process, Eurton would have potential customers complete a credit application and provide their fax number.  (Dkt 90-1 at 8)  It was Eurton's regular business practice to have its customers complete Customer Contact Update Forms.  (Dkt 90-1 at 9)  Finally, Eurton asserted that "Every day, potential customers and long-established customers request and fax to Eurton quotation data sheet flyers and other information." (Dkt 90-1 at 9)  Not only did Eurton assert this was its business practice, it produced evidence of these forms that corresponded to class members.  (90-7 to 90-11, 90-14, 90-19)

---

[1] The Court's September 9, 2021 Order sua sponte modified the class definition slightly to reflect the requirement that a class member have "received one or more faxed advertisements sent by Eurton," not simply "one or more faxes."

{00159017;1}

Eurton's Motion and Reply asserted that the applications, updates and data quote forms were part of the "lifespan" of consumer contact, which included the oral-three step process:

> "Moreover, Eurton asserts these forms were provided along with oral explanation. (Buchanan Decl. ¶ 42.) Evaluating Eurton's forms in a vacuum does not address the context in which the forms were presented."

(Dkt 98 at 14.)

> "In this regard, consent to fax would be obtained orally. (Buchanan Decl. ¶¶13-15.)   Moreover, during this process, consent to fax was also obtained via completion of initial credit application, and periodic customer updates, as shown below."

(Dkt 90-1 at 8.)

> "This documentation of consent bolsters Eurton's evidence of its oral three-step process obtain consent."

(Dkt 90-1 at 10.)

> "Regardless, it was Eurton's practice to orally inform customers who completed credit applications the various reasons faxes would be sent."

(Dkt 90-3 at 6.)

The Court's Order held that the forms provided by Eurton were likely irrelevant, but this appeared to be based on a notion that these forms would not have been provided to the same persons who were subject to the three-step procedure:

> But if that is the case, that customer may no longer one whose fax number and consent to fax was obtained "pursuant to [the] three-step procedure," and thus, that customer may no longer a member of the class.

(Dkt 102 at 16-17)

However, these forms would have been provided to persons who were already subject to the three-step process—it is not an either/or proposition.

Eurton asserts that this Court should reconsider its September 9, 2021 Order considering Eurton's argument that every class member was potentially subject to both oral three-step process,

a written form and supplemental oral discussion regarding consent.

### III.   ARGUMENT

#### A.   Standard of Review

Although the Federal Rules of Civil Procedure do not expressly contemplate a "motion for reconsideration," Rules 59(e), 60(b), and the Court's inherent authority all permit the Court, in appropriate circumstances, to revisit and revise its rulings if necessary, prior to the entry of final judgment, *Price v. Philpot*, 420 F.3d 1158, 1167 n. 9 (10th Cir. 2005). The timeliness of the motion determines whether it is analyzed under Rule 59(e)—if filed within 10 days of the entry of the judgment or order—or Rule 60(b)—if filed later than 10 days. *Id.* (citing *Hawkins v. Evans*, 64 F.3d 543, 546 (10th Cir. 1995); *Ryan v. Corr. Health Partners*, No. 18-CV-00956-MSK-MEH, 2020 WL 6134912, at *11 (D. Colo. Oct. 19, 2020). Here, Eurton's Motion is filed within 10 days after the entry of the September 9, 2021 Order. *See* Fed. R. Civ. P. 6(a).

A Rule 59(e) motion to alter or amend the judgment may be granted when the Court has misapprehended the facts, a party's position or the law. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Specific grounds for reconsideration under Fed.R.Civ.P. 59(e) include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* (citing *Brumark Corp. v. Samson Res.Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)). A motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier. *Id. See, e.g., Pharmacists Mut. Ins. Co. v. NAMIC Ins. Co.*, No. 18-CV-0791-MSK-SKC, 2020 WL 6393036, at *2, 5 (D. Colo. Oct. 31, 2020) (J. Krieger presiding) (granting motion for reconsideration where defendant asserted clear error in prior ruling).

Eurton asserts that this motion is needed to correct the Court's error with respect to assuming persons who were subject to the oral three-step process could not have also received application forms that were provided with supplemental oral explanation, as shown below.

### B.      Prior Express Permission

With respect to sending faxes without "prior express invitation or permission," the TCPA only prohibits faxed advertisements that are "unsolicited." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618–19 (3d Cir. 2020).

Whether a fax recipient expressly consented to receive fax advertisements must be assessed "on a case-by-case basis" and express permission requires "that the consumer understand that by providing a fax number, he or she is agreeing to receive faxed advertisements." *CE Design Ltd. v. King Architectural Metals, Inc.,* 637 F.3d 721, 726 (7th Cir. 2011) (internal quotation marks and emphasis omitted) (quoting *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014, 14129 (F.C.C. 2003), 2003 WL 21517853). The statute does not require a specific form of invitation or permission. *CE Design*, 637 F.3d at 726; 42 U.S.C. § 227(a)(5) (stating that it can be "in writing or otherwise").

