**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: <u>1:16-cv- 02981</u>

TECH INSTRUMENTATION, INC., a Colorado corporation, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

EURTON ELECTRIC COMPANY, INC., a California corporation

    Defendant.

---

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR
RECONSIDERATION**

---

## I.  INTRODUCTION

   Defendant Eurton Electric Company, Inc. ("Defendant" or "Eurton") simply will not take "no" for an answer. To recap, Eurton had an opportunity to oppose Plaintiff's Motion for Class Certification almost four (4) years ago. (Dkt. 39.) The Court granted Plaintiff's Motion and certified the Class on May 29, 2018, over Eurton's objections. (Dkt. 47.) Since that time, two rounds of class notice have been disseminated. (*See* Dkts. 72 and 84.) After the Class was notified of this lawsuit, Eurton then took a second crack at opposing certification by filing a Motion to Decertify on September 30, 2020. (Dkt. 90.)

After the Motion to Decertify was fully briefed, the Court denied it on September 9, 2021. (Dkt. 102.) In the process, the Court stated that it "finds that it is time for this already-aged case to proceed to trial . . . the parties shall begin preparation of a Proposed Pretrial Order and shall contact chambers to schedule a Pretrial Conference." (Dkt. 102.) Rather than heed the Court's Order that it is time to try this case and that the Parties should begin preparing pre-trial documents, Eurton instead prepared a Motion for Reconsideration, deciding that it is entitled to a *third* crack at defeating class certification. As explained below, Eurton's arguments fail once again and the Motion should be denied.

## II.    ARGUMENT

Eurton's Motion for Reconsideration contends that the Court misconstrued its arguments regarding supposed written proof of prior express consent. Specifically, Eurton asserts that:

> Eurton's Motion asserted that every class member potentially provided written consent to faxes in addition to the oral three-step process, but that its customers' relationships were so long standing, that much of the written documentation was lost. Eurton's evidence was not evaluated in terms of a 'lifespan' of oral and written consent evidence for each class member that presents individualized inquiries demonstrating lack of predominance. Instead, it appears the Court applied a binary notion of either consumer was subject to an oral three-step process or provided a fax number via a written application or update.

(Dkt. 103 at 2.) Fortunately for the Class, and as explained below, this argument (like all of the other arguments previously raised by Eurton) fails, and its Motion should be denied.

### 1.    Eurton has waived its arguments regarding written documentation.

First, while Eurton begins its Motion to Reconsider by stating that "Eurton's Motion to Decertify Plaintiff's Class presented evidence that Eurton's oral three-step process was just part of how Eurton would obtain consent to send faxes to a particular consumer. This process included receiving applications and other forms whereby its customers and others would provide

fax numbers" the Court's Order denying Eurton's Motion to Decertify makes clear that such

"evidence" is untimely and irrelevant. Specifically, the Court stated:

> Eurton had an opportunity to present all of its arguments against certification, based on all of the information that was known to it at the time in 2018. The judicial system depends on parties to identify and raise their strongest arguments at the time an issue is first being considered. To allow parties to constantly revise and refine their arguments over time, presenting and re-presenting them to the court successively until they succeed, is wasteful of the parties' and the court's limited resources and a fundamental violation of Fed. R. Civ. P. 1. Thus, requiring a request for reconsideration to be based on a change in meaningful circumstances, not just a request to re-argue a matter already considered by the court, is a sound practice.

> The Court finds that Eurton's motion raises no facts or arguments that are both relevant and newly-occurring since 2018. Eurton is not alleging that it did not previously have access to the Application For Credit or Customer Information Update forms it now presents at the time this Court was considering the class certification question in 2018. By all appearances, those forms have been in Eurton's possession since before this litigation began. Indeed, it is essential that the forms existed prior to Eurton's commencement of the fax advertising campaign. For Eurton's defense that the faxes were "solicited" to succeed, it is necessary that the recipients gave their consent to receive fax ads before Eurton began sending them. Thus, it is undisputed that Eurton could have raised the existence of the Application For Credit or Customer Information Update forms at the time the Court was initially considering class certification in 2018. Eurton offers no explanation for why it did not do so at that time. Moreover, as discussed more fully below, the existence of those forms is irrelevant to the Court's class certification analysis in any event.

(Dkt. 102 at 8-9.)

