# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: <u>1:16-cv- 02981</u>

TECH INSTRUMENTATION, INC., a Colorado corporation, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

EURTON ELECTRIC COMPANY, INC., a California corporation

        Defendant.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**I.     INTRODUCTION**

Defendant Eurton Electric Company, Inc. ("Defendant" or "Eurton") blasted unsolicited fax advertisements to Plaintiff Tech Instrumentation, Inc. ("Plaintiff" or "TII") and the members of the Class. In doing so Eurton violated the Junk Fax Prevention Act ("JFPA") which is part of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. and its implementing regulations, 47 C.F.R. § 64.1200, *et seq*. ("TCPA").

The JFPA makes it unlawful to use a fax machine to send an unsolicited advertisement. 47 U.S.C. § 227(b)(1)(C). The term "unsolicited advertisement" means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise.

47 U.S.C. § 227(a)(5). An unsolicited advertisement does not violate the Act if the sender can demonstrate that "(1) the sender has an established business relationship with the recipient; (2) the sender obtained the recipient's fax number either through a voluntary communication between the two or through a public source on which the recipient voluntarily made the number available; and (3) the fax has an opt-out notice meeting the requirements of the statute." *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 494 (W.D. Mich. 2014), *as amended* (Jan. 12, 2015) (citing 47 U.S.C. § 227(b)(1)(C).

> As this Court recently observed:
>
> It is not clear whether Tech had a pre-existing business relationship with Eurton at the time. But Tech's complaint makes clear that Eurton's faxed advertisements did not contain a complete notice of the recipient's ability to opt-out, as is required in order for Eurton to invoke the "existing business relationship" exception. 47 U.S.C. § 277(b)(1)(C)(iii). Thus, it appears that Eurton's liability to Tech turns solely on whether it can be shown that Tech gave prior express consent to receive faxed ads – i.e. that the faxed ads were not "unsolicited" under the Act.

(Dkt. 102 at 5, n.4.) Thus, the record shows (as the Court has acknowledged) that it is undisputed that Eurton was the sender of the faxes at issue, that the faxes were advertisements, and that Eurton failed to include a compliant opt-out notice. As such, the only remaining issue to resolve is whether TII and the Class gave prior express permission or invitation to receive the fax advertisements. As explained below, Eurton—which carries the burden of proof on this issue— has <u>no</u> proof that if obtained prior express permission or invitation from anyone, and Plaintiff asks the Court to grant summary judgment in favor of itself and the Class.

## II.     BACKGROUND

*Eurton blasted faxes to notify actual and potential customers of its products and promotions*

2

Eurton Electric is a California-based electric motor supply and repair company. *See* Rule 30(b)(6) Deposition of Eurton Electric ("Eurton Depo. Tr.") 11:4-11, excerpts of which are attached hereto as Ex. A. Its president is John Buchanan. (Eurton Depo. Tr. 10:14-15.)

In an effort to boost Eurton's sales and attract new customers, Eurton sent faxes to thousands of businesses advertising its products and services. Eurton didn't send the faxes itself; it hired a blast fax company in Colorado known as WestFax to perform the actual faxing on its behalf. (Eurton Depo. Tr. 24:22-25 - 25:1-5.) That said, Eurton knew about the faxes and controlled their content, including the opt-out language that was used, which stated:

> PLEASE REMOVE: We at Eurton Electric try our best to contact all customers on our list, but understand mistakes occur, or unauthorized permission may have been given. If you have no need for our repair or parts service, and which to be removed from future contacts, please fax, e-mail, or phone (below) and let us know the number you wish removed.

*See* "Sample Faxes," Group Ex. 3 to Eurton Depo, attached hereto as Ex. B. All of Eurton's faxes contained identical opt out language. (Eurton Depo. Tr. 136:15-25.)

Eurton employed a common, three-step method for supposedly obtaining consent. *See* Amd. Resp. to RTP No. 8, attached hereto as Ex. C. According to its Rule 30(b)(6) designee, Eurton's practice was to first locate businesses online that might use motors in their operations and then, second, cold-call those businesses and ask whether the business would be interested in receiving more information. (Eurton Depo. Tr. 67:1-25 - 69:1-19.) The company policy was to then ask the businesses if they agreed to receive more information, including by fax. (Eurton Depo. Tr. 67:5-10.) This was an admittedly imperfect system, so it was also a matter of company policy that Eurton would remove anyone when "mistakes" occurred. (Eurton Depo. Tr. 56:4-25 - 57:1-5; 77:9-10.)

