**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-02981-MSK-KMT

TECH INSTRUMENTATION, INC., a Colorado corporation, individually and on behalf of all others similarly situated,

    Plaintiff

v.

EURTON ELECTRIC COMPANY, INC., a California corporation

    Defendant

**DEFENDANT'S REPLY IN SUPPORT OF MOTION
FOR RECONSIDERATION OF
ORDER DENYING MOTION TO DECERTIFY CLASS**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Defendant Eurton Electric Company, Inc.'s ("Eurton") Motion for Reconsideration asserted that when documents Eurton presented in support of decertification are considered <u>in combination</u> with oral communications by Eurton, this presented individualized inquiries as to prior express permission or invitation under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").  Plaintiff Tech Instrumentation, Inc. ("Plaintiff") asserts in its Opposition that the documents Eurton presented in support of decertification do not establish prior express permission or invitation in of themselves, which has nothing to do with Eurton's Motion. Eurton's Motion should be granted in its entirety, as shown below.

**II.     ARGUMENT**

**A.      The Court's Order put Eurton's documentary evidence of consent at issue**

Plaintiff asserts that Eurton waived argument that it had documentary evidence of consent with respect to decertification of its class.  (Dkt 104 at 2-3.)  The Court's Order denying decertification held that although the decision in *Anderson Living Tr. v. WPX Energy Prod., LLC*, 308 F.R.D. 410, 438 (D.N.M. 2015) "endorsed applying the principles limiting motions for reconsideration to the context of a motion seeking decertification of a class as well, it added a caveat."   (Dkt 102 at 12) The Court recognized that courts have "an ongoing responsibility to modify or decertify the class as the need arises," including "the thoroughness with which [the court] decided the issue or issues that the motion to reconsider challenges." (Dkt 102 at 12, citing *Anderson,* 308 F.R.D. at 439-40.)  Therefore, argument relating to the forms presented by Eurton in support of its Motion for decertification should be considered.

**B.      Plaintiff does not address the lifespan of consent issue presented by Eurton's Motion**

Plaintiff painstakingly analyzes the written documents set forth by Eurton and asserts that these documents, standing alone, do not establish prior permission or invitation.  (Dkt 104 at 5-9.)   This argument fails for two reasons.  First, the merits of a defense is generally not addressed

in deciding certification issues. of Rule 23 are met.  *In re Oppenheimer Rochester Funds Grp. Sec. Litig*., 318 F.R.D. 435, 442 (D. Colo. 2015).  While the analysis "may 'entail some overlap with the merits of the plaintiff's underlying claim,' " Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* citing *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,* 568 U.S. 455, 464, 133 S. Ct. 1184, 1194, 185 L. Ed. 2d 308 (2013) (citing *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011)).  Plaintiff's repeated assertion that there is "no evidence of consent" via the oral three step process   (Dkt 104 at 5) is false.  The Court merely held that whether the oral three-step process established prior express permission or invitation was a common issue.  (Dkt 47 at 3)

Also, as held by this Court:

> Eurton's assumption that providing a fax number constituted express consent from the recipient to use that fax number for any conceivable business purpose may be too aggressive a reading of the form's language, particularly in light of the explicitness with which Physicians Healthcare requires disclosures and consents to contain. 950 F.3d at 966. But that issue is not presently before the Court and thus, the Court expresses no opinion as to the matter.

(See Dkt 102 at 16, n.9.)

