# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-02981-MSK-KMT

TECH INSTRUMENTATION, INC., a Colorado corporation, individually and on behalf of all others similarly situated,

        Plaintiff

v.

EURTON ELECTRIC COMPANY, INC., a California corporation

        Defendant

---

## DEFENDANT'S RESPONSE TO
## NOTICE RE PLAN TO ASCERTAIN CLASS MEMBERS

---

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff concedes there are no fax logs reflecting faxes to its class, but still asserts it can identify class members.  However, "no circuit court has ever mandated certification of a TCPA class where fax logs did not exist, and we decline to be the first."  *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.,* 863 F.3d 460, 470-71 (6th Cir. 2017).   The Court should follow *Sandusky* and reject Plaintiff's plan to identify class members and decertify the class.

## II.   BACKGROUND

### A.   The Class

The Court's May 29, 2018 Order certified the following class:

Any person/entity who:

1)  Received a cold call from Eurton pursuant to its
    three-step procedure; and
2)  Is listed on a list prepared by Eurton and supplied to WestFax; and
3)  Received one or more faxes sent by Eurton or WestFax between
    December 16, 2013 through the date notice is sent to the Class.

(Dkt. 47 at 6)  The Court's September 9, 2021 Order denying Eurton's Motion to Decertify modified the class definition:

Any person/entity who: (i) received a cold call from Eurton pursuant to its three-step procedure; (ii) is listed on a list prepared by Eurton and supplied to WestFax; and (iii) received one or more ~~faxes~~ faxed advertisements sent by Eurton or WestFax between December 16, 2013 through the date notice is sent to the class."

(Dkt 102 at 20, n.10) (strikethrough added.)

### B.   Notice to the Class

Prior the sending of notice to the class, Plaintiff and Eurton disputed the data that should be used to populate the class list.  Eurton requested that the recipients of the class notice should be based upon the fax list and fax logs, instead of Plaintiff's customer list of 7,500 persons.

In ruling on the dispute, the Court held as follows:

"[E]urton has produced three collections of information that 'can be used to locate class members':

(i)      its 'accounting database system,' that lists all persons and entities (including fax numbers) that have done business with Eurton;

(ii)      the 'potential customer/actual customer spreadsheet' that "captures both potential customers as well as actual customers" (including actual customers who might not have been entered into the accounting database); and

(iii)      Eurton's 'fax list,' which Tech concedes "represents a significant portion of the class in this case," but which may be either over-inclusive (because it includes persons who may have expressly authorized Eurton to send fax advertisements) or under-inclusive (because it omits persons who received unsolicited faxes and who contacted Eurton asking to be removed.)

The Court therefore directed that class notice be sent to the following persons or entities:

(i)      those listed on Eurton's 2017 fax logs;
(ii)      those listed on any existing iteration of Eurton's "fax list"; and
(iii)      those who do not meet either of the first two criteria, but who are noted as having a fax number in either Eurton's accounting database or on its potential customer/actual customer spreadsheet.

(Dkt 72 at 4)

For the purposes of class notice, Eurton produced data relating to (ii) those listed on any existing iteration of Eurton's "fax list" and (iii) those who do not meet either of the first two criteria, but who are noted as having a fax number in either Eurton's accounting database or on its potential customer/actual customer spreadsheet.  (Declaration of John Buchanan ¶¶ 21-23.) Eurton did not have any 2017 fax logs other than fax attempts to verify the persons under (ii) and (iii) post- lawsuit.  (Buchanan Decl. ¶ 22.)

On January 30, 2020, notice was sent to the first set of class members (associated with 1,498 fax numbers in the fax list) set forth in EE001-33 (See Dkt. 86 at 3.)  (Buchanan Decl. ¶ 20)  Notice was sent to the second class list on June 12, 2020, which were names in the database that did not overlap with the "fax list" set forth in EE001-33.  (Buchanan Decl. ¶ 21) The persons that received notice is overinclusive because many of the persons identified in the Second List were not sent faxes.   The persons in Eurton's customer database that do not overlap with its fax list that were in the second list were likely not faxed.  (Buchanan Decl. ¶¶ 32-34 ).

## III.   <u>ARGUMENT</u>

The Sixth Circuit in *Sandusky,* 863 F.3d at 472–73 rejected the same proposal Plaintiff makes here to identify class members—that TCPA fax class members self-identify via affidavit. (Dkt 106 at 3-4) (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 668–69 (7th Cir. 2015)).

