**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-02981-MSK-KMT

TECH INSTRUMENTATION, INC., a Colorado corporation, individually and on behalf of all others similarly situated,

        Plaintiff

v.

EURTON ELECTRIC COMPANY, INC., a California corporation

        Defendant

---

**DECLARATION OF JOHN BUCHANAN IN SUPPORT OF
DEFENDANT'S RESPONSE TO
NOTICE RE PLAN TO ASCERTAIN CLASS MEMBERS**

---

1. I, John Buchanan, am over the age of eighteen years and am competent to make this declaration.

2. I have personal knowledge of the matters set forth in this declaration, except as to those matters stated upon information and belief, and I believe those matters to be true.

3. I am President of Defendant Eurton Electric Company, Inc. ("Eurton").

4. Eurton supplies and repairs electric motors. Eurton is a small business with under 30 employees.

5. Eurton has been in business for over 35 years.

6. Based on the foregoing, if called upon as a witness, I could and would competently testify as to all of the matters stated herein.

7. As part of its business, Eurton would obtain fax information for potential customers. Eurton engaged a company called WestFax to mount an advertising campaign via fax to a list of recipients that Eurton supplied.

8. This list included Plaintiff Tech Instrumentation Inc. ("Tech") and over 1,000 other individuals/businesses.

9. Plaintiff filed its Complaint on December 6, 2016. Within the four years prior to filing of Plaintiff's complaint, Westfax was the only provider Eurton used to send faxes.

10. Eurton does not have a record of the faxes sent by Westfax to class members.

**How Eurton obtains permission to fax**

11. Eurton's primary practice to obtain fax numbers has been described as a three-step process.

12. First, Eurton would locate businesses online that might use motors in their operations.

13. Second, Eurton would then cold-call those businesses, explain our rebuilding and rewinding services, and ask whether the business would be interested in receiving more information.

14. Third, the company policy was to then ask the businesses if they agreed to receive more information, including by fax.

15. In addition to the 3 Step Process (above), there other ways Eurton would obtain consent, as described further below.

16. It was also a matter of company policy that Eurton would remove anyone when "mistakes" occurred. However, these removals were few and far in between. I do not have a record of the plaintiff, Tech Instrumentation, asking to be removed. To my knowledge, plaintiff, Tech Instrumentation never requested to be removed from the list.

17. Prior to deposition I did a cursory search for "opt outs." I only located two opt outs. However, an opt-out does not necessarily mean there was not initial permission to fax, only that the recipient no longer desired faxes.

**Class list**

18. Plaintiff's class was certified on May 29, 2018.

19. I am informed that the Court required notice be sent to the following the following persons or entities:

(i) those listed on Eurton's 2017 fax logs. "Fax logs" were referred to by Defendant in its Opposition to Plaintiff's Motion for Approval of Plaintiff's Proposed Class For Disseminating Notice to the Class (ECF 66) and were set forth at Exhibit 3 (ECF 66-1 at pgs 7-69).

(ii) those listed on any existing iteration of Eurton's "fax list"; and

(iii) those who do not meet either of the first two criteria, but who are noted as having a fax number in either Eurton's accounting database or on its potential customer/actual customer spreadsheet.

20. With respect to Eurton's fax list (item ii), Eurton previously produced a fax list in discovery as EE001-33. See Exhibit 1. That list represents 1,498 fax numbers. However, 252 of those numbers are numbers that were not able to be faxed, because many of the list recipients are no longer in business, and/or the numbers were no longer in existence. That these companies/numbers were no longer in business or these fax numbers did not work was determined by Eurton after the lawsuit was filed.

21. With respect to persons in Eurton's database that do not overlap with the fax list (item iii), Eurton has identified 2,738 phone numbers. This was produced as EE2363. See Ex. 2.

22. Eurton did not have any 2017 fax logs other than post-lawsuit fax attempts to verify company information associated with the fax numbers on the list because the list in question was just numbers with no other information. Those faxes were made to verify prior express permission or invitation to fax the persons under (ii) and (iii), so those persons are subsumed in EE001-33 ("Initial List") and EE2363 ("Supplemental List"). Those logs were produced as EE0039-1285.

23. The potential customer/actual customer spreadsheet referenced at the deposition of

Eurton was "Tools List for Mailer 5-2009", but those numbers are already included in EE001-33. This list does contain 841(56%) of the list recipients from the list in question with previously contacted names and fax numbers from 2009.

24. A true and correct copy of this Tool List is set forth as Exhibit 3.

25. The Tool List for Mailer 5-2009 was Eurton's mailing list for potential and current customers at that time (2009). This collection was independent and not part of our customer database. The list was assembled for mailing, but as Eurton added contact names, fax numbers, and permissions, the fax numbers were put on the fax list in question and represent the majority of the list recipients.

26. The fax numbers on the Tool List would have been added if the fax number was provided via the three-step process described above, or if the fax number was provided as customers contacted Eurton, via, requests, credit application, customer update information form, or data quote form.

27. The fax numbers and other contact information in the Tool List would have been added in the regular course of Eurton's business by Eurton employees near or at the time the contact information was provided.

28. The 841 of the 1,523 entities on the Tools List for Mailer 5-2009 are associated with fax numbers. The remaining 682 had not been updated with fax numbers and were not faxed. Those 841 (56%) contacts were in the Initial List, and therefore the confirmation of consent to fax those individuals via the Tools List predates this lawsuit.

29. The Tools List for Mailer 5-2009 is a large but not exclusive source of the fax list numbers produced as EE001-33 used to create the Initial List.

30. With respect to persons in Eurton's database that do not overlap with the Initial List, Eurton identified 2,378 individuals.

31. Eurton produced a Supplemental class list ("Supplemental List") relating to the names, addresses, and fax numbers for these individuals as EE2363. A true and correct copy of

EE2363 is attached hereto as Exhibit 2.

32. Eurton asserts it was extremely unlikely the 2,378 persons in Eurton's database that do not overlap with the Initial List were ever faxed.

33. The Initial List was primarily based on the Tools List for Mailing 5-2009, and the Tool List in question was generally Eurton's running record of persons actually faxed.

34. Just because Eurton possessed names, address, telephone numbers, fax numbers in the database did not mean they were faxed.  For the same reason, not everyone in the database was mailed or called on the phone.  It was simply a database.  The fact that the Initial List does not wholly overlap with the database bears this out.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of October 2021, at Whittier, CA.

_____
John Buchanan