## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:16-cv- 02981

TECH INSTRUMENTATION, INC., a Colorado corporation, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

EURTON ELECTRIC COMPANY, INC., a California corporation

        Defendant.

## PLAINTIFF'S REPLY IN SUPPORT OF
## NOTICE RE PLAN TO ASCERTAIN CLASS MEMBERS

### I. INTRODUCTION

Defendant Eurton Electric Co. Inc.'s ("Defendant" or "Eurton") Response to Plaintiff's Plan to Ascertain Class Members (dkt. 108) is its latest attempt to convince this Court to decertify the Class. As with its prior attempts, Eurton's pleas should once again be rejected. As explained further below, the Court should reject Eurton's arguments and approve Plaintiff's plan to ascertain Class members.

### II. ARGUMENT

As an initial matter, Eurton again argues that the Court should follow the Sixth Circuit's *Sandusky* case. ("The Court should follow Sandusky and reject Plaintiff's plan to identify class

members and decertify the class") (Dkt. 108 at 2.) However, the Court has already addressed this argument in its Order denying Eurton's Motion to Decertify and sided with the Seventh Circuit in *Mullins*. Specifically, the Court stated that it "finds that the *Mullins'* [Court's] thorough and carefully-reasoned approach reflects the more appropriate reading of Rule 23's requirements" and held that "this Court believes that the appropriate ascertainability requirement is a limited one". (Dkt. 102 at 19, 20.)

Moreover, there are no "insoluble" problems with Plaintiff's plan to ascertan Class members, as Eurton contends. As explained in Plaintiff's brief setting forth its plan for ascertaining Class members, given the reality that Eurton failed to maintain business records sufficient to identify Class members who received one of its fax advertisements, the Court should permit Class members to self-identify. "There is nothing particularly new in the underlying theory. It is not in its ultimate purpose different than allowing a plaintiff in an overtime case from testifying from memory or his own records where the defendant allegedly kept no records. Any other rule, the Supreme Court has said, would enable the wrongdoer to profit by his wrongdoing at the expense of his victim." *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007, n.7, (N.D. Ill. 2017) (quoting *J. Truett Payne Co., Inc. v. Chrysler Motors Corp.*, 451 U.S. 557, 101 S.Ct. 1923, 68 L.Ed.2d 442 (1981)).

Simply put, the Court should permit Class members to self-identify in this case.

**A.    Eurton's Arguments Regarding Notice Are Not a Barrier to Continued Certification**

Eurton first contends that "Plaintiff's class is 'seriously overbroad'," because Eurton self-servingly "asserts that it was extremely unlikely the 2,378 persons in Eurton's database that do not overlap with the Initial List were ever faxed" and asks the Court to exclude such persons from class membership. (Dkt. 108 at 4-5.)

The Class members Eurton now asks the Court to exclude are the Class members who appeared on the Supplemental List Eurton produced in February 2020, which necessitated Plaintiff's Unopposed Motion for Leave to Disseminate Second Round of Class Notice. (Dkt. 86.) In other words, Eurton (1) provided a Supplemental List of Class members which featured over 2,000 new persons in addition to the persons whose fax numbers appeared on the Fax List (which was the list to whom notice was initially disseminated), (2) agreed with Plaintiff that a second round of notice should be disseminated to those appearing on the Supplemental List, and (3) now—after that second round of notice has been disseminated at Plaintiff's expense—argues that the Class should be decertified because the Supplement List causes it to be overbroad.

Eurton's gamesmanship aside, none of its arguments necessitate the exclusion of the persons appearing on the Supplemental List. Eurton offers no evidence that would warrant such persons to be excluded at this stage. Rather, it self-servingly "asserts that it was extremely unlikely the 2,378 persons in Eurton's database that do not overlap with the Initial List were ever faxed" and claims that "just because Eurton possessed names, addresses, telephone numbers, and fax numbers in the database did not mean they were faxed". (Dkt. 108 at 3.) None of this is a reason to exclude those on the Supplemental List. Such persons have received direct notice of this lawsuit and advised of their legal rights to remain a part of those Class. Those who have chosen to do so (the vast, vast majority of those who received notice) should have the opportunity to self-identify at the appropriate time as someone who received one of Eurton's fax advertisements during the relevant time period. If Eurton has evidence to refute that person's membership, it will be able to raise that evidence then. But at this stage, before Class members have had an opportunity to self-identify, there is no justification for excluding those on the Supplemental List simply because Eurton now states no one on the Supplemental List received a

3

fax. The Class Members who were part of the second round of notice should have an opportunity to say otherwise.

**B.      The Age of the Lawsuit is Not a Barrier**

For its next argument, Eurton contends that Plaintiff's self-identification plan fails because of the age of the lawsuit. (Dkt. 108 at 4.) This argument is spurious. Eurton has spent the last year-and-a-half delaying this case. First by providing, at the eleventh hour, its Supplemental List of Class members, which necessitated a second round of notice (the same List that it now claims contains no one who received a fax), then by moving to decertify on September 30, 2020. Later, when the Court rejected its Motion to Decertify, the Court advised the Parties that "it is time for this already-aged case to proceed to trial". Rather than prepare for trial, Eurton filed a Motion to Reconsider the denial of its Motion to Decertify. Now, having delayed the case indefinitely while its motion to reconsider is pending, Eurton claims the case is too old for Plaintiff's self-identification plan to be reliable. Such tactics cannot stand.

