**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:16-cv- 02981

TECH INSTRUMENTATION, INC., a Colorado corporation, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

EURTON ELECTRIC COMPANY, INC., a California corporation

        Defendant.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Defendant Eurton Electric Company, Inc.'s ("Defendant" or "Eurton") Opposition to Plaintiff's Motion for Summary Judgment misstates the law and relies largely on evidence that it failed to produce during discovery. The sole issue remaining in the case is whether Eurton obtained prior express permission or invitation to send the faxes at issue. As explained below and previously in Plaintiff's Motion for Summary Judgment, Eurton—which carries the burden of proof on this issue— has <u>no</u> admissible proof that if obtained proper prior express permission or invitation from anyone, and Plaintiff asks the Court to grant summary judgment in favor of itself and the Class.

As explained in Plaintiff's Motion and below, there are no genuine disputes of material fact and judgment should be entered against Eurton and in favor of Plaintiff and the Class.

## II. ARGUMENT

### A. Eurton Waived the Right To Rely On the Evidence it Sets Forth in its Opposition

As Plaintiff explained in its Response to Defendant's Motion to Reconsider and in its Motion for Summary Judgment, Eurton relies heavily on evidence regarding supposed prior express permission or invitation that it failed to produce during discovery. As the Court stated in its Order denying Eurton's Motion to Decertify:

> Eurton had an opportunity to present all of its arguments against certification, based on all of the information that was known to it at the time in 2018. The judicial system depends on parties to identify and raise their strongest arguments at the time an issue is first being considered. To allow parties to constantly revise and refine their arguments over time, presenting and re-presenting them to the court successively until they succeed, is wasteful of the parties' and the court's limited resources and a fundamental violation of Fed. R. Civ. P. 1. Thus, requiring a request for reconsideration to be based on a change in meaningful circumstances, not just a request to re-argue a matter already considered by the court, is a sound practice.
>
> The Court finds that Eurton's motion raises no facts or arguments that are both relevant and newly-occurring since 2018. Eurton is not alleging that it did not previously have access to the Application For Credit or Customer Information Update forms it now presents at the time this Court was considering the class certification question in 2018. By all appearances, those forms have been in Eurton's possession since before this litigation began. Indeed, it is essential that the forms existed prior to Eurton's commencement of the fax advertising campaign. For Eurton's defense that the faxes were "solicited" to succeed, it is necessary that the recipients gave their consent to receive fax ads before Eurton began sending them. Thus, it is undisputed that Eurton could have raised the existence of the Application For Credit or Customer Information Update forms at the time the Court was initially considering class certification in 2018. Eurton offers no explanation for why it did not do so at that time. Moreover, as discussed more fully below, the existence of those forms is irrelevant to the Court's class certification analysis in any event.

(Dkt. 102 at 8-9.) Thus, while Eurton relies on such documents to oppose summary judgment, the Court has already ruled that the evidence giving rise to its arguments was raised years too late.

When a party fails to disclose information during discovery, "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Rule 37(c)(1) sanctions have been described as a self-executing, automatic sanction to provide a strong inducement for disclosure of material." *Bonzani v. Shinseki*, No. 2:11-cv-0007-EFB, 2014 WL 66529, at *3 (E.D. Cal. Jan. 8, 2014). "The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." R&R Sails, Inc. v. Ins. Co. of Pa., 673 F.3d 1240, 1246 (9th Cir. 2012).

Defendant does not dispute that discovery closed on January 4, 2019, or that it did not produce the documents relating to its defenses until February 2020, June 2020, and July 2020. (*See* Dkt. 109 at 5.) Rather, it simply contends that there was no "bad faith" in producing the documents over a year after the discovery cutoff [1] and blames Plaintiff for not moving to re-open discovery. Such arguments fail.

As one court faced with an analogous situation put it:

> It is apparently undisputed that defendant failed to disclose the patient account records on which it now bases its opposition to the summary judgment motion during discovery. As noted, non-expert discovery in this action closed on November 6, 2016. (Doc. No. 46 at 3.) Defendant's counsel declares she produced

---

[1] Eurton blames its prior counsel for the late disclosure, stating that the documents were "produced once Eurton was made aware of their utility after a change in counsel." Perhaps they were not produced earlier because prior counsel was aware that the documents were of no utility since, as Plaintiff explained in its Motion for Summary Judgment, they do not evidence prior express permission or invitation to send fax advertisements even if they are considered. Either way, and regardless of the reason, they were not produced until over a year after discovery closed.

