IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:16-cv-02981

TECH INSTRUMENTATION, INC., a Colorado corporation, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

EURTON ELECTRIC COMPANY, INC., a California corporation

        Defendant.

**PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

        Plaintiff Tech Instrumentation, Inc. ("Plaintiff" or "TII"), individually and on behalf of a class of similarly-situated individuals, moves the Court, pursuant to Federal Rule of Civil Procedure 23, for an Order granting preliminary approval of the proposed class action Settlement Agreement agreed to by the parties and, in support, states as follows:

        1.      Plaintiff brought this alleged class action lawsuit against Defendant Eurton Electric Company, Inc. ("Defendant" or "Eurton") challenging certain facsimile advertisements that Plaintiff alleges Defendant sent to it and others in violation of the Telephone Consumer Protection Act ("TCPA" or "Act"), 47 U.S.C. § 227, *et seq*.

        2.      TII alleges that Eurton violated the TCPA by faxing it and others without prior express permission or invitation, in violation of the TCPA.

        3.      Eurton denies that it faxed TII or anyone else without first obtaining prior express

permission, and has raised other defenses, including challenges to continued class certification.

4. Notwithstanding their disagreements as to the underlying merits of their respective claims and defenses, the parties have entered into a Settlement Agreement, subject to Court approval, that provides relief to the proposed class, including: (i) the establishment of a settlement fund of two hundred ninety-nine thousand six hundred dollars ($299,600 USD) for the payment of all approved claims, settlement administration expenses, and any incentive awards and award of attorneys' fees and for reimbursement of costs approved by the Court, and (ii) requiring that Eurton take affirmative steps to ensure that it does not fax consumers without first securing prior express permission or invitation in the future.

Thus, for the reasons set forth below, Plaintiff respectfully requests that the Court grant preliminary approval of this class action settlement.

## I.   Introduction

As stated above, this case concerns certain facsimiles that Eurton sent to TII and others. This case has been heavily litigated, including a successful motion for class certification, two rounds of class notice, discovery motions, a motion to decertify the class, motions for summary judgment, and a mediation session.

While the mediation session was successful in bringing the Parties together to discuss their respective claims and defenses, the Parties did not reach a settlement at the mediation. However, the Parties continued their negotiations through numerous telephone and email conferences over a period of many months. Following this significant back and forth, the impasse was broken and a settlement was reached. The result is a strong Settlement ("Settlement Agreement" or "Settlement," attached hereto as Exhibit A) that fairly, reasonably, and

adequately compensates the Class.

Indeed, the instant Agreement is undeniably impressive. In addition to requiring Eurton to take proactive measures to ensure that it only faxes consumers who have provided prior express permission, the Agreement creates a Settlement Fund totaling $299,600 USD from which Class Members can file claims and receive cash compensation. The process is straightforward. Class Members who file Valid Claims will be entitled to receive a check for $200. The Settlement Fund also will pay for all amounts for Notice and Settlement Administration Expenses, any incentive award to the Class Representative, and any award of reasonable attorneys' fees.

Finally, the Agreement provides Class Members with Notice of their rights to be excluded from or object to the Agreement and procedures for filing a Claim Form, which can be mailed to the Settlement Administrator or submitted electronically on the Settlement Website.

The results achieved by the Settlement—which compare favorably to settlements that have received final approval by courts around the country—demonstrate the propriety of granting preliminary approval. As such, TII respectfully moves the Court for an Order: (1) granting preliminarily approval to the Settlement Agreement, and (2) ordering that Notice be disseminated to the Settlement Class in accordance with the Settlement Agreement.

## II. The JFPA

The JFPA makes it unlawful to use a fax machine to send an unsolicited advertisement. 47 U.S.C. § 227(b)(1)(C). The term "unsolicited advertisement" means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise.

3

47 U.S.C. § 227(a)(5). An unsolicited advertisement does not violate the Act if the sender can demonstrate that "(1) the sender has an established business relationship with the recipient; (2) the sender obtained the recipient's fax number either through a voluntary communication between the two or through a public source on which the recipient voluntarily made the number available; and (3) the fax has an opt-out notice meeting the requirements of the statute." *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 494 (W.D. Mich. 2014), *as amended* (Jan. 12, 2015) (citing 47 U.S.C. § 227(b)(1)(C)).

