IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 16-cv-02981-MSK-KMT

**TECH INSTRUMENTATION INC.**, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

**EURTON ELECTRIC CO. INC.**,

    Defendant.

---

## OPINION AND ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

---

**THIS MATTER** comes before the Court pursuant to the parties' Motion for Preliminary Approval Of Class Settlement **(# 1116)**.

The Court assumes the reader's familiarity with the proceedings to date. In summary, the Plaintiff asserts that the Defendant, Eurton Electric Co. ("Eurton"), violated the Junk Fax Protection Act, 47 U.S.C. § 227, by sending unsolicited advertisements by fax. In May 2018, the Court certified **(# 47)** the case as a class action. The parties have now reached an agreement to settle the case and move **(# 116)** the Court for preliminary approval of that settlement agreement and the process for notifying class members of the settlement.

Fed. R. Civ. P. 23(e)(1)(B)(2) requires that the Court must make a preliminary determination that the proposed settlement is "fair, reasonable, and adequate" to class members. The Court must also certify a settlement class and direct a process for notifying class members of

1

the settlement and its terms and allowing class members to object to the settlement or opt out of the class entirely.

### 1. Preliminary approval of the settlement

The key terms of the parties' settlement are fairly straightforward: Eurton will pay slightly less than $300,000 into a settlement fund. Class members who complete and submit a valid claim form will receive a single $200 payment from the fund. Other expenses – attorney fees for class counsel, an anticipated incentive payment to the named Plaintiff, and the costs of administering the settlement – will also be paid out of the settlement fund. If there are monies remaining in the fund after all class member payments and other expenses are paid, 95% of the remaining money in the fund will revert back to Eurton, with the remaining 5% being payable to a *cy pres* recipient approved by the Court.[1]

(a). Amount of class member payments

The Court is satisfied that the broad outline of the proposed settlement is fair, reasonable, and adequate. Under the Junk Fax Protection Act, victims of unsolicited fax advertising are eligible to recover actual damages or, if actual damages cannot be shown, a statutory award of $500 for each violation.[2]  47 U.S.C. § 227(b)(3)(B). The $200 that class members will receive reflects a discount from the $500 statutory damages that the class members could obtain via trial, but that discount is warranted given several substantial evidentiary obstacles that the class would

---

[1] The parties' Settlement Agreement proposes Bet Zedek Legal Services of Los Angeles, CA or the Colorado Legal Aid Foundation as *cy pres* recipients. The Court makes no findings at this time as to the appropriateness of these organizations as *cy pres* recipients.

[2] The Court may, in its discretion, award up to treble damages upon a showing that the defendant acted willfully or knowingly. 47 U.S.C § 227(b)(3). The parties have not materially addressed the evidence for and against such an enhancement and the Court makes no findings as to the likelihood of it approving a damages enhancement.

have to overcome if the case proceeded to trial. A recurring difficulty in this litigation has been the fact that Eurton did not retain any meaningful records of its faxing activities during the period at issue, making it difficult to determine exactly who was sent faxed advertisements, when, and how often. The class' path to a verdict was also hampered by Eurton's position that, as a matter of company policy, it obtained oral consent from each recipient before sending any faxed advertisements. As with other business records, Eurton did not retain any records documenting its contacts with potential fax recipients or the precise manner in which it obtained consent, making it difficult to determine whether recipients did indeed give consent to receive the advertisements. The Court was careful to cabin its initial class certification in such a way as to avoid the possibility of individualized issues of fact overwhelming the issues common to all members of the class, but there remains a substantial risk that, without careful and exacting structuring of the evidence at trial, individualized issues of fact could take on increased prominence, warranting a mistrial and de-certification of the class. These and other difficulties compel the conclusion that a verdict for the class at trial was far from a certainty. In that sense, the $200 guaranteed to each class member by virtue of the settlement reflects a realistic weighing of the potential for class members to recover $500 in statutory damages following trial versus the distinct possibility of no recovery for the class at all.

      The fact that each class member is entitled to the same $200 payment has the benefit of ensuring that all class members are afforded equal treatment relative to each other. On the other hand, the fact that any single recipient can only receive one $200 payment, regardless of how many unsolicited ads they received from Eurton, works to the disadvantage of those who received numerous ads, each of which would support an independent statutory award of $500 if the class proceeded to trial and won. As noted above, the record here is particularly murky as to

<u>how many</u> ads Eurton sent and when.  Tech Instrumentation, the named Plaintiff, indicated in its Complaint **(# 1)** that it received two advertisements, both in June 2016.  There was limited documentary evidence that Eurton used a service called WestFax to send fax advertisements on Eurton's behalf on two occasions in or about July 2016.  It is conceivable that some class members may have received an even larger number of unsolicited advertisements – Eurton has repeatedly acknowledged that it heavily relies on fax advertising in conducting its business – but the record is not currently (nor likely to ever be) so clear as to permit the Court to make such a finding without those class members identifying themselves via objections to the settlement.  Given that the only concrete evidence in the record at this time suggests that class members may have received as many as two faxed advertisements from Eurton, the Court finds that a settlement that limits class members to a single payment of $200 regardless of the number of ads received is a fair compromise of any claims the class members might have against Eurton.

