**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: <u>1:16-cv- 02981</u>

TECH INSTRUMENTATION, INC., a Colorado corporation, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

EURTON ELECTRIC COMPANY, INC., a California corporation

        Defendant.

---

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND
INCENTIVE AWARD FOR NAMED PLAINTIFF**

---

Plaintiff Tech Instrumentation, Inc. ("Plaintiff" or "TII"), individually and on behalf of the settlement class of similarly-situated individuals certified by the Court, hereby moves the Court for an award of attorneys' fees and expenses from the settlement fund achieved in this matter, and for an incentive award to the named Plaintiff, in accordance with the Court's Opinion and Order Granting Motion for Preliminary Approval of Class Settlement (Dkt. 117). In support, Plaintiff states as follows:

**I.   INTRODUCTION**

Woodrow & Peluso, LLC ("Class Counsel") diligently prosecuted this action for nearly six years to achieve a favorable result for the Class. First, for the next two years, the settlement requires Eurton Electric Company, Inc. ("Defendant" or "Eurton") to comply with the TCPA and refrain from sending any fax advertisements without first obtaining express consent from the recipients. Second, the settlement creates a fund that provides meaningful monetary relief to all

Class Members who file a claim. Given the risks that Class Counsel faced over the course of this matter—which they have litigated for years on full contingency—the relief achieved is favorable to the class.

Under the Settlement preliminarily approved by the Court, Plaintiff may seek up to one-third of the Settlement Fund as a fee award. Accordingly, and as explained below, Class Counsel now seeks an award of 33% the Settlement Fund, or $99,866.67. The fee requests should be granted because an award of $99,866.67 is more than reasonable as it equates to approximately 45.85% of Class Counsel's lodestar—meaning Class Counsel is actually petitioning for a "negative multiplier," less than the amount of time spent working on this case.

Plaintiff also seeks approval to reimburse Class Counsel's out-of-pocket litigation expenses of $3,467.46, and an incentive award of $5,000 for the named Plaintiff.

## II.     BACKGROUND

Eurton is a California-based business, which operates as an electric motor supply and repair company. In an effort to boost Eurton's sales and attract new customers, Eurton sent faxes to thousands of businesses advertising its tools and other equipment. Though Defendant hired a blast fax company to perform the actual faxing, Eurton knew about the faxes and controlled their content, including the opt-out language. Plaintiff alleges that Eurton violated the Junk Fax Prevention Act ("JFPA"), a subsection of the federal Telephone Consumer Protection Act ("TCPA") that makes it unlawful to use a fax machine to send unsolicited advertisements. 47 U.S.C. § 227(b)(1)(C). Plaintiff moved for class certification on November 6, 2017, and Defendant filed its response in opposition on November 27, 2017. (Dkts. 36, 39.) The Court certified the Class on May 29, 2018 (dkt. 47); nearly two years later, the Court granted in part Plaintiff's motion to approve a notice plan. (Dkt. 72.)

2

Following two rounds of notice and Defendant's motions for decertification and summary judgment, Counsel for the Parties continued their settlement discussions and attended a mediation with Joe Epstein of Conflict Resolution Services. (*See* Declaration of Patrick H. Peluso (hereafter "Peluso Decl.") ¶ 5, attached hereto as Exhibit A.) The Parties did not reach an agreement at the mediation, but continued their negotiation efforts and ultimately reached a settlement agreement. (*Id.*) The Parties worked to draft the Settlement Agreement, Claim Form, and notices, and as detailed in full in the simultaneously-filed Motion for Final Approval, the settlement terms reached by the Parties provide for fair, reasonable, and adequate relief to the Settlement Class.

The Settlement Class includes individuals and entities associated with 1,498 facsimile numbers on Eurton's Fax List, which represents all of the recipients of Defendant's fax advertisements. (Dkt. 116-1 ¶ 36.) The Settlement provides all Class Members who file a claim with substantial monetary relief—Eurton must establish a Settlement Fund of $299,600, which will pay all approved claims (at $200 per claim), Settlement Administration Expenses, any Incentive Award to the Class Representative, and any Fee Award. (*Id.* ¶ 39.)

In addition to the $299,600 in cash relief, the Settlement Agreement also requires Eurton to adopt the following prospective measures:

> For a period of twenty-four (24) months following the Effective Date, and subject to changes in applicable law, Eurton agrees not to cause facsimile advertisements to be sent to facsimile machines without first obtaining the prior express permission or invitation of the recipient.