As shown below, reconsideration must be granted, given the Court's mischaracterization of Eurton's consent evidence.

### C.      The Court's September 9, 2021 Order did not consider that oral and written evidence of consent was likely obtained from each consumer

A motion for reconsideration is appropriate only "when the court has made a mistake not of reasoning but of apprehension" or "if there has been a significant change or development in the law or facts." *Rosenthal v. Dean Witter Reynolds, Inc.*, 945 F.Supp. 1412, 1420 (D. Colo. 1996) (quotations and citations omitted).  Eurton asserts the Court misapprehended the evidence relating to Eurton's written forms as follows:

> Eurton's point in tendering the Application For Credit or Customer Information Update forms is to show that some customers provided their fax numbers to Eurton (and, arguably, consented to receive faxes) through channels other than the three-step procedure. But if that is the case, that customer may no longer one whose fax number and consent to fax was obtained "pursuant to [the] three-step procedure," and thus, that customer may no longer a member of the class. **The various forms tendered by Eurton might be useful as between the parties for the purpose of narrowing down the membership of the class** (although again, the Court has not been called upon and thus makes no findings at this time as to whether any particular recipient or group of recipients may or may not fall within the class

definition).  But those items of evidence are irrelevant to the question posed by Eurton's instant motion: whether the class as a whole should be decertified.

(Dkt 102 at 16-17) (emphasis added).

Eurton's Motion did not assert that the three-step process and the applications/updates were an either/or proposition.  Eurton's Motion asserted that it was likely these documents were provided in addition to the oral three-step process.

Therefore, Eurton is asserting that given the lifespan of the business relationship both oral and documentary, whether there was consent is an individualized inquiry because the oral consent process was supplemented by the documents—not that if someone provided consent via an application, that they were not exposed to the three-step oral process.  The Court's statement that "the primary process by which Eurton obtained fax numbers [is] the 'three-step process'" (Dkt 102 at 19) does not take into account the written forms.

In this regard, Plaintiff's class lacks predominance, ascertainability and superiority, as shown below.

1.      **Plaintiff's class lacks predominance given that oral and written documents are part of the lifespan of consent**

When consent is obtained from variety of sources, both oral and written, this argues against certification.  *See, e.g., Alpha Tech Pet Inc. v. LaGasse*, LLC, No. 16 C 4321, 2017 WL 5069946, at *5 (N.D. Ill. Nov. 3, 2017).  "The FCC allows consent to be obtained "orally" or "in writing" through forms 'including e-mail, facsimile, and internet.'"  *Id.* (citing Junk Fax Prevention Act of 2005, 71 FR 25967-01, 2006 WL 1151584.)

In *Alpha Tech*, just as in our case, the defendants set multiple forms of consent related evidence:

> Here, defendants set forth several different types of consent-related evidence: (1) 5,281 consent forms from Essendant customers agreeing to receive faxes (R. 71-2 ¶¶ 25-27 & Ex. 8); (2) entries in Essendant's Trend database showing more than 25,000 fax numbers for which a consent form was collected from a customer and a declaration from Essendant Director of Sales Jon Phillips explaining the reasons why the Trend database may underreport consent (R. 71-2 ¶¶ 29-32); (3) a description by Phillips of Essendant's practice of advising customers at the

inception of the customer relationship about the option to receive Essendant faxes and requesting that customers provide fax numbers for that purpose (R. 71-2 ¶¶ 23-24); (4) a description by Phillips of Essendant's practice of obtaining consent from some customers orally (R. 71-2 ¶ 27); and (5) by way of example, declarations from 25 Essendant customer fax recipients who consented to receive faxes (including advertising faxes) but are not reflected in the Trend database as consenting and for whom consent forms have not been located (R. 71-2 ¶ 33 & Ex. 9).

*Id.* at \*5.  The Court in *Alpha Tech* held that this was "concrete evidence of consent."  *Id.* citing *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 469 (6th Cir. 2017)).

This is not a case of a simple uniform oral communication with respect to the entire class. There would have been subsequent oral communications with three-step process recipients who received Eurton's forms.  (Dkt 90-3 at 6.) The Court's assertion that the forms by themselves may not establish consent (Dkt 102 at 16 & n.9) did not take into account the surrounding oral communications that would have supplemented the language in these forms.  This favors decertification.