Thus, while Eurton moves for reconsideration and argues that the Court misconstrued its

arguments regarding the newly-raised documents, the Court has already ruled that such

arguments were raised years too late. This is sufficient to end the inquiry and deny Eurton's

Motion for Reconsideration. In sum, while Eurton complains that "[t]he Court's statement that

'the primary process by which Eurton obtained fax numbers [is] the 'three-step process' (Dkt

102 at 19) does not take into account the written forms," (Dkt. 103 at 6), Eurton missed its

opportunity to have those forms taken into account by waiting years to introduce them. The

Motion for Reconsideration should be denied for this reason alone. Nevertheless, as explained below, even if the Court were to analyze the merits of Eurton's arguments, the Motion still fails.

> **2.    None of Eurton's documents are sufficient to establish prior express permission or invitation.**

Even if the Court elects to consider Eurton's argument that its documents evidence consent (it shouldn't), the Court's analysis of the documents in its Order denying the Motion to Decertify is sound. As the Court held, "the existence of those forms is irrelevant to the Court's class certification analysis in any event". (Dkt. 103 at 9.)  While Eurton now claims that "when considering both the oral and written communications over the lifespan of the interaction with a particular consumer, the determination of whether there was prior express consent is an individualized inquiry such that Plaintiff's class lacks predominance,"[1] (Dkt. 103 at 7-8), the reality is the documents are insufficient to constitute prior express permission or invitation under the JFPA for anyone.

To be clear, Eurton bears the burden of proving that it had "prior express invitation or permission" to send the faxes at issue to Plaintiff and the Class. *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018) ("We therefore hold that 'prior express invitation or permission' is an affirmative defense on which [the defendant] bears the burden of proof.").  As Plaintiff explained in its Response to Defendant's Motion to Decertify, until recently Eurton's only theory of consent was its supposed three-step process. As explained in Plaintiff's Motion for Class Certification, Eurton employed a common, three-step method for obtaining supposed consent, under which Eurton's practice was to first locate businesses online

---

[1] Eurton briefly states that "for the same reasons Plaintiff's class lacks predominance it lacks ascertainability . . . [and] superiority as well". (Dkt. 103 at 7-8.) Since Eurton applies the same "logic" to all three elements, Plaintiff responds in kind.

that might use motors in their operations and then, second, cold-call those businesses and ask whether the business would be interested in receiving more information. (Eurton Depo. Tr., attached hereto as Exhibit A, 67:1-25 - 69:1-19.) The company policy was to then ask the businesses if they agreed to receive more information, including by fax. (Eurton Depo. Tr. 67:5-10.) This was an admittedly imperfect system, so it was also a matter of company policy that Eurton would remove anyone when "mistakes" occurred. (Eurton Depo. Tr. 56:4-25 - 57:1-5; 77:9-10.)

Critically, however, Eurton did not record any conversations where consent was supposedly obtained. (Eurton Depo. Tr. 57:17-20.) Hence, Eurton has no evidence that Plaintiff (or anyone else for that matter) actually gave prior express permission or invitation to be faxed via its three-step process. (Eurton Depo. Tr. 65:20-25 - 66:1-10.) As Eurton's corporate designee testified:

> Q. But we have already established that you have no evidence that any fax sent to my client was solicited; correct?
>
> A. No.
>
> Q. You do have evidence?
>
> A. I'm sorry. Evidence, no. No evidence. You're right.

(Eurton Depo. Tr. 65:18-25; 56:4-17.) Indeed, Eurton lacks any other written evidence of consent for anyone:

> Q.  [D]o you now make sure you have a record of someone giving consent before they go on the fax list or do you still sort of put them on and take them off?
>
> ...
>
> THE WITNESS: Yes. I wasn't aware that I had to until this, and now we are doing it, yeah.

(Eurton Depo. Tr. 139:5-15; *see also* 65:20-25 - 66:1-10.) That is, rather than keep any records of consent, Eurton simply presumes it obtained consent because of its supposed policy to call ahead and ask for such permission. (Eurton Depo. Tr. 66:12-25 - 67:1-25; 76:6-10.) This is why the Court's Order certifying the Class in this case stated "Eurton has no records of who it contacted and who consented".

Perhaps realizing that having no evidence of consent dooms its defense, Eurton has tried to pivot away from its three-step process and now claims that its "credit applications, update forms, and data quote forms" demonstrate prior express permission to be faxed. As explained above, these arguments should be considered waived—Eurton could have presented these documents during class certification briefing but chose not to. But even if the Court considers the arguments, Eurton's documents fail to demonstrate prior express permission to be faxed.