In addition to failing to keep other evidence, Eurton failed to make any oral or written record of any conversations where consent was supposedly obtained. (Eurton Depo. Tr. 57:17-20.) Hence, Eurton has no evidence that TII (or anyone else for that matter) actually gave prior express permission or invitation to be faxed. (Eurton Depo. Tr. 65:20-25 - 66:1-10.) And TII never had any sales with Eurton. (*See* Amd. Resp. to RTP No. 1, attached hereto as Ex. C.) As Eurton's corporate designee testified:

> Q. But we have already established that you have no evidence that any fax sent to my client was solicited; correct?
>
> A. No.
>
> Q. You do have evidence?
>
> A. I'm sorry. Evidence, no. No evidence. You're right.

(Eurton Depo. Tr. 65:18-25; 56:4-17.) Indeed, Eurton lacks *any* evidence of consent for anyone:

> Q. [D]o you now make sure you have a record of someone giving consent before they go on the fax list or do you still sort of put them on and take them off?
>
> ...
>
> THE WITNESS: Yes. I wasn't aware that I had to until this, and now we are doing it, yeah.

(Eurton Depo. Tr. 139:5-15; *see also* 65:20-25 - 66:1-10.) Rather than keep any records of consent, Eurton simply presumed it obtained consent because of its supposed policy to call ahead and ask for such permission. (Eurton Depo. Tr. 66:12-25 - 67:1-25; 76:6-10.) To be clear, however, Eurton failed to maintain *any* records of prior express permission or invitation from its fax recipients. Eurton Depo. Tr. 139:5-15; *see also* 65:20-25 - 66:1-10.

***Eurton now claims to have written proof of prior express permission or invitation obtained outside the scope of its three-step process; however, the documents Eurton put forth at the eleventh hour of this case fail to constitute prior express permission.***

4

Years after this lawsuit was filed (and after discovery had already closed), Eurton pivoted away from its three-step process and attempted to assert that it has documentary proof that prior express permission or invitation was obtained—this was the basis of its Motion to Decertify (dkt. 90). Though Plaintiff believes such arguments should be deemed waived as untimely (*see* dkt. 95), the documents fail to satisfy the standard for prior express invitation or permission in any case. In short, none of the untimely documents show prior express invitation or permission as required by the JFPA.

Thus, as explained further below, none of the supposed methods of obtaining prior express invitation or permission to receive fax advertisements is legally sufficient, and summary judgment should be granted in favor of Plaintiff and the Class.

## III.   LEGAL STANDARD

A motion for summary judgment is to be granted if the movant shows that (1) there is no genuine dispute as to any material fact of the claims on which judgment is sought, and (2) the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party initially bears the burden of proving the absence of a genuine issue of material fact. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). When the movant meets its burden, the burden shifts to the non-moving party to identify specific facts that demonstrate the existence of genuine issues for trial. *Id.*

## IV.   ARGUMENT

Eurton bears the burden of proving that it had "prior express invitation or permission" to send the faxes at issue to Plaintiff and the Class. *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018) ("We therefore hold that 'prior express invitation or permission' is an affirmative defense on which [the defendant] bears the burden of proof."). As

5

Plaintiff explained both in its Response to Defendant's Motion to Decertify and in its Response to Defendant's Motion for Reconsideration, until recently Eurton's only theory of consent was its supposed three-step process. As demonstrated above, Eurton lacks any proof that anyone provided sufficient prior express permission or invitation via this process. Thus, it cannot carry its burden of proving that it had prior express invitation or permission.

Likely understanding this, Eurton has recently tried to pivot away from its three-step process and now claims that its "credit applications, update forms, and data quote forms" demonstrate prior express permission to be faxed. As explained in Plaintiff's Response to Defendant's Motion to Decertify, these arguments should be considered waived—Eurton could have disclosed these materials in discovery and presented them during the briefing on class certification but chose not to. But even if the Court were to consider Eurton's argument, the documents fail to demonstrate prior express permission to be faxed.

The Seventh Circuit recently examined the type of materials a JFPA defendant like Eurton must put forward to demonstrate "prior express invitation or permission." *See Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 965–67 (7th Cir. 2020). The Seventh Circuit reviewed three different methods of supposed consent. "The first category includes statements suggesting that the individual or entity generally gave permission to receive faxes from [the defendant]. [E]vidence of permission to generally send faxes does not establish prior express permission to fax ads." *Id.* at 966. The second supposed method of consent set forth in *Physicians Healthcare* was "post hoc statements that an individual *would have* given consent," which failed "because they do not show AMS had *prior* express permission to send the faxes in question." *Id.* (emphasis in original.)