Moreover, Eurton's Motion made it clear that it was asserting that the combination of the written documents and oral representations could establish prior permission or invitation.  (Dkt 103 at 7-8)

Therefore, for each class member:

| Stage of obtaining prior permission or invitation | Description |
|---|---|
| 1 | First Step: Eurton's practice was to first locate businesses online that might use motors in their operations.  (Dkt 90-1 at 8) |
| 2 | Second Step: Cold-call those businesses and ask whether the business would be interested in receiving more information. (Dkt 90-1 at 8) |

{00161327;1}

| Stage of obtaining prior permission or invitation | Description |
|---|---|
| 3 | <u>Third Step</u>: The company policy was to then ask the businesses if they agreed to receive more information, including by fax. (Dkt 90-1 at 8) |
| 4 | Eurton's Motion asserted that as part of its customer process, Eurton would have potential customers complete a credit application and provide their fax number. (Dkt 90-1 at 8)  Moreover, Eurton asserts these forms were provided along with oral explanation. (Buchanan Decl. ¶ 42.) Evaluating Eurton's forms in a vacuum does not address the context in which the forms were presented.<br><br>(Dkt 98 at 14.) |
| 5*[1] | It was Eurton's regular business practice to have its customers complete Customer Contact Update Forms. (Dkt 90-1 at 9) |

In other words, there would have been a credit application and oral explanation of the application form, <u>following</u> the "three step" oral process.  Plaintiff's analysis of Eurton's forms in a vacuum in its Opposition is therefore irrelevant.  So is Plaintiff repeated reliance upon *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 965–67 (7th Cir. 2020) to assert that each form does not establish an issue as to prior express invitation or permission in of itself.  (Dkt 104 at 8-10.)  What is relevant is that decertification is proper when there is a combination of oral and written communications with a class member such that the class lacks predominance, as shown below.

In a 2015 Order, the FCC instructed that the "scope of consent must be determined upon the facts of each situation." 30 FCC Rcd. 7961 ¶ 49 (July 10, 2015);  *See also Alpha Tech Pet Inc. v. LaGasse, LLC*, No. 16 C 4321, 2017 WL 5069946, at *4 (N.D. Ill. Nov. 3, 2017).  In

---

[1] Not applicable to all class members.

{00161327;1}

3

addition, notions of criminal law consent to search is relevant. *See, e.g., Gutierrez v. Barclays Group,* No. 10cv1012 DMS (BGS), 2011 WL 579238, at *3 (S.D. Cal. Feb. 9, 2011). In *Gutierrez,* the district court held that a husband had "common authority" over his wife's cellular phone, such that he could give "prior express consent" to be contacted, as used in the TCPA. *Id.* The *Gutierrez* court analogized to Supreme Court precedent in the criminal context allowing officers to search an area where a third party has common authority over the area sufficient to provide consent. *Id.* (citing *United States v. Matlock*, 415 U.S. 164, 171 (1974)).

The Tenth Circuit in the criminal context has held that the general standard for measuring the scope of consent is based on "objective reasonableness." *United States v. Pena*, 143 F.3d 1363, 1367-68 (10th Cir.1998).  Scope "is generally defined by its expressed object," and "is limited by the breadth of the consent given." *United States v. Elliott*, 107 F.3d 810, 814-15 (10th Cir.1997) (quotations and citations omitted).  In this context, subsequent written consent can modify prior oral consent. As held in *United States v. Sanchez*, No. 1:11-CR-239-25-CAP, 2012 WL 4325822, at *3 (N.D. Ga. July 10, 2012), *report and recommendation adopted*, No. 1:11-CR-00239-CAP, 2012 WL 4325819 (N.D. Ga. Sept. 20, 2012):

> Although a written consent form was signed immediately after the oral consent that provided consent to search the residence address without limitation, **the later written consent should be taken in the context of the oral consent already given and construed consistently with that prior consent**.

*Id.* (emphasis added).

Therefore, oral representations of Eurton during the three-step-process, the credit application forms, and the oral explanation of those forms should be considered <u>together</u>. *See, e.g., AJ Reyes v. Educ. Credit Mgmt. Corp*., No. 315CV00628BASJMA, 2016 WL 2944294, at *3 (S.D. Cal. May 19, 2016) (holding that "the record indicates that Plaintiff subsequently provided express consent [under the TCPA] both orally and in writing to be called on his cell phone with an ATDS….")