Moreover, the Seventh Circuit in *Mullins* specifically acknowledged that post-certification difficulty in identifying class members could lead to decertification.  *Mullins, supra*, at 664 ("In addition, a district judge has discretion to (and we think normally should) wait and see how serious the problem [of identifying particular class members] may turn out to be after settlement or judgment, when much more may be known about available records, response rates, and other relevant factors. And if a problem is truly insoluble, the court may decertify the class at a later stage of the litigation.").  So did this Court:  "If the Court concludes that Tech's method is unreliable, seriously overbroad, or inefficient compared to other possible ways of adjudicating the controversy, the Court may choose to decertify the class or modify the class definition at that time." (Dkt 102 at 21 (citing *Mullins*, 795 F.3d at 664)).

Plaintiff's plan to ascertain class members does not address "insoluble" problems and should be rejected for the reasons set forth below.

### A.    **Not All Persons Provided Notice are Class Members**

Plaintiff's class is "seriously overbroad."  Eurton asserts it was extremely unlikely the 2,378 persons in Eurton's database that do not overlap with the Initial List were ever faxed.  The Initial List was primarily based on the Tools List for Mailing 5-2009, and the Tool List in question was generally Eurton's running record of persons actually faxed.  (Buchanan Decl. ¶ 33)

Just because Eurton possessed names, address, telephone numbers, fax numbers in the database did not mean they were faxed.  (Buchanan Decl. ¶ 34)  For the same reason, not everyone in the database was mailed or called on the phone.  (Buchanan Decl. ¶ 34)  It was simply a database.  (Buchanan Decl. ¶ 34)  The fact that the Initial List does not wholly overlap with the database bears this out.  (Buchanan Decl. ¶ 34)

Eurton asserts that at a minimum, these 2,378 persons set forth the in Supplemental List

should be excluded from class membership.

**B.      The Age of this Lawsuit Argues Against Self-Identification**

Plaintiff's self-identifying process should be rejected given the age of this case.  In*, Sandusky,* the district court recognized that its own proffered solution—having class members submit individual affidavits testifying to receipt of the Prolia fax—was not feasible, concluding that the reliability of an individual's recollection of having received a seven-year-old, single-page fax would be dubious at best.  863 F.3d at 473.

The Court in *Sandusky* also noted that the district court acknowledged it was possible that all 53,502 intended recipients might submit affidavits claiming receipt of the Prolia fax and their entitlement to $500 in damages.  *Id.*  "Finding out which quarter of these individuals were being untruthful would require scrutinizing each affidavit and would undoubtedly be a difficult undertaking."  *Id.*

The Sixth Circuit in *Sandusky* distinguished *Mullins* and *Briseno*—which suggested that a district court may rely on affidavits to identify class members, noting those decisions do not mandate that it must do so.  In doing so, the Court in *Sandusky* held that even *Mullins* contemplated that "[a] plaintiff's failure to address the district court's concerns adequately [with regards to difficult manageability problems] may well cause the plaintiff to flunk the superiority requirement of Rule 23(b)(3)."  *See Mullins*, 795 F.3d at 672.  "That is exactly the scenario we have here."  *Id.*

Plaintiff's cited authority, *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014), is not to the contrary.  There, the plaintiff already possessed a list of telephone numbers associated with the defendant in proposing to use affidavits and **phone records to document each individual call received** and the telephone number of each caller.  *Id.* at 248, 256. (emphasis added).  No such list exists here.

Plaintiff's proposal that self-identifying affidavits for faxes received as far back as eight years ago (December 16, 2013 through date of class notice) should be rejected.  This is the very type of "unwieldy" plan that the Court directed Plaintiff not to make.

**C.      The Amount at Issue Argues Against Self-Identification**

Notwithstanding the age of this case, Plaintiff's "self identifying" class proposal does not work when statutory damages are so high.  *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 458 (M.D. Fla. 2018).  The Court in *Wilson* denied certification of a TCPA call class when the plaintiff made a similar proposal regarding self-attestation.   In doing so, it distinguished *Mullins*:

> [W]hile an affidavit certifying inclusion in a class might be appropriate in some cases where damages for an individual claimant are negligible, see e.g., Mullins v. Direct Digital, LLC, 795 F.3d 654, 667 (7th Cir. 2015), **here Defendant could face up to $ 1500 per call. This amount is relevant both as an incentive for individuals to improperly enter the class and,** as discussed more fully below, a danger that impacts due process protections for Defendant.