Nothing about the age of this case prevents self-identification. As the Mullins Court stated:

> Why are affidavits from putative class members deemed *insufficient as a matter of law* to satisfy this burden? In other words, no one disputes that the plaintiff carries the burden; the decisive question is whether certain evidence is sufficient to meet it. Cf. *Carrera,* 2014 WL 3887938, at *1 (Ambro, J., dissenting from denial of rehearing en banc) ("Even if ... the ability to identify class members is a set piece for Rule 23 to work, how far we go in requiring plaintiffs to prove that ability at the outset is exceptionally important and requires a delicate balancing of interests.").
>
> If not disputed, self-serving affidavits can support a defendant's motion for summary judgment, for example, and defendants surely will be entitled to a fair opportunity to challenge self-serving affidavits from plaintiffs. We are aware of only one type of case in American law where the testimony of one witness is legally insufficient to prove a fact. See U.S. Const., Art. III, § 3, cl. 1 ("No person shall be convicted of treason unless on the testimony of two witnesses to the same overt act, or on confession in open court."). There is no good reason to extend that rule to consumer class actions.

4

> **Given the significant harm caused by immunizing corporate misconduct, we believe a district judge has discretion to allow class members to identify themselves with their own testimony and to establish mechanisms to test those affidavits as needed.**

*Mullins v. Direct Digital, LLC*, 795 F.3d 654, 668–69 (7th Cir. 2015). The Court should do so here. If Eurton has a good faith basis for challenging an affidavit after it's submitted, it may ask the Court for permission to do so. But there is nothing about the age of this case that would cause Class member affidavits to be inherently unreliable.[1]

### C.     The Amount at Issue Poses No Problems

Next, Eurton suggests that the $500-$1,500 statutory damages available would "likely cause some Class members to mispresent receiving a fax". (Dkt. 108 at 6.) In other words, Eurton suggests that Class members would be willing to lie in sworn affidavits to receive $500. This speculative argument fails. As the *Physicians Healthsource* Court stated "[i]t is not in its ultimate purpose different than allowing a plaintiff in an overtime case from testifying from memory or his own records where the defendant allegedly kept no records. Any other rule, the Supreme Court has said, would enable the wrongdoer to profit by his wrongdoing at the expense of his victim." *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007, n.7, (N.D. Ill. 2017).

Thus, a Plaintiff in an overtime case is permitted to testify from memory in the absence of business records, but Eurton would have the Court believe that an affidavit submitted by a Class member is inherently unreliable testimony because, in Eurton's mind, Class members will

---

[1] It is not lost on Plaintiff that Eurton submits a declaration from John Buchanan as the basis for its argument that no one on the Supplemental List would have received a fax during the relevant time period. So apparently Eurton believes its own declarations about events that occurred months and years ago should be taken at face value, but on the other hand contends that declarations from Class members are not reliable.

5

lie to a federal court in order to receive $500. Such a contention is frivolous and should be rejected. Once again, Eurton may request the right to provide contrary evidence to any affidavit submitted. At the end of the day, if Eurton is concerned about the veracity of affidavits, it is a concern of its own making—if it had kept proper business records, it would be easy for Eurton (and the Court) to identify exactly who received one or more of its fax advertisements without the need for affidavits. Eurton should not be permitted to have it both ways: fail to maintain business records sufficient to identify Class members without the need for Class member affidavits, then reject the notion that Class members can self-identify in light of the missing records.

**D.     Article III Standing is Satisfied**

Eurton next pivots to arguing that Plaintiff's plan does not address Article III standing. Fortunately for the Class, receipt of an unlawful fax advertisement gives rise to a concrete injury-in-fact sufficient for Article III standing. As one Court put it, "[n]umerous courts have concluded that an injury-in-fact arises from the wasted time that a junk fax recipient spends reviewing an unsolicited fax and the use of paper and ink toner in printing the fax advertisements. *Gorss Motels Inc. v. Sprint Communications Company, L.P.*, 2020 WL 818970 (D. Conn. February 19, 2020) (citing *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019); *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prod., Inc.*, 2018 WL 733216, at *5 (E.D. La. 2018) (collecting cases).

Thus, by establishing via affidavit that they received a junk fax from Eurton, Class Members are establishing standing at the same time.

**E.     The Claims Process**

6

For its final argument, Eurton argues that, at the very least, Class members should be required to submit documents in addition to an affidavit. Such a burden on the Class should not be necessary. As explained above, the *Mullins* Court concluded affidavits should be sufficient, of course with the caveat that the defendant will have the opportunity to challenge such affidavits if it has a good faith basis for doing so. The Court should do the same here: permit Class members to self-identify via affidavit, but "establish mechanisms to test those affidavits as needed". If Eurton can credibly challenge any affidavit submitted, it can request permission from the Court to do so. But there is no reason to add additional burdens to Class members on the front end.

    *    *    *    *    *    *

Dated: November 15, 2021    Respectfully submitted,

            **TECH INSTRUMENTATION INC.**, individually
            and on behalf of all others similarly situated,


            By: /s/ Patrick H. Peluso
            One of Plaintiff's Attorneys

            Steven L. Woodrow
            swoodrow@woodrowpeluso.com
            Patrick H. Peluso
            ppeluso@woodrowpeluso.com
            Woodrow & Peluso, LLC
            3900 East Mexico Ave., Suite 300
            Denver, Colorado 80210
            Telephone: (720) 213-0675
            Facsimile: (303) 927-0809

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF system on this 15th day of November, 2021 to all counsel of record.

/s/ Patrick H. Peluso