3

these documents to plaintiff on January 8, 2017, two months after the close of discovery. (Doc. No. 71–2 at ¶ 13.) Therefore, these records, and the statements of the declarants based on them, are admissible only if defendant's failure to disclose them was "substantially justified or is harmless." However, this evidence is also the sole evidence before the court supporting defendant's opposition, its affirmative defenses, and its counterclaim. Therefore, the court's refusal to consider this evidence is tantamount to a dismissal of defendant's counterclaim and its affirmative defenses.

As previously stated, defendant knew from the outset of the case that an analysis of the patient billing records would be crucial both to its anticipated defense to plaintiff's claim and in support of its own counterclaim. . . . Nevertheless, defendant still failed either to timely produce the discovery it now seeks to rely upon or to make additional timely requests to extend the discovery deadlines.

Nor can it be said that defendant's failure to disclose harmless here. Defendant asserts its failure to disclose "has not permanently denied [plaintiff] the ability to obtain and utilize relevant evidence. Nor has it prevented [plaintiff] from filing a dispositive motion." (Doc. No. 71 at 15– 16.) However, the *permanent* denial of plaintiff's ability to obtain the new evidence is not the sole measure of harm. Indeed, if discovery is re–opened in this action, plaintiff's summary judgment motion will effectively have been prevented and both its time and the court's time will have been wasted. More importantly, defendant's failure to produce discovery has unreasonably delayed resolution of plaintiff's claim, pursuant to which it sought payment for admittedly unpaid invoices for work it performed a mounting number of years ago. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1236 (9th Cir. 2006) ("Prejudice from unreasonable delay is presumed."). . . .*see also Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997) (finding prejudice where plaintiffs failed to disclose documents until after discovery, "therefore depriv[ing defendants] of any meaningful opportunity to follow up on that information, or to incorporate it into their litigation strategy").

. . . As far as the court is concerned, these were not "good faith" productions, but rather a very belated production of documents that should have been disclosed to plaintiff many months earlier.

Given the above, the court concludes defendant has acted in bad faith here. Defendant both failed to produce obviously necessary documents in discovery and failed to seek extensions of time in which to do so. This occurred despite defendant knowing the billing records would be relevant to plaintiff's claim and its counterclaim since the very beginning of the case. Further, defendant has acted with conscious regard—or disregard—of the discovery and other deadlines in this case throughout its pendency. . . . This is not a case of mistake, inadvertence, or even negligence. The failure to disclose here was both willful and in bad faith.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

> In sum, defendant has failed to comply with its discovery obligations. It has not been diligent in producing the documents it was required to produce, and has not provided a persuasive justification for its lack of diligence. This bad faith failure to produce documents harmed plaintiff. Lesser evidentiary sanctions than barring consideration of this late-disclosed evidence would be ineffective here, and are therefore unwarranted. **The court will not consider the documentary evidence of the four patient accounts supplied by defendant in considering whether summary judgment in favor of plaintiff is warranted here.**

*Firstsource Solutions USA, LLC v. Tulare Regional Medical Ctr.*, 2018 WL 2949853, at *6-7 (E.D. Cal. June 13, 2018).

The situation in this case is analogous to the *Firstsource* case, except for the fact that Eurton's conduct was even more egregious (producing documents over a year after discovery closed, not two months after as in *Firstsource*). Permitting Eurton to rely on documents to defeat summary judgment that were not produced until June and July 2020 when discovery closed in January 2019 and opened in March 2017 makes a mockery of the discovery process. The Court, like the *Firstsource* Court, should decline to consider the documentary evidence presented by Eurton. As a result, summary judgment should be granted in favor of Plaintiff and the Class for this reason alone.