### III.     Summary of the Plaintiff's Claims, Litigation, and Settlement Process.

Following an exchange of information regarding the scope of the case, the Parties engaged in a mediation with respected mediator, Joe Epstein of Conflict Resolution Services. The result of these efforts by the Parties' counsel and the mediator is a favorable deal that provides fair, reasonable, and adequate relief for the Settlement Class.

#### A.     The Plaintiff's Claims and The Litigation History.

As the Court is aware, this case was filed on December 6, 2016. (Dkt. 1.) Eurton Electric is a California-based business, which operates as an electric motor supply and repair company. In an effort to boost Eurton's sales and attract new customers, Eurton sent faxes to thousands of businesses advertising its tools and other equipment. Eurton didn't send the faxes itself; it hired a blast fax company in Colorado known as WestFax to perform the actual faxing. That said, Eurton knew about the faxes and controlled their content, including the opt-out language that was used, which stated:

> PLEASE REMOVE: We at Eurton Electric try our best to contact all customers on our list, but understand mistakes occur, or unauthorized permission may have been given. If you have no need for our repair or parts service, and which to be removed

4

> from future contacts, please fax, e-mail, or phone (below) and let us know the number you wish removed.

Plaintiff moved for class certification on November 6, 2017, and Defendant filed its response in opposition on November 27, 2017. (Dkts. 36, 39.) On May 29, 2018, the Court certified the Class. (Dkt. 47.)

On March 4, 2019, Plaintiff filed its motion to approve a notice plan. (Dkt. 65.) This motion was granted in part and denied in part on September 13, 2019 (Dkt. 72). On December 12, 2019, the Court granted the Parties' Joint Motion for Extension of Time to Disseminate Class Notice (Dkt. 76) and ordered that Notice be disseminated by January 30, 2020.

Thereafter, Class Counsel worked with a class action administrator to disseminate notice to the Class in accordance to the Court's September 13, 2019 Order. The website went live and the short form notices were mailed by the January 30, 2020 deadline established by the Court. As explained in detail in Plaintiff's motion for leave to disseminate a second round of notice, a (very) late production of additional class members by Eurton on February 28, 2020 necessitated a second round of notice. (*See* Dkt. 86.) The request for a second round of notice was granted on April 28, 2020 (dkt. 87), and notice was sent to the newly-disclosed Class Members by the Court's deadline.

After the second round of notice, Eurton litigated the case aggressively. Specifically, Eurton served a "Second Set of Supplemental Disclosures" and a "Third Set of Supplemental Disclosures", which provided additional angles from which Eurton could argue that certain fax recipients provided consent to receive the faxes. This formed the basis for both its Motion to Decertify and its Motion for Summary Judgment.

5

Despite the aggressive litigation of the case and a failed mediation session earlier in the case, counsel for the Parties continued to engage in settlement discussions. After much time and effort, the Parties reached an agreement in principal and thereafter worked to draft the Settlement Agreement, the Claim Form, and the notices, and work to resolve outstanding data issues.

As set forth below, the Parties' efforts and negotiations have produced settlement terms that clearly fall within the range of what this Court, or any court, would ultimately adjudicate as fair, reasonable, and adequate on final approval.

### IV. Key Terms of the Settlement

The complete terms of the Settlement are set forth in the Settlement Agreement. (Ex. A.) A brief summary follows:

#### A. Class Definition

The "Settlement Class" or "Class" is defined as "all individuals and entities who appear on Eurton's Fax List." (Settlement Agrmt. at § II.36.) Eurton has represented that there are 1,498 facsimile numbers on the Fax List, and that this is the complete universe of all persons or businesses who could have received one of Eurton's fax advertisements.

#### B. Monetary Relief

The Settlement provides Class Members who file with substantial monetary relief. Specifically, Eurton must establish a Settlement Fund of $299,600 (*Id.* at § II.39), which will be used to pay all approved claims (at $200 per claim), Settlement Administration Expenses, any Incentive Award to the Class Representative, and any Fee Award. As provided for in the settlement agreement, "95% of all funds remaining in the Settlement Fund after payment of Valid Claims, Administration Costs, Fee Award, and Incentive Award, if any, shall revert to

6

Eurton. The Parties further agree that 5% of all funds remaining in the Settlement Fund after payment of Valid Claims, Administration Costs, Fee Award, and Incentive Award, if any, shall be paid to a *cy pres* recipient approved by the Court." (*Id.* at § III.1(h)).