(b). <u>Requiring class members to affirmatively claim payments</u>

The terms of the settlement require class members to affirmatively submit a claim form in order to receive a payment.  The Court finds that, under the circumstances, this process is fair and reasonable.  As compared to settlements that make automatic payments to all class members, a requirement that class members affirmatively act in order to preserve their right to a recovery is an inconvenience that will, to some degree, suppress class member participation n the distribution of settlement funds.  At the same time, the Court finds that the facts of this case warrant such a process.  Eurton has asserted that it assiduously attempted to obtain prior permission from recipients to send fax advertisements, and it is conceivable that at least some of

4

the class members did indeed consent to receive Eurton's advertisements.[3]  Automatic payments of claim funds to recipients who consented to receive advertisements would not be appropriate and the Court anticipates that recipients who did indeed give prior consent to advertising will choose not to submit a claim form falsely asserting otherwise.  The burden placed on recipients to make a claim under the settlement is minor: they must simply access the claim form, supply a minimal amount of information (their contact information, the fax number that received the Eurton faxes), attest under penalty of perjury (notarization not necessary) that such information is accurate,[4] and mail it to the Settlement Administrator or submit it online.  The Court finds that the minimal burden placed on class members to submit claim forms is a reasonable and appropriate means to separate out those class members who consented to receive faxes from Eurton from those who did not.

(c). Arm's length negotiations

The Court has no reason to believe that the settlement was negotiated at anything other than arm's length or was the product of any sort of collusion between the parties.  Both sides have diligently and vigorously litigated their positions throughout this proceeding.  And, as discussed above, the bottom-line settlement amount reflects a degree of discounting of the

---

[3]    Eurton has represented that some of its customers, upon receiving notice of the initial class certification, contacted it, reaffirmed their willingness to receive faxed Eurton advertisements, and asked how to be excluded from the litigation.

[4]    The Court suggests that the attestation language in the Claim Form be amended to read "... I declare under penalty of perjury that I received at least one <u>unsolicited</u> fax advertisement...."  The Instructions section of the Claim Form does adequately recite the requirement that the recipient did not "provid[e] prior express permission or invitation to receive fax advertisements," but repeating that requirement as part of the attestation will serve to reinforce that critical element.

The Court also notes that the attestation language references "checking the boxes below," but no such boxes exist below that section of the form.  The Court recommends that that the "checking the boxes" language be removed.

maximum statutory damages available that is reflective of the degree of difficulty facing the class at trial.

    (d). <u>Concerns</u>

 The Court does have some reservations about the design of the settlement. The total pool of class members is stated to be 1,498 recipients. Assuming every class member returns a claim form, those 1,498 claims at $200 each account for the full amount of the $299,600 settlement fund, leaving no additional sums for payment of attorney fees or administration expenses. The Settlement Agreement does not expressly address the possibility that claims against the fund might exceed the amount of money paid by Eurton, although it does make clear that Eurton will have no liability to pay anything more than the roughly $300,000 settlement amount. The Agreement does purport to prioritize the order in which the Settlement Administrator pays out claims, establishing the following sequence: (i) taxes; (ii) any incentive award approved by the Court to the named Plaintiff (the Settlement Agreement contemplates that this award may be as high as $5,000); (iii) attorney fees that the Court may approve for class counsel (the Settlement Agreement contemplates that this sum might be up to 1/3 of the total settlement fund or approximately $100,000); (iv) other fund administration expenses; and finally (v) payments to class members. Assuming a high rate of valid claims from class members, it is conceivable that the fund will exhaust its resources before being able to pay all class members' claims in the amounts promised. But the Settlement Agreement does not explain how that possibility would be addressed: would class members' $200 awards be reduced *pro rata*? Would the $200 claims be paid in full but on a first-in, first-out basis until the fund was exhausted, with later claimants receiving nothing? Would counsel or the named Plaintiff agree to waive some or all of their shares of the settlement fund? The Court need not conclusively address this concern at this time

6

in order to give preliminary approval to the settlement, but the Court advises the parties that it does not necessarily intend to approve the order of payment priorities set forth in Section III.4.a(i)-(v) if claims against the fund from all listed sources would exceed the amount of fund assets.