(*Id.* at pg. 15.) Thus, the Settlement not only compensates Settlement Class Members for Eurton's alleged violations of the JFPA, but also works to ensure that they and other potential recipients won't receive additional unsolicited faxes. In exchange for the benefits to the Class, Eurton receives a full release of any claims relating to any facsimile advertisements made under

3

the TCPA or any similar state statute or law. (*Id.* at pgs. 25-26.) The Release includes unknown claims, which are limited to claims that could have been brought in this litigation.

**III.     ARGUMENT**

Concurrent with Plaintiff's Motion for Final Approval of the Settlement, Plaintiff hereby moves for an award of reasonable attorneys' fees and costs, as well as for an incentive award. Rule 23 states that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

In common fund cases, courts in the Tenth Circuit typically award class counsel fees as a percentage of the common fund established by the settlement. *Brown v. Phillips Petroleum Co.*, 838 F.2d 451 (10th Cir. 1988); *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993) (recognizing the "propriety of awarding attorneys' fees in [common fund cases] on a percentage of the fund, rather than lodestar, basis"). Courts in this Circuit weigh several factors—known as the *Johnson* factors—when considering whether a percentage requested for fees is reasonable:

> The twelve *Johnson* factors are: [1] the time and labor required, [2] the novelty and difficulty of the question presented by the case, [3] the skill requisite to perform the legal service properly, [4] the preclusion of other employment by the attorneys due to acceptance of the case, [5] the customary fee, [6] whether the fee is fixed or contingent, [7] any time limitations imposed by the client or the circumstances, [8] the amount involved and the results obtained, [9] the experience, reputation and ability of the attorneys, [10] the "undesirability" of the case, [11] the nature and length of the professional relationship with the client, and [12] awards in similar cases.

*Gottlieb v. Barry*, 43 F.3d 474, 482 n.4 (10th Cir. 1994), citing *Johnson v. Georgia Highway*

4

*Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The relative weight afforded to each factor can vary, particularly between statutory and common fund fee cases. *See Brown*, 838 F.2d at 456 ("In a common fund case, . . . the [eighth] *Johnson* factor—the amount involved and the results obtained—may be given greater weight when . . . recovery was highly contingent . . . ."). In addition to the *Johnson* factors, Courts can evaluate the reasonableness of a percentage award by cross-checking against class counsel's lodestar—the product of the number of hours worked and class counsel's hourly rate. *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *8 (D. Colo. Apr. 22, 2015).

As detailed below, the requested fee award is fair and reasonable. The *Johnson* factors weigh in favor of granting the requested award, and class counsel's lodestar confirms that the amount is reasonable. Accordingly, the Court should grant the motion and award the requested fees to Class Counsel for their time and effort in litigating this matter for nearly six years.

### A. The Requested Fee Award Of $99,866.67 —Equal To 33% Of The Common Fund—Is Fair And Reasonable.

The requested fee award of $99,866.67—equal to 30% of the Settlement Fund and approximately 45.85% of Class Counsel's lodestar—is reasonable under the *Johnson* factors, and the Court should grant Plaintiff's request.

#### 1. The case at issue required years of skillful litigation and carried significant risk [Factors 1, 2, 3, and 10].

The first few *Johnson* factors consider the time and labor required to pursue the case, the novelty or difficulty of issues involved, and the skill required to properly represent the Class in the case. *Gottlieb*, 43 F.3d at 482 n.4. Since filing this matter in 2016, this matter has required considerable time and labor from Class Counsel. As outlined in the attached declaration, Woodrow & Peluso's attorneys have worked approximately 505.8 hours on this matter, which was necessary to achieve the outcome in this settlement. (*See* Peluso Decl. ¶ 7.) Plaintiff has

5

faced legal and factual challenges regarding every aspect of the case—class certification, the merits of Plaintiff's claims, and the relief that Plaintiff sought—and many costs, risks, and delays associated with carrying this case through to trial would persist in the absence of a trial, including the potential for no recovery at all. The Parties have litigated this matter for years, and Eurton would continue to defend its position if no settlement were reached. Reaching a settlement with Eurton that would provide adequate benefit to the class, especially after years of litigation and lengthy negotiations, required considerable skill, which Class Counsel has demonstrated.