The Court in *J.H. Cohn & Co. v. American Appraisal Association, Inc.*, 628 F.2d 994 (7th Cir. 1980) affirmed the denial of a proposed securities purchaser class covering a 33 month period and alleging "several" oral and written communications issued during the relevant period.  Factual variations during the relevant time period "undercut[ ] the predominance of any common course of conduct."  *J.H. Cohn*, 628 F.2d at 998, n.3.  *See also Seiler v. E.F. Hutton & Co.*, 102 F.R.D. 880, 888 (D.N.J.1984) ("[i]t is the general rule that an action based substantially on oral rather than written communications is inappropriate for treatment as a class action"); *Abbit v. ING USA Annuity*, No. 13CV2310-GPC-WVG, 2015 WL 7272220, at \*11 (S.D. Cal. Nov. 16, 2015) (denying class certification where both oral and written statements were made to class members and therefore class lacked predominance).

The Court's Order held that "Because there remains the possibility that the issue of consent can be resolved categorically on a classwide basis, the Court's finding of predominance and certification of a class remains a correct one at this time."  (Dkt 102 at 16)  Eurton asserts that when considering both the oral and written communications over the lifespan of the interaction with a particular consumer, the determination of whether there was prior express consent is an

individualized inquiry such that Plaintiff's class lacks predominance.

For the same reasons Plaintiff's class lacks predominance, it lacks ascertainability. *See Warnick v. Dish Network LLC*, 301 F.R.D. 551, 559 (D. Colo. 2014) (overbroad TCPA subclass lacked ascertainability because it included persons called with consent.) It therefore lacks superiority as well. "The specter of mini-trials is relevant to the superiority question as well as the predominance question." *Pueblo of Zuni v. United States*, 243 F.R.D. 436, 452 (D.N.M. 2007).

**2.    That Eurton does not have application for every single class member should not be held against them.**

To the extent the Court holds that Eurton must produce written forms for every single class member to support its contention that every class member likely provided a fax number via a written form, Eurton's Motion asserted that given the length of time it has been in business, many of the forms provided to class members would have lost:

> Many of Eurton's customers have been  customers over five to thirty plus years. In  this regard, much of the documentation relating to prior permission, credit applications, and updated credit applications has been lost

Dkt 90-3 at 7.

To the extent to Court holds that Eurton can simply exclude class members for whom there is a written application/form providing a fax number, this is not reasonable because every class member (or at least those who are Eurton customers) likely provided their fax number on a form at some point, regardless of the oral three-step process.  The Court cannot penalize Eurton in this context.

Notwithstanding the foregoing, courts have found that individual inquiries preclude certification where "the defendant's employees kept no records and could not distinguish which recipients gave express consent and which did not, but the record reflected they had collected fax numbers over time from a variety of sources." *Sawyer v. KRS Biotechnology, Inc.*, No. 1:16-CV-550, 2018 WL 2425780 at *12 (S.D. Ohio May 30, 2018), *report and recommendation adopted sub nom. Sawyer v. KRS Glob. Biotechnology, Inc.*, No. 1:16-CV-550, 2018 WL 4214386 (S.D. Ohio Sept. 5, 2018); *Kostmayer Constr., LLC v. Port Pipe & Tube, Inc.*, No. 16-CV-1012, 2019

WL 1523045, at *3 (W.D. La. Apr. 8, 2019) (denying class certification where the defendant received fax numbers from a variety of sources and failed to document in its databases which recipients consented to receive fax advertisements).

This is not a case where a consumer was either (a) subjected to an oral three-step consent process without being provided an application form or (b) provided an application form without being provided some sort of oral explanation of the form or not exposed to the oral three-step consent process.  Rather, Eurton's Motion to Decertify asserted that each class member likely was exposed to:

- Eurton's three-step oral consent process; and

- provided a fax number via a form; and

- was subject to oral communication in the context of being provided a form.

Eurton asserts that Plaintiff's class therefore lacks predominance, ascertainability, and superiority, and the class should have been decertified.

## IV.     **CONCLUSION**

Eurton respectfully requests that the Court reconsider its September 9, 2021 order denying Eurton's Motion to Decertify, considering Eurton's argument that every class member would have likely been subject to the three-part oral consent process and likely provided the fax number in written form accompanied by oral explanation.

September 20, 2021

   /s/ David J. Kaminski
David J. Kaminski
Stephen A. Watkins
Carlson & Messer LLP
5901 W. Century Blvd., #1200
Los Angeles, CA 90045
kaminskid@cmtlaw.com
(310) 242-2200

## CERTIFICATE OF SERVICE

I hereby certify that, on the 20th day of September 2021, a true and correct copy of the above and foregoing has been served by electronic notification by filing with the Clerk of Court using the CM/ECF system, which sent notification via e-mail to the following:

ppeluso@woodrowpeluso.com
tsmith@woodrowpeluso.com
woodrow@woodrowpeluso.com

    /s/ David J. Kaminski
David J. Kaminski
Stephen A. Watkins
Carlson & Messer LLP
5901 W. Century Blvd., #1200
Los Angeles, CA 90045
kaminskid@cmtlaw.com
(310) 242-2200