The Seventh Circuit recently analyzed the question of what a defendant must put forward to demonstrate "prior express invitation or permission" in *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 965–67 (7th Cir. 2020). The Seventh Circuit reviewed three different methods of supposed consent. "The first category includes statements suggesting that the individual or entity generally gave permission to receive faxes from [the defendant]. [E]vidence of permission to generally send faxes does not establish prior express permission to fax ads." *Id.* at 966. The second supposed method of consent set forth in *Physicians Healthcare* was "post hoc statements that an individual *would have* given consent," which failed "because they do not show AMS had *prior* express permission to send the faxes in question." *Id.* (emphasis in original.)

The third method the defendant argued in *Physicians Healthcare* was "statements that the affiants and their employers consented to receive '[defendant's] product information' at the

beginning of their business relationship with [defendant]". *Id.* The Seventh Circuit rejected this

theory as well, explaining:

> The district court found these [statements] uniformly "too thin to permit a reasonable jury to conclude that "consented," as used in the declarations, meets the legal definition of 'prior express permission.' " Specifically, the court explained that the affidavits and other testimony (1) did not permit an inference that the recipient understood he or she was expressly giving, *in advance*, permission to send faxed advertisements, and (2) did not describe the content of the faxes that the declarant purportedly consented to receive. We agree.
>
> First, at a general level, we must ask whether a consumer must renew its permission for every fax advertisement, or whether a consumer's consent at one point in time gives ongoing consent. Both *CE Design* and *Travel 100 Grp*., as well as the FCC's regulations, imply that a party may consent on an ongoing basis to faxed advertisements. *See* 637 F.3d at 726; 321 Ill.Dec. 516, 889 N.E.2d at 789; 18 F.C.C. Rcd. at 14128–29. Given the impracticality of any other rule, we make our ruling explicit: Provided a customer gives consent in the manner described below, we will presume that the customer has given permission on an ongoing basis to fax advertisements.
>
> The second and more challenging question is how that permission should be phrased. In light of the FCC's explanation that, for prior express permission to be valid, "a consumer [must] understand that by providing a fax number, he or she is agreeing to receive fax advertisements," 18 F.C.C. Rcd. at 14129, we conclude that the consumer must affirmatively and explicitly give the advertiser permission to send it fax advertisements on an ongoing basis. The invitation or permission cannot simply authorize a single, specific fax, or state that the consumer consented to receive faxed ads from the defendant in the past. Instead, it must explicitly convey that the consumer gives the advertiser ongoing permission to send ads via fax until such time as the consumer withdraws its consent. This framework is both consistent with the FCC's statements on the matter and conforms to the TCPA's text. *See, e.g.*, 18 F.C.C. Rcd. at 14129 ("For example, a company that requests a fax number on an application form could include a clear statement indicating that, by providing such fax number, the individual or business agrees to receive facsimile advertisements from that company. Such statement, if accompanied by the recipient's signature, will constitute the necessary prior express permission to send facsimile advertisements to that individual or business.").
>
> With that rule in mind, the third category of affidavits does not demonstrate that the affiants gave prior express permission for faxed advertisements. A statement explaining that a consumer agreed to receive "product information" via fax after purchasing some products or services from a company is not the same as agreeing to accept faxed advertisements. As the FCC and now we have explained, a recipient must specifically acknowledge that faxed advertisements will follow its consent to

> constitute prior express permission. A consumer's statement that it gave permission to send "product information" via fax, even on an ongoing basis, after purchasing products or services from a company cannot as a matter of law constitute prior express permission. (It would be a different matter if the affidavits explicitly suggested that that consent included promotional materials or product information regarding products or services not yet purchased.) Similarly, that one had consented to receive a fax advertisement in the past and would have consented to fax advertisements if asked again does not establish ongoing permission to send fax advertisements.
>
> Thus, AMS has not shown that Allscripts had prior express permission to send faxes.

*Physicians Healthsource, Inc.*, 950 F.3d at 966–67. With this standard in mind, Eurton's new

theories of consent all fail.

First, Eurton claimed in its Motion to Decertify that its "credit application forms"

constitute prior express invitation or permission. (Dkt. 90 at 2; Dkt. 90-7.) These forms are

ostensibly completed by customers of Eurton for the purpose of receiving credit from Eurton.