6

The third method the defendant argued in *Physicians Healthcare* consisted of "statements that the affiants and their employers consented to receive '[defendant's] product information' at the beginning of their business relationship with [defendant]". *Id.* The Seventh Circuit rejected this theory as well, explaining:

> The district court found these [statements] uniformly "too thin to permit a reasonable jury to conclude that "consented," as used in the declarations, meets the legal definition of 'prior express permission.'" Specifically, the court explained that the affidavits and other testimony (1) did not permit an inference that the recipient understood he or she was expressly giving, *in advance*, permission to send faxed advertisements, and (2) did not describe the content of the faxes that the declarant purportedly consented to receive. We agree.
>
> First, at a general level, we must ask whether a consumer must renew its permission for every fax advertisement, or whether a consumer's consent at one point in time gives ongoing consent. Both *CE Design* and *Travel 100 Grp.*, as well as the FCC's regulations, imply that a party may consent on an ongoing basis to faxed advertisements. *See* 637 F.3d at 726; 321 Ill.Dec. 516, 889 N.E.2d at 789; 18 F.C.C. Rcd. at 14128–29. Given the impracticality of any other rule, we make our ruling explicit: Provided a customer gives consent in the manner described below, we will presume that the customer has given permission on an ongoing basis to fax advertisements.
>
> The second and more challenging question is how that permission should be phrased. In light of the FCC's explanation that, for prior express permission to be valid, "a consumer [must] understand that by providing a fax number, he or she is agreeing to receive fax advertisements," 18 F.C.C. Rcd. at 14129, we conclude that the consumer must affirmatively and explicitly give the advertiser permission to send it fax advertisements on an ongoing basis. The invitation or permission cannot simply authorize a single, specific fax, or state that the consumer consented to receive faxed ads from the defendant in the past. Instead, it must explicitly convey that the consumer gives the advertiser ongoing permission to send ads via fax until such time as the consumer withdraws its consent. This framework is both consistent with the FCC's statements on the matter and conforms to the TCPA's text. *See, e.g.*, 18 F.C.C. Rcd. at 14129 ("For example, a company that requests a fax number on an application form could include a clear statement indicating that, by providing such fax number, the individual or business agrees to receive facsimile advertisements from that company. Such statement, if accompanied by the recipient's signature, will constitute the necessary prior express permission to send facsimile advertisements to that individual or business.").
>
> With that rule in mind, the third category of affidavits does not demonstrate that the affiants gave prior express permission for faxed advertisements. A statement

7

> explaining that a consumer agreed to receive "product information" via fax after purchasing some products or services from a company is not the same as agreeing to accept faxed advertisements. As the FCC and now we have explained, a recipient must specifically acknowledge that faxed advertisements will follow its consent to constitute prior express permission. A consumer's statement that it gave permission to send "product information" via fax, even on an ongoing basis, after purchasing products or services from a company cannot as a matter of law constitute prior express permission. (It would be a different matter if the affidavits explicitly suggested that that consent included promotional materials or product information regarding products or services not yet purchased.) Similarly, that one had consented to receive a fax advertisement in the past and would have consented to fax advertisements if asked again does not establish ongoing permission to send fax advertisements.
>
> Thus, AMS has not shown that Allscripts had prior express permission to send faxes.

*Physicians Healthsource, Inc.*, 950 F.3d at 966–67. With this standard in mind, Eurton's new theories of consent all fail.

First, Eurton claimed in its Motion to Decertify that its "credit application forms" constitute prior express invitation or permission. (Dkt. 90 at 2; Dkt. 90-7.) These forms are ostensibly completed by customers of Eurton for the purpose of receiving credit from Eurton. The forms contain fields to list the name of the company applying, the address, phone number, and fax number for the company, and a list of references to provide. (*See* Dkt. 90-7.) The forms are not signed, nor do they appear to be dated. *Id.* On the right side of the form, there is a text box which reads:

> IT IS FAST BECOMING THE INDUSTRY STANDARD TO ONLY GIVE OUT CREDIT INFORMATION BY FAX OR MAIL.
>
> ALSO, MANY LARGE CORPORATIONS WILL GIVE CREDIT INFORMATION FROM THE CORPORATE HEADQUARTERS ONLY. WHEN LISTING A LARGE CORP., BE SURE TO INCLUDE THE ADDRESS OF THE MAIN OFFICE AND YOUR ACCOUNT NUMBER.
>
> THIS INFORMATION PROVIDES US WITH THE BEST WAY OF CONTACTING YOU FOR ALL NORMAL BUSINESS COMMUNICATIONS,

      INCLUDING: INVOICES, SALES ORDERS, CATALOGS, PROMOTIONAL FLYERS, PRICING UPDATES, ETC.