By definition, every class member was subject to the three-step oral consent process. Eurton asserts that at a minimum that every class member who was a customer received a credit

application form and oral explanation relating to the providing of information in the form, including fax numbers. Whether these customers who already received the three-step oral process were put on notice of what the effect of providing the fax number in the application form, especially given additional oral clarification, is an individualized inquiry.

The Court previously challenged Eurton's use of the concepts of "recipient of a faxed ad" and "customer of Eurton" interchangeably. (Dkt 102 at 10, n. 6) Eurton asserts that given that there are no fax records, and given that the records used to provide notice are its customer records, the majority of the persons provided notice are likely customers. This is borne out by the post-lawsuit verifications. The means the majority of the persons provided notice would have completed a credit application. This demonstrates lack of predominance for the class, given that the majority of the class members had multiple oral communications regarding the providing of the fax number as well as providing the number in the credit application.

*See, e.g., Friedman v. Dollar Thrifty Auto. Grp., Inc*., 304 F.R.D. 601, 612 (D. Colo. 2015) (denying certification where what "the putative class members were told or understood regarding the products, and their reasons for purchasing the products, could have varied greatly depending on the individualized nature of the communications at issue. Thus, each claim depends on the class members' particular interactions with Dollar."); *Smith v. MCI Telecommunications Corp.*, No. CIV. A. 87-2110-O, 1990 WL 58708, at *4 (D. Kan. Apr. 9, 1990) ("The court agrees that as a general rule, an action based substantially or primarily on oral rather than written communications is inappropriate for treatment as a class action."); *Abbit v. ING USA Annuity*, No. 13CV2310-GPC-WVG, 2015 WL 7272220, at *11 (S.D. Cal. Nov. 16, 2015) (denying class certification where both oral and written statements were made to class members and therefore class lacked predominance). *In Re LifeUSA Holding, Inc*. 242 F.3d 136, 146–147 (3rd Cir. 2001) (reversing district court's order granting certification of claims against annuity company where evidence showed that the annuities were sold by independent sales agents who were free to use or not use the insurer's standardized marketing materials, and who had individually-tailored discussions with customers). *See also Livingston v. U.S. Bank, N.A*, 58

{00161327;1}

P.3d 1088, 1091 (Colo. App. 2002) (holding that "Because the TCPA does not require consent to be given in writing, and it may be given orally, determination of this issue would involve examining whether each potential class member had invited or given permission for the transmission of the fax.")

The Court's Order held that "Because there remains the possibility that the issue of consent can be resolved categorically on a classwide basis, the Court's finding of predominance and certification of a class remains a correct one at this time."  (Dkt 102 at 16)  Eurton asserts that when considering both the oral and written communications over the lifespan of the interaction with a particular consumer, the determination of whether there was prior express consent is an individualized inquiry such that Plaintiff's class lacks predominance.

### III.   CONCLUSION

For the reasons set forth in its Motion and Reply, Eurton respectfully requests that the Court reconsider its September 9, 2021 order denying Eurton's Motion to Decertify, and reverse.

October 25, 2021                                     /s/ David J. Kaminski
                                                              David J. Kaminski
                                                              Stephen A. Watkins
                                                              Carlson & Messer LLP
                                                              5901 W. Century Blvd., #1200
                                                              Los Angeles, CA 90045
                                                              kaminskid@cmtlaw.com
                                                              (310) 242-2200

## CERTIFICATE OF SERVICE

      I hereby certify that, on the 25th day of October 2021, a true and correct copy of the above and foregoing has been served by electronic notification by filing with the Clerk of Court using the CM/ECF system, which sent notification via e-mail to the following:

    ppeluso@woodrowpeluso.com
    tsmith@woodrowpeluso.com
    woodrow@woodrowpeluso.com

        /s/ David J. Kaminski
    David J. Kaminski
    Stephen A. Watkins
    Carlson & Messer LLP
    5901 W. Century Blvd., #1200
    Los Angeles, CA 90045
    kaminskid@cmtlaw.com
    (310) 242-2200