*Id.*

The Court in *Wilson* went on:

>  ("[A]llowing class members to self-identify without affording defendants the opportunity to challenge class membership provide[s] inadequate procedural protection to ... [d]efendant[s] and implicate[s their] due process rights[, but] protecting defendants' due-process rights by allowing them to challenge each claimant's class membership is administratively infeasible, because it requires a series of minitrials just to evaluate the threshold issue of which [persons] are class members.") (alterations in original) (internal quotation marks and citations omitted).

*Id.* (citing *Karhu v. Vital Pharms., Inc*., 621 F. App'x 945, 948-949 (11th Cir. 2015)[1].  *Compare Mullins*, 795 F.3d at 667 ("In this case, for example, the value of each claim is approximately $70 (the retail price)".

The Court in *Sandusky* also cited the amount at issue (863 F.3d at 473) was part of the reason self-identification was problematic.  To extent Plaintiff seeks $500 to $1,500 per fax, such figures would likely induce some class members to misrepresent receiving a fax.   Self-identification does not solve this issue.

---

[1] Although the 11th Circuit has clarified there is not a standalone ascertainability requirement it is still part of the manageability analysis.  *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1361 (11th Cir. 2021).

{00161673;1}

### D.    Plaintiff's Plan Must Address Article III Standing

Every class member must have Article III standing in order to recover individual damages. "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208, 210 L. Ed. 2d 568 (2021). *TransUnion* also confirms that "[a] plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.' " *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). *TransUnion* did not "address the distinct question whether every class member must demonstrate standing before a court certifies a class." 141 S. Ct. at 2208 n.4. However, given that Plaintiff's class is certified, its identification plan must identify class members with standing. Plaintiff's plan fails to meet this burden.

### E.    At a Minimum, Class Members Should be Required to Present Documents Showing Fax Received

Although Eurton asserts that Plaintiff's class "flunks" the superiority test per *Mullins*, Eurton asserts that at the very least, class members should be required to show a phone bill or other record of receipt of a fax. The Seventh Circuit in *Mullins* recognized "that the risk of mistaken or fraudulent claims is not zero. But courts are not without tools to combat this problem during the claims administration process." *Mullins*, 795 F.3d at 667. It specified the following:

> They can rely, as they have for decades, on claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court to take into account the size of the claims, the cost of the techniques, and an empirical assessment of the likelihood of fraud or inaccuracy.

*Id*.

The Court in *Birchmeier* held that the <u>combination</u> of affidavits and class members phone records could suffice for ascertainability.    302 F.R.D. at 248, 256. Plaintiff's cited authority *Abboud v. Agentra, LLC*, No. 3:19-CV-00120-X, 2020 WL 5526557, at *4 (N.D. Tex. Sept. 14, 2020) also states that "the text class could provide documentation in the form of a picture of the text message, a record from a cell phone bill, or some other objective proof."

In our case, given the issues set forth above, at a minimum, the Court should require a

phone bill or fax receipt as part of a class member's proof, rather than just an affidavit.

**IV.**     **<u>CONCLUSION</u>**

Given the deficiencies in Plaintiff's plan to ascertain class members, Eurton asks that this Court either decertify the class, at least narrow the class to those on Eurton's Fax List, or require proof other than a mere affidavit, but a phone bill or fax receipt.

November 1, 2021                          <u> /s/ David J. Kaminski</u>
                                          David J. Kaminski
                                          Stephen A. Watkins
                                          Carlson & Messer LLP
                                          5901 W. Century Blvd., #1200
                                          Los Angeles, CA 90045
                                          kaminskid@cmtlaw.com
                                          (310) 242-2200

## CERTIFICATE OF SERVICE

I hereby certify that, on the 1st day of November 2021, a true and correct copy of the above and foregoing has been served by electronic notification by filing with the Clerk of Court using the CM/ECF system, which sent notification via e-mail to the following:

ppeluso@woodrowpeluso.com
tsmith@woodrowpeluso.com
woodrow@woodrowpeluso.com

    /s/ David J. Kaminski
David J. Kaminski
Stephen A. Watkins
Carlson & Messer LLP
5901 W. Century Blvd., #1200
Los Angeles, CA 90045
kaminskid@cmtlaw.com
(310) 242-2200