**B.     Plaintiff Has Separately Presented a Plan to Ascertain Who Received a Fax**

For its first "merits-based" argument, Eurton claims that Plaintiff is not entitled to summary judgment because it has not "demonstrate[d] who was sent a fax". This is the subject of Plaintiff's Plan to Ascertain Class Members (Dkt. 106.) To avoid duplicative briefing, Plaintiff respectfully refers the Court to that brief and to the reply brief filed in support. (dkt. 110.) However, to summarize, Plaintiff proposes that, given Eurton's complete failure to maintain proper business records, Class Members should be permitted to self-identify via affidavit. There is nothing about that proposal or that process that would cause Plaintiff and the Class to lose on

5

summary judgment. As the *Birchmeier* Court explained, "a court need not ascertain 'absent class members' actual identities ... before a class can be certified... rather, it is enough that the class be ascertain*able*'... **with class members to be identified during a claims administration process if the class prevails.**'" *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 245 (N.D. Ill. 2014) (emphasis added.) Thus, the self-identification process can occur after a decision on the merits is rendered. Eurton's argument against summary judgment puts the cart before the horse and should be rejected.

C.     **Eurton is Not Entitled to Trial on its Defense of Prior Express Invitation or Permission**

Next, Eurton contends that its "evidence" of consent prevents classwide summary judgment. (Dkt. 109 at 9-17.) As explained above, this "evidence" should be deemed waived and not considered. However, even if it's considered, summary judgment is still warranted in Plaintiff's favor.

First, Eurton contends in its Opposition that its oral testimony at trial could establish prior express permission or invitation. (Dkt. 109 at 10-12.) In reality, the oral testimony already the record demonstrates that a trial is not necessary. Eurton's corporate designee testified at the Rule 30(b)(6) deposition that Eurton failed to make any oral or written record of any conversations where consent was supposedly obtained. (Eurton Depo. Tr. 57:17-20.) Hence, Eurton has no evidence that TII (or anyone else for that matter) actually gave prior express permission or invitation to be faxed. (Eurton Depo. Tr. 65:20-25 - 66:1-10.) Additionally, Eurton's corporate designee testified:

> Q. But we have already established that you have no evidence that any fax sent to my client was solicited; correct?
>
> A. No.

> Q. You do have evidence?
>
> A. I'm sorry. Evidence, no. No evidence. You're right.

(Eurton Depo. Tr. 65:18-25; 56:4-17.) Indeed, Eurton lacks *any* evidence of consent for anyone:

> Q. [D]o you now make sure you have a record of someone giving consent before they go on the fax list or do you still sort of put them on and take them off?
>
> ...
>
> THE WITNESS: Yes. I wasn't aware that I had to until this, and now we are doing it, yeah.

(Eurton Depo. Tr. 139:5-15; *see also* 65:20-25 - 66:1-10.) Rather than keep any records of consent, Eurton simply presumed it obtained consent because of its supposed policy to call ahead and ask for such permission. (Eurton Depo. Tr. 66:12-25 - 67:1-25; 76:6-10.) To be clear, however, Eurton failed to maintain *any* records of prior express permission or invitation from its fax recipients. Eurton Depo. Tr. 139:5-15; *see also* 65:20-25 - 66:1-10. It therefore cannot establish its burden. The oral testimony that's already on the record in this case establishes as much. Mr. Buchanan's (the designee) late-submitted declarations that seek to change this testimony for purposes of defeating summary judgment or attempting to decertify the class should not be considered by the Court. His testimony at the deposition that Eurton has no evidence of consent is his testimony. He is not permitted to change his testimony years later via declaration.

In addition to its argument regarding oral testimony, Eurton relies on the same (recently-developed) theories of consent that it presented in its Motion to Decertify and in its Motion for Reconsideration. As Plaintiff has explained in response to each of those Motions and in its Motion for Summary Judgment, none of the supposed methods of obtaining prior express invitation or permission to receive fax advertisements is legally sufficient. This is of course

7

assuming the Court even reviews the arguments and supposed evidence, which, as explained above, it should not.  Simply put, Eurton has no evidence that it had proper prior express permission or invitation from anyone, and summary judgment should be granted in favor of Plaintiff and the Class.

**C.      The Class Enjoys Standing**

Next, Eurton pivots to arguing that Plaintiff has not established that the Class has standing. This argument, like the rest, fails.