While the Settlement provides for a reversion of funds to the Defendant if any money remains in the Settlement Fund, this is a product of the reality of the Defendant's financial situation. Eurton is a small motor repair business; it is not Google. Nor is there anything *per se* improper about a reverter clause, especially in cases such as this where the claims rate was uncertain at the outset, *see McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 813 (E.D. Wis. 2009), and where the case does not involve the disgorgement of ill-gotten gains back to consumers. *Nabal v. BJ's Wholesale Club, Inc.*, No. 02-2604, 2002 WL 32349137 (E.D. Pa. Aug. 2, 2002). Here, this Settlement provides significant monetary relief to the Class and there is no "blow up provision" should the claims rate exceed a certain amount. To that end, courts throughout the country have approved similar settlements under the TCPA that also involved a similar reverter. *See, e.g.*, *Kramer v. Autobytel, Inc.*, No. 10-CV-2722, dkt. 121-1 (N.D. Cal. July 18, 2011). Indeed, the Tenth Circuit has approved class action settlements that feature reverters. *See Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167 (10th Cir. 2016) (approving fairness of class action settlement where "[u]nder the settlement agreement all unclaimed compensation reverts to Defendants").

### C. Prospective Relief

In addition to the $299,600 in cash relief, the Settlement Agreement also requires that Eurton adopt the following prospective measures:

> For a period of twenty-four (24) months following the Effective Date, and subject to changes in applicable law, Eurton agrees not to cause facsimile advertisements

> to be sent to facsimile machines without first obtaining the prior express permission or invitation of the recipient.

(Settlement Agrmt. § III.5.) Hence, the Settlement not only compensates Settlement Class Members for Eurton's alleged violations of the Act, it also works to ensure that they won't be bothered by additional future unsolicited faxes.

### D.  Release of Liability

In exchange for the benefits to the Class, Eurton will receive a full release of any claims relating to any facsimile advertisements made under the TCPA or any similar state statute or law. (Settlement Agrmt. § 5.) The Release includes unknown claims, which are limited to claims that could have been brought in the litigation.

### E.  Notice

The Settlement also calls for the dissemination of notice to Class Members. This includes a comprehensive plan that features direct mail and email notice as well as the establishment of a Settlement Website where Class Members can access key documents. The Notices explain the key terms of the Settlement, the process for filing claims, and the rights of Settlement Class Members to opt out/object.  The proposed notice documents are attached as Exhibit B to this motion.

Such terms are decidedly favorable to the Settlement Class, and the Court should grant preliminary approval to the instant Settlement.

## V.  The Proposed Settlement Class Should Be Approved.

The first step for a court faced with a Motion for Preliminary Approval is to certify the proposed settlement class for settlement purposes.  As the Court is aware, on May 29, 2018, following voluminous contested briefing, the Court certified a Class in this case, defined as:

8

> Any person/entity who:
>
> 1) Received a cold call from Eurton pursuant to its three-step procedure; and
> 2) Is listed in a list prepared by Eurton and supplied to WestFax; and
> 3) Received one or more faxes sent by Eurton or WestFax between December 16, 2013 through the date notice is sent to the Class.

(Dkt. 47.)

However, Eurton has represented time and again that the only people who would have received a fax from Eurton are those who appear on Eurton's fax list, which includes 1,498 persons. The Parties wish to modify the class definition for settlement purposes to include only those 1,498 persons or business. The Court should do so. *Peel v. Brooksamerica Mortg. Corp.*, No. SACV1100079JLSRNBX, 2014 WL 12589317, at *3 (C.D. Cal. Nov. 13, 2014) ("The definition of the Settlement Class differs from the definition of the class previously certified in this action. The Court must therefore consider whether to modify the class definition in this action to reflect the Settlement Class definition.")

Under the settlement, only persons who appear on the Fax List will receive notice of the settlement and have an opportunity to file claims, but they also are the only persons who will be releasing claims against Eurton. Thus, the proposed limitation will not prejudice individuals that do not appear on the Fax List.

The Court should therefore approve the settlement and grant permission to limit the scope of the settlement to the 1,498 persons or entities whose fax number appears on Eurton's Fax List.