        (e). Remaining matters

The Court grants its approval to the remaining, unaddressed collateral issues of the settlement, such as the class definition; the selection of a Settlement Administrator, class counsel, and class representative; and the possibility of a reversion of unclaimed settlement funds to Eurton.

Accordingly, the Court finds that the proposed settlement appears to be fair, reasonable, and adequate under Rule 23(e)(2) and the Court preliminarily approves the settlement.

**2. Notice procedure**

Rule 23(e)(1)(B) requires that the Court approve a process that will give potential class members "notice in a reasonable manner" of the terms of the settlement and allow the class members the opportunity to object to the approval of the settlement or to opt out of the class entirely. *See also* Rule 23(e)(4), (5).

Here, the parties propose to notify the class by means of a postcard mailed to each class member, giving basic details about the settlement and directing the recipient to a web site to obtain more information and print out a claim form. Given the number of recipients, the nature of the information to be conveyed, and the relatively small amount of money at issue (both on a per-class member basis and overall), the Court finds that the postcard/website notice method is a reasonable and cost-effective way to inform class members of the settlement.

The Court does, however, require certain changes to the proposed notice document found at Exhibit B-1 (which will presumably be displayed on the settlement website). On the first page, that document provides a table of class members' "Legal Rights and Options In This Settlement." One of those options is to "Object," by which the class member may "write to the Court explaining why you don't like the Settlement." A second option is entitled "Go to the Hearing," described as "Ask to speak in Court about your opinion of the Settlement." The Court finds that listing "Go to the Hearing" as a distinct option is inappropriate. Although the Court will conduct a final hearing as to the adequateness of the settlement as required by Rule 23(e)(2), the nature of that hearing is dependent, in part, on the number and nature of the written objections that are tendered by class members or other interested persons. If written objections are few and easily-addressed, the Court may elect to spare the parties the costs of an in-person court appearance and conduct the final hearing on papers (including any written objections). *See generally* Newberg On Class Actions, § 13.42 ("The district court need not give every objector the opportunity to appear personally, as long as they have the opportunity to object in some manner and have their concerns considered by the court"). Even if the Court did choose to hold an in-person hearing, it would likely exercise its discretion to allow only those class members who already tendered written objections to state their objections orally. The raising of new objections at the eleventh hour would be unduly disruptive of a process that is already designed to give interested persons an ample opportunity to be heard in opposition. Thus, the Court is wary of a notice that implies that a class member or other interested person may elect to simply appear at the hearing to lodge an objection as an alternative to submitting an objection in writing. The option of "Go to the Hearing" should be omitted, although the parties may choose to indicate under the "Object" heading that "The Court will consider all written objections, and it

may or may not choose to conduct an in-person hearing about the fairness of the settlement. If the Court conducts an in-person hearing on the fairness of the settlement, only those persons who have filed written objections will be allowed to state their objections orally at the hearing as well." (For similar reasons, the parties may wish to modify the responses to Questions #17, #19, and #21 to make clear that an in-person hearing is not guaranteed and that written submissions are the primary way that objectors should state their positions regarding the settlement.)

Accordingly, the Court approves, with the aforementioned modification(s), the process proposed by the parties for giving notice to class members. For purposes of clarity and definiteness, the Court sets forth the following deadlines to be incorporated as necessary into the notice to be sent to class members:

- **14 days from the date of this Order**: Eurton shall provide the Settlement Administrator with the Class List and shall deposit the funds for the settlement as called for in the Settlement Agreement.

- **30 days from the date of this Order**: Settlement Administrator shall mail the notice postcards to all persons on the Class List and post all relevant notices to the settlement website.

- **75 days from the date of this Order**: deadline for class members to file claim forms, notices of objections, and/or requests to opt out of the class with the Settlement Administrator.

- **120 days from the date of this Order**: the parties shall file with the Court: (i) verification that the above steps have been completed; (ii) a report on the number of valid claim forms and opt-out notices received, an identification of any claim forms or opt-out notices rejected by the Settlement Administrator as invalid and the reasons for each such rejection; and the number of notice postcards returned as undeliverable; (iii) copies of all written objections tendered by any interested person; (iv) a motion seeking final approval of the settlement; and (v) any motion by the Plaintiff seeking an award of attorney fees and/or an incentive award to the named Plaintiff.

- The Court provisionally schedules a final approval hearing for **Thursday, September 22, 2022** at **10:00 a.m.** The date, time, or

manner of the hearing is subject to change by the Court as may be warranted by circumstances.

For the foregoing reasons, the Court **GRANTS** the parties' Motion for Preliminary Approval Of Class Settlement **(# 116)**.[5]

Dated this 24th day of May, 2022.

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
Senior United States District Judge

---

[5] The Clerk of the Court shall terminate the pending motions at Docket # 103 and 105 as moot.