Similarly, the tenth *Johnson* factor considers the undesirability of the case. Here, the Court has previously noted "substantial evidentiary obstacles that the class would have to overcome" in order to succeed at trial and obtain recovery. The Court addressed these obstacles at the preliminary approval stage:

> A recurring difficulty in this litigation has been the fact that Eurton did not retain any meaningful records of its faxing activities during the period at issue, making it difficult to determine exactly who was sent faxed advertisements, when, and how often. The class' path to a verdict was also hampered by Eurton's position that, as a matter of company policy, it obtained oral consent from each recipient before sending any faxed advertisements. As with other business records, Eurton did not retain any records documenting its contacts with potential fax recipients or the precise manner in which it obtained consent, making it difficult to determine whether recipients did indeed give consent to receive the advertisements. . . . [T]here remains a substantial risk that, without careful and exacting structuring of the evidence at trial, individualized issues of fact could take on increased prominence, warranting a mistrial and de-certification of the class. These and other difficulties compel the conclusion that a verdict for the class at trial was far from a certainty. In that sense, the $200 guaranteed to each class member by virtue of the settlement reflects a realistic weighing of the potential for class members to recover $500 in statutory damages following trial versus the distinct possibility of no recovery for the class at all.

(Dkt. 117 at 3.) Absent a settlement, the expense, duration and complexity of further protracted

6

litigation would be substantial, and both Parties would incur significant labor and expenses in advance of trial and any potential appeal thereafter. Given that "[a] district court may decertify a class at any time," the potential for de-certification exacerbates the risks and undesirability of this case even further. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (citing *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1982)).

In light of skill, time, and labor that Class Counsel has put into litigating this matter on behalf of the Class, as well as the undesirable risks and evidentiary obstacles that Plaintiff and the Class would face in attempting obtain a favorable judgment at trial, these *Johnson* factors weigh in favor of granting Plaintiff's requested fee award.

### 2. Class Counsel are experienced in TCPA class actions, and they risked nonpayment by forgoing paid hourly work to litigate this matter on a contingency basis [Factors 4, 6, 9, and 11].

Next, several of the *Johnson* factors focus on Class Counsel, including whether the case required counsel to forego other employment, whether the fee is contingent, the experience and reputation of the attorneys, and the nature and length of their relationship with the client. *Gottlieb*, 43 F.3d at 482 n.4. Here, these factors strongly support the requested fee.

First, Class Counsel was engaged by TII several years ago to represent it in the pursuit of claims against Eurton for unsolicited fax advertising. Class Counsel and Plaintiff have worked together to litigate this matter not only on behalf of TII, but on behalf of all others similarly situated who received the same unwanted fax advertising from Defendant. In doing so, Class Counsel's attorneys have worked approximately 505 hours on this matter. (Peluso Decl. ¶ 7.)

Second, Woodrow & Peluso specialize in the litigation of consumer class actions of similar size and complexity, and have litigated and settled numerous TCPA class actions regarding unsolicited phone calls, text messages, and fax advertisements. (*See* Woodrow & Peluso, LLC Firm Resume, attached as Exhibit 1 to the Peluso Decl.) Counsel's experience and

7

familiarity steered the efforts throughout this litigation and was a critical factor in obtaining relief for the class as demonstrated by the Settlement, as well as ensuring that the Class received the highest quality of representation.

Third, while Woodrow & Peluso uses hourly billing arrangements for some of its commercial litigation clients—at hourly rates consistent with those of peer firms in the Denver market—Class Counsel takes consumer class actions (including this case) on a full-contingency basis, increasing their risk of nonpayment and exposure in the event that they do not achieve a successful outcome for Plaintiff or the Class. (Peluso Decl. ¶¶ 9-11.) Indeed, if this Motion for Fees is not granted, Class Counsel will not be compensated for the time that they have devoted to Plaintiff's case. By taking on this matter, Class Counsel have invested significant time and labor in a case with an uncertain outcome—this meant foregoing the opportunity to apply that time in cases with regular payment at hourly rates, or into other contingency matters that may have produced a more favorable or certain outcome.

In short, each of the *Johnson* factors related to the efforts and experience of Class Counsel weigh in favor of the requested fee award. Class Counsel have devoted nearly six years of time and labor to an uncertain case on a full-contingency basis, and their specialized experience with consumer class actions have enabled them to achieve a settlement favorable to the Class. The Court should grant Plaintiff's motion and award the requested fees to Class Counsel.

### 3. Class Counsel achieved very good results for the Class, and the award sought is comparable to similar cases [Factors 5, 8, and 12].

The last remaining *Johnson* factors[1] compares the amount of the award sought to the

---

[1] Plaintiff did not address factor 7— any time limitations imposed by the client or the circumstances—because no such limitations are present in this case. *See Gottlieb*, 43 F.3d at 482 n.4.