The forms contain fields to list the name of the company applying, the address, phone number,

and fax number for the company, and a list of references to provide. (*See* Dkt. 90-7.) The forms

are not signed, nor do they appear to be dated. *Id.* On the right side of the form, there is a text

box which reads:

> IT IS FAST BECOMING THE INDUSTRY STANDARD TO ONLY GIVE OUT CREDIT INFORMATION BY FAX OR MAIL.
>
> ALSO, MANY LARGE CORPORATIONS WILL GIVE CREDIT INFORMATION FROM THE CORPORATE HEADQUARTERS ONLY. WHEN LISTING A LARGE CORP., BE SURE TO INCLUDE THE ADDRESS OF THE MAIN OFFICE AND YOUR ACCOUNT NUMBER.
>
> THIS INFORMATION PROVIDES US WITH THE BEST WAY OF CONTACTING YOU FOR ALL NORMAL BUSINESS COMMUNICATIONS, INCLUDING: INVOICES, SALES ORDERS, CATALOGS, PROMOTIONAL FLYERS, PRICING UPDATES, ETC.
>
> THANK YOU.

(Dkt. 90-7.) Eurton claims these forms "clearly demonstrate prior express permission to be faxed" (dkt. 90 at 12), but that is not the standard. A customer of Eurton who may have filled out these forms did so in the context of applying for credit. There is nothing on the form that approaches the standard explained in *Physicians Healthcare* related to fax *advertisements*. For example, as the FCC has stated, "a company that requests a fax number on an application form could include a clear statement indicating that, by providing such fax number, the individual or business agrees to receive facsimile advertisements from that company. Such statement, if accompanied by the recipient's signature, will constitute the necessary prior express permission to send facsimile advertisements to that individual or business."). 18 F.C.C. Rcd. at 14129. Eurton's "credit application" forms do not do that. The forms simply do not satisfy the prior express invitation or permission standard.

Next, Eurton claims its "Customer Contact Information Update" forms also demonstrate prior express invitation or permission. (Dkt. 90 at 12.). These forms (which are unsigned) have fields for contact information and contain a statement at the bottom that "The above information is current and is the best way of contacting us through normal business communications including: invoices, sales orders, pricing, sales promotions, references, phone, facsimile, e-mails, specials and catalog and brochure mailers, etc." (Dkt. 90-9.) Once again, there is nothing on these forms that satisfies the standard explained in *Physicians Healthcare*.

Next, Eurton claims that its "Data Quote" forms somehow demonstrate prior express invitation or permission. (Dkt. 90 at 3.) These forms contain no language regarding permission for Eurton to send fax advertisements. (*See* Dkt. 90-11.) Eurton seems to be contending that because customers fax these forms to Eurton that the customers have provided some sort of

implied consent to receive fax advertisements in return. (Dkt. 90 at 3.) This theory falls woefully short of constituting proper prior express invitation or permission.

Finally, Eurton contends that at some point after the case was filed it modified its three-step process to now include a fourth step, whereby Eurton faxes someone who it claims orally consented a form stating, "Permission for Faxing was given by the contact at the top of this flyer". (Dkt. 90 at 3, Dkt. 90-12.) As explained above, this sort of "post-hoc", retroactive statement was rejected by the Seventh Circuit in *Physicians Healthcare*. It is also self-serving—the forms are not sent to Eurton by the customer and instead are sent from Eurton to the customer. In other words, it is Eurton (and not the fax recipient) who is confirming that the fax recipient provided permission. This is not proof that permission was given, only that Eurton claims permission was given.

Thus, each one of Eurton's new theories of consent that supposedly warrants decertification fails to satisfy the prior express invitation or permission standard. Thus, Eurton's Motion for Reconsideration should be denied. Far from creating individualized issues, the documents actually bolster the fact that Eurton has no proof of prior express permission or invitation to send fax advertisements to anyone.

## IV.   CONCLUSION

No new grounds have been provided for the Court to reconsider its recent Order deny Eurton's Motion for Decertification. The Class certified by the Court should remain certified, Eurton's Motion for Reconsideration should be denied in its entirety, and the Court should award such additional relief as the it deems necessary, reasonable, and just.

*          *          *          *          *          *

Dated: October 11, 2021                    Respectfully submitted,

**TECH INSTRUMENTATION INC.**, individually
and on behalf of all others similarly situated,


By: /s/ Patrick H. Peluso
One of Plaintiff's Attorneys

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF system on this 11th day of October, 2021 to all counsel of record.

<u>/s/ Patrick H. Peluso</u>