      THANK YOU.

(Dkt. 90-7.) Eurton claims these forms "clearly demonstrate prior express permission to be faxed" (dkt. 90 at 12), but that is simply not the standard. A customer of Eurton who may have filled out these forms did so in the context of applying for credit. There is nothing on the form that approaches the standard explained in *Physicians Healthcare* related to fax advertisements. For example, as the FCC has stated, "a company that requests a fax number on an application form could include a clear statement indicating that, by providing such fax number, the individual or business agrees to receive facsimile advertisements from that company. Such statement, if accompanied by the recipient's signature, will constitute the necessary prior express permission to send facsimile advertisements to that individual or business."). 18 F.C.C. Rcd. at 14129. Eurton's "credit application" forms do not do that. The forms do not satisfy the prior express invitation or permission standard.

    Next, Eurton claims its "Customer Contact Information Update" forms also demonstrate prior express invitation or permission. (Dkt. 90 at 12.). These forms (which are also unsigned) contain fields for contact information and have a statement at the bottom that reads "[t]he above information is current and is the best way of contacting us through normal business communications including: invoices, sales orders, pricing, sales promotions, references, phone, facsimile, e-mails, specials and catalog and brochure mailers, etc." (Dkt. 90-9.) Once again, there is nothing on these forms that satisfies the standard articulated in *Physicians Healthcare*.

    Next, Eurton claims that its "Data Quote" forms somehow demonstrate prior express invitation or permission. (Dkt. 90 at 3.) These forms similarly contain no language regarding permission for Eurton to send fax advertisements. (*See* Dkt. 90-11.) Eurton seems to be

9

contending that because customers fax these forms to Eurton that the customers have provided some sort of implied consent to receive fax advertisements in return. (Dkt. 90 at 3.) This theory falls short of constituting proper prior express invitation or permission.

Finally, Eurton contends that at some point after the case was filed it modified its three-step process to now include a fourth step, whereby Eurton faxes someone who it claims orally consented a form stating, "Permission for Faxing was given by the contact at the top of this flyer". (Dkt. 90 at 3, Dkt. 90-12.) As explained above, this sort of "post-hoc", retroactive statement was rejected by the Seventh Circuit in *Physicians Healthcare*. It is also self-serving—the forms are not sent to Eurton by the customer and instead are sent from Eurton *to* the customer. In other words, it is Eurton (and not the fax recipient) who is confirming that the fax recipient provided permission. This is not proof that permission was given, only that Eurton claims permission was given.

Thus, even if the Court opts to consider Eurton's new theories of consent, none of them satisfies the prior express invitation or permission standard. Because these theories fail and Eurton has no evidence that prior express invitation or permission was obtained orally (or in writing) via its three-step process, summary judgment should be granted in favor of Plaintiff and the Class. Eurton simply cannot meet its burden in this case with respect to the entire Class.

## V.     CONCLUSION

Plaintiff's Motion for Summary Judgment should be granted. As the Court has stated, the only matter in dispute is whether the faxes were sent with the prior express permission or invitation of the recipient. Eurton cannot carry its burden to demonstrate prior express permission or invitation was obtained. Accordingly, the Court should grant summary judgment in favor of Plaintiff and the Class and award any such relief as it deems necessary and just.

    *   *   *   *   *   *

Dated: October 11, 2021    Respectfully submitted,

                **TECH INSTRUMENTATION INC.**, individually and on behalf of all others similarly situated,


                By: /s/ Patrick H. Peluso
                One of Plaintiff's Attorneys

                Steven L. Woodrow
                swoodrow@woodrowpeluso.com
                Patrick H. Peluso
                ppeluso@woodrowpeluso.com
                Woodrow & Peluso, LLC
                3900 East Mexico Ave., Suite 300
                Denver, Colorado 80210
                Telephone: (720) 213-0675
                Facsimile: (303) 927-0809

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF system on this 11th day of October, 2021 to all counsel of record.

<u>/s/ Patrick H. Peluso</u>