"Article III of the United States Constitution limits the power of the courts to the resolution of actual 'Cases' and 'Controversies'." *Ass'n of Pub. Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939, 969 (9th Cir. 2013). "The irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The first element—and the one at issue here—is that Plaintiff must have suffered "an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

Receipt of an unsolicited fax advertisement clearly satisfies the test. As one court has explained:

> At least some of the particularized harm alleged in Plaintiff's Complaint—loss of toner and paper and the unwanted temporary occupation of Plaintiff's fax machine and telephone line—is tangible in nature. Such tangible harm, as *Palm Beach* leaves clear, is sufficient for standing purposes, even if *de minimis*. *See Prindle v. Carrington Mortg. Servs., LLC*, No. 3:13–CV–1349–J–34PDB, 2016 WL 4369424, at *9 n.11 (M.D. Fla. Aug. 16, 2016) ("Through the TCPA, Congress elevated a tangible, albeit *de minimis*, injury [of the unauthorized occupation of one's fax machine] to the status of a legally cognizable injury."); *see also Fauley v. Drug Depot, Inc*., No. 15 C 10735, —— F.Supp.3d ——, ——, 2016 WL 4591831, at *3 (N.D. Ill. Aug. 31, 2016) (observing that "*de minim[i]s* harm arguments do not

8

undermine Article III standing" and concluding that the loss of toner and paper is "sufficiently 'real' to meet the concreteness requirement under *Spokeo*").

Second, the injuries alleged in Plaintiff's Complaint are not mere "procedural" statutory violations; rather, they are precisely the kinds of harm the TCPA aims to prevent. *See Palm Beach*, 781 F.3d at 1252 (observing that the occupation of one's "fax machine is among the injuries intended to be prevented by the [TCPA]"); *see also* H.R. REP. 102–317, 10 ("[Fax] telemarketing is problematic for two reasons. First, it shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax."). The violation of a statutorily-protected substantive right, in turn, causes "real" harm, as opposed to harm that is "hypothetical" or "uncertain."[4] *Church v. Accretive Health, Inc.*, No. 15–15708, 654 Fed.Appx. 990, —— & n.3, 2016 WL 3611543, at *3 & n.3 (11th Cir. July 6, 2016) (per curiam) (not receiving information to which one is statutorily entitled is a "concrete" injury); *cf. Guarisma v. Microsoft Corp.*, No. 15–24326–CIV, —— F.Supp.3d ——, ——, 2016 WL 4017196, at *4 (S.D. Fla. July 26, 2016) (plaintiff whose sales receipt showed more than last five credit-card digits alleged a concrete harm under the Fair and Accurate Credit Transactions Act (FACTA) since, "in enacting the FACTA, Congress created a substantive right for consumers to have their personal credit card information truncated on printed receipts," not merely a "procedural requirement for credit card-using companies to follow").

*JWD Auto., Inc. v. DJM Advisory Grp. LLC*, No. 215CV793FTM29MRM, 2016 WL 6835986, at *3 (M.D. Fla. Nov. 21, 2016) (emphasis in original).

Hence, TCPA plaintiffs who received unsolicited faxes enjoy Article III standing. To the extent that Eurton's argument is that Plaintiff has not yet identified exactly who received the faxes, this is the subject of Plaintiff's Plan to Ascertain Class Members (dkt. 106). Eurton's failure to maintain business records cannot defeat certification and Class Members can self-identify. Each person who self-identifies has, by definition, established standing because he, she, or it has established the receipt of an unsolicited fax.

**D.     The Court Has Already Determined That Eurton's EBR Defense Fails**

9

Finally, Eurton contends that it is entitled to a trial on its EBR defense. However, the Court has already determined that the defense fails. "It is not clear whether Tech had a pre-existing business relationship with Eurton at the time. But Tech's complaint makes clear that Eurton's faxed advertisements did not contain a complete notice of the recipient's ability to opt-out, as is required in order for Eurton to invoke the "existing business relationship" exception. 47 U.S.C. § 277(b)(1)(C)(iii)." (Dkt. 102 at 5, n.4.) This is undoubtedly the case.