**VII. The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate, and Thus Warrants Preliminary Approval.**

The Court may approve the settlement only "on finding that it is fair, reasonable, and

adequate." Fed. R. Civ. P. 23(e); *see also* A. Conte & H.B. Newberg, NEWBERG ON CLASS ACTIONS, §11.25, 3839 (4th ed. 2002). This process includes three steps: "(1) the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable." *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565–66 (6th Cir. 2001). A strong judicial policy exists that favors the voluntary conciliation and settlement of complex class actions. *In re Telectronics,* 137 F. Supp. 2d 985, 1008–09 (S.D. Ohio 2001).

With respect to the first step, the purpose of the preliminary hearing is often described as needing to determine whether the proposed settlement is "within the range of possible approval." Newberg, §11.25, at 3839 (quoting Manual for Complex Litigation §30.41 (3d ed. 1995)); *see also In re Packaged Ice Antitrust Litig.*, 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010) (citation omitted). The Court must "ensur[e] that the proposed settlement is not illegal or collusive" based upon the "issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009) (citation omitted).[1] Preliminary approval requires only an "initial evaluation" of the fairness of the settlement made on the basis of written submissions and

---

[1] When "determining whether preliminary approval is appropriate, the Court should evaluate . . . whether the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *In re Polyurethane Foam Antitrust Litig.*, 2012 WL 12868246, at *4 (N.D. Ohio Jan. 23, 2012).

10

informal presentations from the settling parties. Manual for Complex Litigation § 21.632 (4th ed. 2004).

In analyzing whether a settlement agreement is fair, reasonable, and adequate, courts typically look ahead to a list of factors for final approval, including: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

As explained below, the Settlement Agreement meets each consideration.

### A.     There is no risk of fraud or collusion—the instant Settlement was reached through fair and honest negotiation

The first factor weighs in favor of granting preliminary approval. In general, "'[c]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary.'" *Thacker v. Chesapeake Appalachia, L.L.C.,* 695 F.Supp.2d 521, 531 (E.D. Ky. 2010) (citation omitted). Negotiations overseen by a mediator are considered to be non-collusive. *See Bert v. AK Steel Corp.,* 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *see also Satchell v. Fed. Express Corp.,* 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007) ("The assistance of an experienced mediator . . . confirms that the settlement is non-collusive.").

This case was mediated with Joe Epstein of Conflict Resolution Services, a respected mediator in Denver. Though the mediation session was unsuccessful, it laid the groundwork for the Parties' continued negotiations over many months following further post-mediation litigation. The Parties' settlement is a result free of collusion—the negotiations always stayed at arm's length, and the lack of collusion or fraud here supports granting preliminary approval.

B.  **The questions of law and fact that exist in the case support approving a settlement now**

The second and third factor, which inquire into the complexity and likely duration of the litigation and whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, also supports approval. This analysis requires a balancing of the "risk of continued litigation . . . against the certainty and immediacy of recovery from the Settlement." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). When considering the immediate recovery provided by a fair settlement versus the uncertainty of continued litigation, "it has been held proper to take the bird in hand instead of a prospective flock in the bush." *Kim v. Space Pencil, Inc.*, No. 11-CV-03796, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012) (quoting *Lipuma v. Am. Express Co.,* 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005)). In this case, given that several hurdles remain (including the pending motion for reconsideration regarding Defendant's motion to decertify the class and pending motions for summary judgment) these considerations favor approval of the settlement under this factor. *See Garner*, 2010 WL 1687832, at *10 (citing *Rodriguez*, 563 F.3d at 966).

The expense, duration, and complexity of any protracted litigation certain to occur in the

12

absence of this Settlement would be substantial, and significant labor and expenses would be expended on both sides in advance of trial, including the expenses involved in months of preparation and the calling of witnesses and experts, potentially from across the country. *See Young v. Polo Retail, LLC*, 02-CV-4546, 2007 WL 951821, at *3 (N.D. Cal. Mar. 28, 2007). Given the potential for a statutory award, the losing party would appeal the decision as a matter of course, resulting in the expenditure of even more time and money. In light of these expenses and the inherent risk involved in any continued litigation, this factor weighs in favor of approval.