8

results of the settlement and the customary fee based on awards in similar cases. *Gottlieb*, 43 F.3d at 482 n.4. In light of the monetary and non-monetary relief achieved by this settlement, the fee award is reasonable, and it is within the range of percentage-based awards that have been approved in this Circuit.

As stated above, the Settlement establishes a common fund of $299,600 from which all class members who file claims will receive $200 each. In addition to payment of each class member that filed a claim, the remaining funds will pay for notice and administration expenses, as well as any incentive award to TII and attorneys' fees and costs award to Class Counsel. Given that 13 class members filed claims, the fund will provide for full payment of $200 to each filing class member, RG2's notice and administration costs (a total of $25,879)[2], and should the Court grant Plaintiff's motion and award the requested fee award of $99,866.67, Class Counsel's out-of-pocket costs (a total of $3,467.46), and the requested incentive award of $5,000, a fund amount will remain from which a *cy pres* recipient will be paid a percentage before additional funds otherwise revert to Defendant. (*See* Peluso Decl. ¶¶ 12-14.)

As explained with detailed comparison in the concurrently-filed Motion for Final Approval, a cash payment of $200 to each filing class member is substantial, and frankly exceeds class member payments available in many TCPA settlements. Considering that this monetary amount is in addition to prospective relief that Eurton must implement for two years, the results achieved by the settlement are fair, reasonable, and adequate. The Parties have hired RG2 Claims Administration, an experienced settlement claim administration company, to provide notice and maintain a claims website, which enables class members to file their claims online. (*See* Declaration of Dana Boub ("Boub Decl.") ¶ 2, attached hereto as Exhibit C.) RG2 Claims will

---

[2] *See* RG2 Invoices, attached hereto as Exhibit B.

9

further assist in disbursing payment via check to all class members who filed a claim.

The customary fee awarded to class counsel in a common fund settlement is "approximately one third of the total economic benefit bestowed on the class." *Shaw*, 2015 WL 1867861, at *6 (quoting *Lucken Fam. Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010)). Indeed, many courts have recognized that fee awards of up to 50% may be approved in common fund settlements:

> Other courts have similarly recognized that "[t]he percentages awarded in common fund cases typically range from 20 to 50 percent of the common fund created[,]" *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249–50 (S.D. Ohio 1991), and that fees within this range are "presumptively reasonable," *Vaszlavik v. Storage Technology Corp.*, 2000 WL 1268824 at *4 (D.Colo. March 9, 2000). *See also Cimarron Pipeline Construction, Inc. v. National Council on Compensation Insurance*, 1993 WL 355466 at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis.")

*Shaw*, 2015 WL 1867861, at *6 (alterations in original). Plaintiff's request for a fee award equal to 33% of the settlement fund is in line with the customary fee awarded to class counsel in contingency cases, and it is well within the range of acceptable fee awards that have been approved in similar cases.

As is the case for the other *Johnson* factors addressed above, the factors related to the fee award itself are also satisfied here and weigh in favor of approval to the requested fee award.

### 4. The requested fee award equates to only 45.85% of Class Counsel's lodestar, which is reasonable.

In addition to analysis of the *Johnson* factors, courts can also assess the reasonableness of a common fund percentage award by cross-checking it against class counsel's lodestar. *See, e.g.*, *Shaw*, 2015 WL 1867861, at *8 (citing *In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB-KLM, 2014 WL 4670886, at *4 (D. Colo. Sept. 18, 2014)). The Court in *Shaw* gathered several

10

cases in which fee awards ranging from a lodestar multiplier of 1.87 to 4.6 were approved. 2015 WL 1867861, at *8 (citing *In re Miniscribe Corp.,* 309 F.3d 1234, 1245 (10th Cir. 2002) (2.57 multiplier); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 (9th Cir. 2002) (3.65 multiplier); *Mishkin v. Zynex, Inc.,* 2012 WL 4069295 at *2 (D.Colo. Sep. 14, 2012) (citing approval to a range of 2.5 to 4.6 multipliers); *Lucas v. Kmart Corp.,* 2006 WL 2729260 at *9 (D.Colo. July 27, 2006) (1.87 multiplier).