Eurton pleads a defense that it had consent to send the faxes by virtue of it having an established business relationship with certain Class members and that it received the fax numbers from such class members by virtue of that relationship. *Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, 106 F. Supp. 3d 9, 15–16 (D.D.C. 2015) ("The TCPA exempts from liability 'unsolicited advertisements' sent to recipients with whom the sender has an 'an established business relationship.'") 47 U.S.C. § 227(b)(1)(C)(i).[2] This does not end the inquiry though:

> Merely demonstrating an "established business relationship" between the sender and recipient, however, is insufficient to come within the safe harbor. To qualify, a facsimile also must contain a "notice," 47 U.S.C. § 227(b)(1)(C)(iii), that includes certain statutorily required elements, *id.* at § 227(b)(2)(D). Those elements include a specific written disclosure "that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements ... *and* that failure to comply, within the shortest reasonable time, as determined by the [FCC], ... is unlawful." *Id.* at § 227(b)(2)(D)(ii) (emphasis added). The FCC has issued rules that define "shortest reasonable time" as 30 days and provide that "failure to comply [with a request to opt out], within 30 days ... is unlawful." 47 C.F.R. § 64.1200(a)(4)(iii)(B); *see also City Select Auto Sales, Inc. v. David/Randall Assocs., Inc.,* Civ. Action No. 11–2658, 96 F.Supp.3d 403, 418, 2015 WL 1421539, at *11 (D.N.J. Mar. 27, 2015) ("[T]he advertisement ... must

---

[2] An "established business relationship" is "a prior or existing relationship formed by a voluntary two-way communication ... on the basis of an inquiry, application, purchase or transaction ... regarding products or services ..., which ... has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(6).

10

state that the sender's failure to comply with a request or removal within 30 days violates applicable law[.]").

*Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, 106 F. Supp. 3d 9, 15–16 (D.D.C. 2015); *Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 67 F. Supp. 3d 874, 885 (N.D. Ill. 2014).

As the D.C. Circuit has explained:

> The Act contains an exception that allows certain unsolicited fax advertisements. The statute permits unsolicited fax advertisements where (1) "the unsolicited advertisement is from a sender with an established business relationship with the recipient"; (2) the sender obtained the recipient's fax number through "voluntary communication" with the recipient or "the recipient voluntarily agreed to make" his information available in "a directory, advertisement, or site on the Internet"; **and (3) the unsolicited advertisement "contains a notice meeting the requirements under paragraph (2)(D)."** Id. § 227(b)(1)(C)(i)-(iii). Paragraph (2)(D), in turn, provides, among other things, that the notice must be "clear and conspicuous" and "on the first page of the unsolicited advertisement," must state that the recipient may opt out from "future unsolicited advertisements," and must include a "cost-free mechanism" to send an opt-out request "to the sender of the unsolicited advertisement." Id. § 227(b)(2)(D).

*Bais Yaakov of Spring Valley, et al. v. FCC*, No. 14-1234 (D.C. Cir. Mar. 31, 2017) (emphasis added).

Applied here, the opt-out language on Eurton's faxes fails to satisfy the statute's requirements—specifically, the requirement that the opt-out language contain a notice that failure to comply with an opt-out request within 30 days is unlawful. *See City Select Auto Sales, Inc.,* Civ. Action No. 11–2658, 96 F.Supp.3d at 418, 2015 WL 1421539, at *11 (D.N.J. Mar. 27, 2015) ("[T]he advertisement ... must state that the sender's failure to comply with a request for removal within 30 days violates applicable law[.]").

Consequently, Eurton cannot avoid liability by pointing to an EBR. The EBR exception is not triggered unless all three components of the exception are met, and one of those is a

11

sufficient opt-out notice, which Eurton does not have. Without a sufficient opt-out notice, Eurton's EBR defense fails as a matter of law.

## V. CONCLUSION

Plaintiff's Motion for Summary Judgment should be granted. Eurton simply cannot carry its burden on prior express invitation or permission and the "evidence" it presents in an attempt to do so is inadmissible in any case because it was produced over a year after discovery closed. Accordingly, the Court should grant summary judgment in favor of Plaintiff and the Class and award any such relief as it deems necessary and just.

     *   *   *   *   *   *

Dated: November 15, 2021   Respectfully submitted,

             **TECH INSTRUMENTATION INC.**, individually and on behalf of all others similarly situated,


             By: /s/ Patrick H. Peluso
             One of Plaintiff's Attorneys

             Steven L. Woodrow
             swoodrow@woodrowpeluso.com
             Patrick H. Peluso
             ppeluso@woodrowpeluso.com
             Woodrow & Peluso, LLC
             3900 East Mexico Ave., Suite 300
             Denver, Colorado 80210
             Telephone: (720) 213-0675
             Facsimile: (303) 927-0809

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF system on this 15th day of November, 2021 to all counsel of record.

/s/ Patrick H. Peluso