Exacerbating the inherent risk of pursuing and litigating the merits of this case is the unavoidable risk attendant to seeking adversarial class certification and then maintaining class status throughout the remainder of the litigation. This is especially true given that "[a] district court may decertify a class at any time." *Rodriguez*, 563 F.3d at 966 (citing *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1982)).

In this case, though the Court has granted certification, Defendant has a pending motion to reconsider the Court's Order denying its Motion to Decertify. Thus, there is the risk that the Court could grant that motion and decertify the class. Moreover, this Court held open the possibility of a consent defense for the entire class:

> But if Mr. Buchanan was just paraphrasing and representatives specifically asked recipients to consent to receiving faxed advertising, the result could be different. Because there remains the possibility that the issue of consent can be resolved categorically on a classwide basis, the Court's finding of predominance and certification of a class remains a correct one at this time.

(Dkt. 102 at 16.)

Finally, this Court has held that Tech has not identified who actually received faxes:

> The time is ripe for Tech to explain how it will corelate the information it has obtained in order to identify the members of the class who actually received

unsolicited faxed advertisements. Tech will make that showing in a notice filed with the Court, supported by such evidence as may be necessary to evaluate the accuracy and efficiency of that method, within 30 days of this Order.

(Dkt. 102 at 21.)

As such, for all of the reasons discussed above, the Court should find the decision to settle at this stage is reasonable and supportive of the fairness of the Settlement.

### C. The judgment of the Parties supports approval

The opinion of Class Counsel also supports approval. When considering this factor, proposed Class Counsel's "weighing of the relative risks and benefits of protracted litigation" should be given "great deference." *Hyland v. HomeServices of Am., Inc.*, 2012 WL 1575310, at *7 (W.D. Ky. May 3, 2012). This case challenges unwanted faxes. People who found the faxes annoying can file claims and receive cash, and everyone receives the benefit of Eurton's prospective business assurances. When viewed against the risks, the Settlement presents a favorable outcome for members of the class.

## VIII. The Proposed Notice Plan is the Best Practicable in this Case.

Rule 23(c)(2)(B) provides that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Dukes*, 131 S.Ct. at 2558. Rule 23(e)(1) similarly states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1).

Notice is "adequate if it may be understood by the average class member." Newberg, § 11:53 at 167. The substance of the notice to the class must describe the nature of the case, the

class definition, the claims and defenses at issue, as well as explain that settlement class members may enter an appearance through counsel if so desired, request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. 23(c)(2)(B).

As evidenced by the proposed notices attached as Exhibit B to this Motion, the Notice plan developed by both Parties is the best practice under the circumstances. The Parties have selected RG2 Claims to serve as Settlement Administrator. This is the same administrator that successfully distributed notice following certification in this case. Within 14 days of Preliminary Approval, the Administrator will be provided with the Class List, which the Agreement defines as the 1,498 fax numbers on the Fax List.

Using these Lists, RG2 will send each Class Member, via first class mail, a copy of the Short Form (postcard) Notice. RG2 is also responsible for establishing and maintaining a Settlement Website (Settlement Agrmt. at § IV.3) that will host a traditional "Long Form" notice. At the Website, Class Members can learn about the Settlement Agreement, be advised of key dates and deadlines, and review important settlement documents. Settlement Class Members will also be able to use the Settlement Website to download claim forms for mailing and to submit such claim forms electronically.

The Notice will alert the Class Members of their inclusion in the Class because they appeared on Eurton's Fax List. The Notices will also provide the terms and provisions of the proposed settlement, including the settlement amounts. (*Id.*) The Notice will advise Class Members of their rights, including the right to be excluded from, comment upon, and object to the Agreement and the procedures for taking such actions. (*Id.*) The Notice will also refer Class

15

Members to the Website and explain the procedures for submitting a claim as well as stating the date, time, and place of the Final Approval Hearing and advise of the right to attend, opt out, and object. (*Id.*)

## IX. Conclusion

For the foregoing reasons, Plaintiff respectfully asks that the Court grant preliminary approval of the Settlement Agreement, approve the form and manner of notice described above, and schedule a Final Fairness hearing.

Dated: May 5, 2022            Respectfully submitted,

**TECH INSTRUMENTATION INC.**, individually and on behalf of all others similarly situated,

By: /s/ Patrick H. Peluso
One of Plaintiff's Attorneys

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF system on this 5th day of May, 2022 to all counsel of record.

/s/ Patrick H. Peluso