Here, the lodestar check strongly supports the requested fee award because the fee request currently amounts to only 45.85% of Class Counsel's lodestar. (Peluso Decl. ¶ 7.) In other words, the amount sought is less than the total fees that Class Counsel would have earned if paid on a regular, hourly basis. (*Id.*) Further, that percentage will continue to decrease as Class Counsel continues to work on this matter—drafting and filing this motion and the Motion for Final Approval, preparing for and participating in any final approval hearing, and overseeing the implementation of the Settlement and distribution of payments to Class Members and the elected *cy pres* recipient.

Thus, the requested fee award is reasonable under both the *Johnson* factors and when cross-checked against Class Counsel's lodestar. Accordingly, the Court should grant Plaintiff's motion and award Class Counsel a fee award equal to 33% of the settlement fund, or $99,866.67.

### B. The Court Should Award Class Counsel Their Expenses Accrued Over The Course Of This Action.

In addition to and separate from the above-requested fee award, Plaintiff requests that the Court award Class Counsel repayment of their out-of-pocket expenses incurred in litigating the case. Courts in the Tenth Circuit permit attorneys in contingency cases to recover reasonable expenses that would typically be billed to paying clients in other matters. *See Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990); *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 WL

11

1268824, at *4 (D. Colo. Mar. 9, 2000) ("As with attorneys' fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred."). Such expenses routinely billed to clients include filing fees, attorney service fees, and travel, and it is therefore appropriate for Class Counsel to recovery its reasonable costs and expenses from the settlement fund.

Here, Class Counsel have advanced a modest total of $3,467.46 in costs and expenses over the course of nearly six years of litigation. (Peluso Decl. ¶ 12.) Class Counsel have not incurred any large, unreasonable expenditures—they have litigated this case efficiently. *Id*. As such, Plaintiff respectfully requests that the Court award payment of $3,467.46 from the Settlement Fund for Class Counsel's expenses incurred in the case.

      **C.**    **The Court Should Grant Plaintiff An Incentive Award For Its Involvement And Contributions To The Case.**

Finally, Plaintiff moves the Court to approve an incentive award to itself in the amount of $5,000 for its efforts in bringing forth this case on behalf of the Class. In class action settlements, reasonable incentive awards are typically approved "to compensate named plaintiffs for the work they performed—their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). The Tenth Circuit has held that class representatives "may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class." *UFCW Loc. 880-Retail Food Emps. Joint Pension Fund v. Newmont Min. Corp.*, 352 F. App'x 232, 235 (10th Cir. 2009).

In the TCPA context, incentive awards of $5,000 are frequently approved for named plaintiffs, with other awards ranging from $1,000 to $10,000. *See, e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *8 (N.D. Ill. May 14, 2019) (citing awards of $5,000 to TCPA plaintiffs in the district and approving award of $10,000 to each of three

12

named plaintiffs); *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 835 (7th Cir. 2018) (holding that $1,000 incentive award was "among the reasonable options from which the district court could choose"); *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029-CIV, 2017 WL 9472860, at *13 (S.D. Fla. Nov. 20, 2017) (citing awards of $5,000 and $3,500 and approving $10,000 incentive award); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1050 (S.D. Cal. 2015) (approving $1,500 incentive award); *Vandervort v. Balboa Cap. Corp.*, 8 F. Supp. 3d 1200, 1208 (C.D. Cal. 2014) (approving combined incentive award of $10,000 for two named plaintiffs).

Here, Plaintiff's request for an incentive award of $5,000 is reasonable and in line with incentive awards approved in similar TCPA cases. TII has stepped forward, put its name out, and done everything asked of it as a named Plaintiff and representative of the class, including rejecting attempts by Defendant to settle Plaintiff's claims on an individual basis to the exclusion of the Class. Since filing the case in 2016, Plaintiff has been a dedicated advocate for the interests of the Class and actively participated in discussions with Class Counsel concerning the litigation and settlement strategy. In short, Plaintiff should be rewarded for its contributions to the results achieved in this settlement, and the Court should grant the modest incentive award requested.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) approve the requested fee award of $99,866.67, which represents 33% of the Settlement Fund; (2) approve payment of $3,467.46 for Class Counsel's costs and expenses from the Settlement Fund; (3) approve a $5,000 incentive award for the named Plaintiff; and (4) provide any such further relief that the Court deems necessary and just.

Dated: September 16, 2022                    Respectfully submitted,

                                                **TECH INSTRUMENTATION INC.**, individually and on behalf of all others similarly situated,

                                                By: /s/ Patrick H. Peluso
One of Plaintiff's Attorneys

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

14

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF system on September 16, 2022, to all counsel of record.

/s/ Patrick H. Peluso