**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: <u>1:16-cv- 02981</u>

TECH INSTRUMENTATION, INC., a Colorado corporation, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

EURTON ELECTRIC COMPANY, INC., a California corporation

        Defendant.

**PLAINTIFF'S MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Tech Instrumentation, Inc. ("Plaintiff" or "TII"), individually and on behalf of a class of similarly-situated individuals, moves the Court, pursuant to Federal Rule of Civil Procedure 23, for an Order granting final approval of the proposed class action Settlement Agreement agreed to by the parties and, in support, states as follows:

**I.     INTRODUCTION**

Plaintiff brought this alleged class action lawsuit against Defendant Eurton Electric Company, Inc. ("Defendant" or "Eurton") challenging facsimile advertisements that Plaintiff alleges Defendant sent to it and others in violation of the Telephone Consumer Protection Act ("TCPA" or "Act"), 47 U.S.C. § 227, *et seq*. Plaintiff alleges that Eurton violated the TCPA by faxing it and others without prior express permission or invitation. Eurton denies that it faxed TII or anyone else without first obtaining prior express consent, and it has raised other defenses, including challenges to continued class certification.

Notwithstanding their disagreements as to the merits of the underlying claims and defenses, the parties have entered into a Settlement Agreement, subject to Court approval, that provides relief to the proposed class, including: (i) the establishment of a settlement fund of two hundred ninety-nine thousand six hundred dollars ($299,600 USD) for the payment of all approved claims, settlement administration expenses, and any incentive awards and award of attorneys' fees and for reimbursement of costs approved by the Court; and (ii) the requirement that Eurton take affirmative steps to ensure it does not fax consumers without first securing prior express consent in the future. Class Members who file Valid Claims will be entitled to receive a check for $200.

The Court previously granted preliminary approval to the settlement, and notice was sent to the class. Following the notice period, a total of 13 class members filed claims, while no class members opted out or filed objections. (*See* Dkt. 120-3, Declaration of Dana Boub, ¶¶ 9-11.) Thus, according to the terms of the agreement, the final settlement amount will provide each class member with $200, with funds remaining to cover notice and administration expenses (approximately $25,879), any incentive award and reasonable attorneys' fees and costs granted by the court, and an additional amount to be award to the designated *cy pres* recipient.

As explained below, the settlement is fair, reasonable, and adequate, satisfying the requirements of Rule 23. The settlement also satisfies the various requirements applicable in the Tenth Circuit for final approval. Thus, Plaintiff respectfully requests that the Court issue Order granting final approval to the settlement.

## II.     BACKGROUND

### A.     Summary Of Plaintiff's Claims And The Litigation

As the Court is aware, this case was filed on December 6, 2016. (Dkt. 1.) Defendant

2

Eurton is a California-based business, which operates as an electric motor supply and repair company. In an effort to boost its sales and attract new customers, Eurton sent faxes to thousands of businesses advertising its tools and other equipment. Eurton didn't send the faxes itself; it hired a blast fax company in Colorado known as WestFax to perform the actual faxing. That said, Eurton knew about the faxes and controlled their content, including the opt-out language that was used, which stated:

> PLEASE REMOVE: We at Eurton Electric try our best to contact all customers on our list, but understand mistakes occur, or unauthorized permission may have been given. If you have no need for our repair or parts service, and which to be removed from future contacts, please fax, e-mail, or phone (below) and let us know the number you wish removed.

Plaintiff alleges that Eurton violated the JFPA, which makes it unlawful to use a fax machine to send unsolicited advertisements. 47 U.S.C. § 227(b)(1)(C). Plaintiff moved for class certification on November 6, 2017, and Defendant filed its response in opposition on November 27, 2017. (Dkts. 36, 39.) The Court certified the Class on May 29, 2018. (Dkt. 47.)

On March 4, 2019, Plaintiff filed its motion to approve a notice plan, which was granted in part and denied in part on September 13, 2019. (Dkt. 65, 72.) Class Counsel worked with a class action administrator to disseminate two rounds of notice to the Class, and after the second round of notice, Eurton litigated the case aggressively—including two sets of new, supplemental disclosures that formed the basis for its Motion to Decertify and Motion for Summary Judgment. (*See* Dkt. 120-1, Declaration of Patrick H. Peluso (hereafter "Peluso Decl.") ¶¶ 4-5.) Counsel for the Parties continued to engage in settlement discussions and ultimately attended a mediation with respected mediator Joe Epstein of Conflict Resolution Services. (Peluso Decl. ¶ 5.)

After considerable time and effort, the Parties reached an agreement in principal and thereafter worked to draft the Settlement Agreement, Claim Form, and notices. As set forth

3

below, the Parties' efforts and negotiations have produced settlement terms that constitute fair, reasonable, and adequate relief for the Settlement Class, satisfying the standard for final approval.

### B. Key Terms Of The Settlement

The "Settlement Class" or "Class" is defined as "all individuals and entities who appear on Eurton's Fax List." Eurton has represented that there are 1,498 facsimile numbers on the Fax List, and that this is the complete universe of all persons or businesses who could have received one of Eurton's fax advertisements.

The Settlement provides Class Members who file a claim with substantial monetary relief. Specifically, Eurton must establish a Settlement Fund of $299,600, which will pay all approved claims (at $200 per claim), Settlement Administration Expenses, any Incentive Award to the Class Representative, and any Fee Award. As provided in the agreement, "95% of all funds remaining in the Settlement Fund after payment of Valid Claims, Administration Costs, Fee Award, and Incentive Award, if any, shall revert to Eurton. The Parties further agree that 5% of all funds remaining in the Settlement Fund after payment of Valid Claims, Administration Costs, Fee Award, and Incentive Award, if any, shall be paid to a *cy pres* recipient approved by the Court."

While this Settlement provides for a reversion of funds to the Defendant if any money remains in the Settlement Fund, reverter clauses are not *per se* improper, especially in cases with an uncertain claims rate, *see McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 813 (E.D. Wis. 2009), and where the case does not involve the disgorgement of ill-gotten gains back to consumers. *Nabal v. BJ's Wholesale Club, Inc.*, No. 02-2604, 2002 WL 32349137 (E.D. Pa. Aug. 2, 2002). Further, courts throughout the country have approved similar settlements

4

under the TCPA, and the Tenth Circuit itself has approved class action settlements that feature reverters. *Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167 (10th Cir. 2016) (approving fairness of class action settlement where "[u]nder the settlement agreement all unclaimed compensation reverts to Defendants").

In addition to the $299,600 in cash relief, the Settlement Agreement also requires Eurton to adopt the following prospective measures:

> For a period of twenty-four (24) months following the Effective Date, and subject to changes in applicable law, Eurton agrees not to cause facsimile advertisements to be sent to facsimile machines without first obtaining the prior express permission or invitation of the recipient.

Thus, the Settlement not only compensates Settlement Class Members for Eurton's alleged violations of the Act, but also works to ensure that they and other potential recipients won't receive additional unsolicited faxes.

In exchange for the benefits to the Class, Eurton will receive a full release from the Class of any claims relating to any facsimile advertisements made under the TCPA or any similar state statute or law. The Release includes unknown claims, which are limited to claims that could have been brought in this litigation.

### III.   THE PROPOSED SETTLEMENT CLASS SHOULD BE APPROVED

As set forth in greater detail below, the settlement reached by the Parties is fair, reasonable, and adequate, and fit for final approval—the agreement satisfies the requirements of Rule 23, as well as the considerations applicable in the Tenth Circuit. As discussed below and in turn, the multitude of factors in play as a result of Rule 23(e)(2) and Tenth Circuit precedent weigh in favor of granting final approval to the class settlement reached between Plaintiff and Eurton.

### A. The Proposed Settlement Satisfies Rule 23's Factors As Fundamentally Fair, Reasonable, and Adequate.

Rule 23(e) contains its own list of factors for courts to consider the fairness, reasonableness, and adequacy of a settlement in order to determine whether final approval is suitable:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2); *O'Dowd v. Anthem, Inc.*, No. 14-CV-02787-KLM-NYW, 2019 WL 4279123, at *12 (D. Colo. Sept. 9, 2019). These factors are not intended to replace existing court analysis or factors, but "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *O'Dowd*, 2019 WL 4279123 at *12. Here, each factor weighs in favor of approval.

#### 1. Adequacy of Representation

The first factor identified in Rule 23(e)(2) asks whether "the class representatives and class counsel have adequately represented the class." FED. R. CIV. P. 23(e)(2)(A). Here, both Plaintiff and Class Counsel have adequately represented the class, and their efforts have resulted

6

in a settlement favorable to all members of the Class.

TII has stepped forward, put its name out, and done everything asked of it as a named Plaintiff and representative of the class. Specifically, TII rejected several overtures from the Defendant attempting to settle Plaintiff's claims on an individual basis to the exclusion of the Class. Further, Class Counsel specialize in the litigation of consumer class actions of similar size and complexity, and have litigated and settled numerous TCPA text-messaging class actions. (*See* Dkt. 120-1, Ex. 1.) This experience and familiarity steered Class Counsel's efforts throughout this litigation and was a critical factor in obtaining the relief embodied by the Settlement, as well as ensuring that the Class received the highest quality of representation.

The Parties have been litigating this matter for nearly six years, and given Eurton's rigorous defense, it was only through extensive negotiations and a formal mediation that the Parties were able to reach the underlying Settlement. Faced with the prospect of receiving nothing should Defendant successfully defend itself against the claims, Class Counsel are confident that they and TII have provided adequate representation on behalf of the class in order to achieve the positive outcome in question. As a result, this factor weighs in favor of final approval of the Settlement.

### 2. Arm's-Length Negotiation

The next factor considers whether the proposed settlement was "negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B). The consideration is designed to thwart collusion between the parties—in general, the involvement of a neutral mediator in the achievement of a settlement "virtually insures" that the negotiations were non-collusive and conducted at arm's length. *Bert v. AK Steel Corp.,* 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008); *see also Satchell v. Fed. Express Corp.,* 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator . . . confirms that the settlement is non-collusive.").

In granting preliminary approval to the settlement, the Court previously found "no reason to believe that the settlement was negotiated at anything other than arm's length," noting the degree of discounting in the bottom-line settlement amount and the fact that the Parties have "diligently and vigorously litigated their positions" for the almost six-year duration of this action. (Dkt. 117 at 5.) The case was mediated with Joe Epstein of Conflict Resolution Services, a respected mediator in Denver. (Peluso Decl. ¶ 5.)  Though the mediation session itself was unsuccessful in providing resolution, it provided a critical foundation for the Parties' continued negotiation efforts for the months that followed until the settlement at hand was reached. (*Id.*) The Parties' agreement is not the result of collusion, and the negotiations always stayed at arm's length. As such, this factor also weighs in favor of final approval.

### 3. Adequacy of Relief

Rule 23(e)(2)'s third factor is adequacy of relief, taking into consideration: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of methods of distributing relief and processing class-member claims; and (3) the terms of any proposed attorneys' fees award, including timing of payment. FED. R. CIV. P. 23(e)(2)(C). Each of these considerations weighs in favor of granting final approval.

The Settlement establishes a settlement fund of $299,600 from which all class members who file claims will receive $200 each. Following payment to each class member that filed, the remaining settlement funds will pay for notice and administration expenses, as well as any incentive award to TII and attorneys' fees and costs award to Class Counsel.[1] When granting preliminary approval, the Court expressed concern with the timing for payment of amounts from the settlement fund—if, for example, all 1,498 class members filed claims, the fund would not

---

[1] Concurrent with this motion, Plaintiff has filed a motion for attorneys' fees and incentive award, to be considered by the Court as well.

8

have enough to pay $200 to each class member if other costs and fees were taken out first. However, given that thirteen (13) class members filed claims, the fund will provide for full payment of $200 to each class member, and indeed after all payments are made (including the requested amounts for Class Counsel's attorneys' fees and costs, as well as an incentive award to Plaintiff), the fund will have amounts left over to be paid to a *cy pres* recipient and to otherwise revert to Defendant.

A cash payment of $200 to each qualifying class member is substantial and, in fact, exceeds class member payments available in many TCPA settlements, as follows:

| Case name | Amount per Claimant |
| --- | --- |
| *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) | $20.00 to $40.00 |
| *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 11-md-2261 (S.D. Cal.) | $12.97; or, $17.29 voucher |
| *Kazemi v. Payless Shoesource, Inc.*, 09- cv-5142 (N.D. Cal.) | $25.00 voucher |
| *In re Capital One Telephone Consumer Protection Act Litigation*, 12 C 10064 MDL No. 2416 (N.D. Ill. 2015) | $34.60 |
| *Steinfeld v. Discover Financial Services*, 12-cv-1118 JSW (N.D. Cal.) | $48.69 |
| *Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 13525 (S.D. Cal. 2008) | $70.00 |
| *Malta v. Fed. Home Loan Mortg. Corp.*, 10-cv-1290 BEN (S.D. Cal.) | $84.82 |
| *Wilkins, et al. v. HSBC Bank Nevada, N.A.*, 14 C 190 (N.D. Ill.) | $102.62 |
| *Gutierrez v. Barclays Grp.*, 10-cv-1012 (S.D. Cal.) | $100.00 |
| *Robles v. Lucky Brand Dungarees, Inc.*, 10-cv-4846-MMC (N.D. Cal.) | $100.00 |

9

| | |
|---|---|
| *Kramer v. B2Mobile*, 10-cv-2722 CW (N.D. Cal.) | $100.00 |
| *Lanza v. Upscale Events by Mosaic, LLC*, 13-cv-80093 DMM (S.D. Fla.) | $150.00 |
| *Ellison v. Steven Madden, Ltd.*, 11-cv-5935 (C.D. Cal.) | $150.00 |
| *Bayat v. Bank of the West*, C 13-2376 EMC (N.D. Cal.) | $151.00 |
| *Weinstein v. The Timberland Co., et al.,* 06-cv-454 (N.D. Ill.) | $150.00 |
| *Satterfield v. Simon & Schuster, Inc.*, 06-cv-2893 (N.D. Cal.) | $175.00 |
| *Rojas v. Career Education Corporation*, 10-cv-5260 (N.D. Ill.) | $200.00 |
| *Lozano v. Twentieth Century Fox Film Corp.*, 09-cv-6344 (N.D. Ill.) | $200.00 |

In light of many similar settlements approved at or below the individual payment amount achieved in this case, the instant Settlement more than meets the requirement for adequate relief. *See also In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (discussing range of acceptable TCPA class settlements based on per claimant recovery, approving $34.60 per claiming member); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant). Considering that this monetary amount is in addition to prospective relief that Eurton must implement for a period of 24 months, the settlement results are more than fair, reasonable, and adequate.

The relief is likewise adequate when considering the continued costs, risks, and delays associated with carrying this case through to trial—including the potential for no recovery at all. The Parties have litigated this matter for years, and Eurton would continue to defend its position if no settlement were reached. Further, the Court has noted "substantial evidentiary obstacles that

the class would have to overcome" in order to succeed at trial and obtain recovery. As a result, the settlement representing a discounted recovery is reasonable. *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *11 (N.D. Cal. Apr. 22, 2010) (noting that "'even where the total settlement fund is small,' it may not be 'unreasonable in light of the perils plaintiffs face in obtaining a meaningful recovery on their claims'") (citing *In re Critical Path, Inc.,* No. 01-CV-00551, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002)); *Jaffe v. Morgan Stanley & Co.,* No. 06-CV-3903, 2008 WL 346417, at *9 (N.D. Cal. Feb.7, 2008) ("The settlement amount could undoubtedly be greater, but it is not obviously deficient, and a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial.").

The Parties have engaged a competent settlement administrator, RG2 Claims Administration, to provide notice, create a website that has allowed class members to file their claims, and ultimately disburse payment via check to all participating class members. (Peluso Decl. ¶ 6.) Plaintiff's counsel also undertook exhaustive attempts to locate and contact more than 700 class members to notify them regarding their rights under the settlement. (*Id.* ¶ 13.) These methods of distribution and processing are effective, and—when considered along with the value of the settlement, the risks and costs associated with continuing to trial, and the inability for the timing of a fee payment to negatively impact payment to class members—the relief represented by the underlying settlement is undoubtedly adequate. Accordingly, this factor weighs in favor of final approval.

### 4. Equitable Treatment of Class Members

The fourth and final factor identified in Rule 23 considers whether the settlement "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). In *O'Dowd*, the

11

Court approved a settlement that distributed funds to class members on a *pro rata* calculation applicable to everyone, and it favorably noted that the settlement did not "improperly grant preferential treatment to Plaintiff or segments of the Class," notwithstanding the incentive award to the named plaintiff that was deemed appropriate and reasonable. *O'Dowd*, 2019 WL 4279123 at *14. The same is true in this case. The settlement does not give preferential treatment to any particular class members or sub-classes; rather, each class member that files a claim will receive the same payment of $200. The Court previously recognized that this "ensur[es] that all class members are afforded equal treatment relative to each other." (Dkt. 117 at 3.) While this does not account for differences that may exist, such as the number of faxes that any given class member may have received, Eurton's records are "not currently (nor likely to ever be) so clear" as to enable the Parties or Court to distinguish the number of faxes received and structure payment accordingly. (*Id.* at 3–4.)

While Plaintiff does seek an incentive award in its concurrently-filed Motion for Fees, such is an ordinary recognition of the additional efforts required of a named plaintiff, and it does not render the treatment of class members inequitable. Just as the previous three factors in Rule 23(e), this factor likewise weighs in favor of granting final approval to the settlement.

### B. The Settlement Satisfies The Tenth Circuit's Factors For Consideration Of Final Approval.

Prior to the amendment to Rule 23(e) and the inclusion of the above factors, the Tenth Circuit had established its own factors for determining whether a settlement is fair, reasonable, and adequate, and therefore suitable for final approval. The Tenth Circuit factors are largely consistent with the Rule 23(e)(2) factors above. In assessing whether the settlement is fair, reasonable and adequate, Courts in the Tenth Circuit primarily consider: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and

fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Id.* (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir.1993)); *see also Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Just as the Rule 23(e) factors are satisfied, the Tenth Circuit factors weigh in favor of granting final approval to the settlement achieved in this matter.

### 1. Fair and Honest Negotiation

As set forth in *Jones*, the first factor considered in the Tenth Circuit is "whether the proposed settlement was fairly and honestly negotiated." *Jones*, 741 F.2d at 324. This factor is functionally identical to the second factor of Rule 23(e)—whether the negotiations were non-collusive and conducted at arm's length. *See* FED. R. CIV. P. 23(e)(2)(B). As discussed above, the negotiations here occurred after several years of litigation and with the help of a qualified, neutral mediator assisting the parties. The settlement was not reached at the time of mediation, but only after continued efforts and post-mediation negotiation between the Parties. The Court previously recognized the fair and honest nature of the Parties' negotiations, as they "diligently and vigorously litigated their positions" for years before finally arriving at a settlement, with "no reason" for the Court to believe it was negotiated at anything other than arm's length. (Dkt. 117 at 5.) Just as it did above, this factor weighs in favor of final approval.

### 2. Uncertainty of Outcome and Value of Immediate Recovery

The second and third factors, which inquire into the uncertain outcome and unresolved questions of law and fact in the litigation and whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, also support approval. *See Jones*, 741 F.2d at 324. The analysis of these factors balances the "risk of

13

continued litigation . . . against the certainty and immediacy of recovery from the Settlement." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). When considering the immediate recovery provided by a fair settlement versus the uncertainty of continued litigation, "it has been held proper to take the bird in hand instead of a prospective flock in the bush." *Kim v. Space Pencil, Inc.*, No. 11-CV-03796, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012) (quoting *Lipuma v. Am. Express Co.,* 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005)).

Here, as the Court has previously noted, there are significant evidentiary issues that would present an obstacle to Plaintiff and the Class succeeding at trial. The Court addressed this balancing in considerable detail at the preliminary approval stage:

> A recurring difficulty in this litigation has been the fact that Eurton did not retain any meaningful records of its faxing activities during the period at issue, making it difficult to determine exactly who was sent faxed advertisements, when, and how often.  The class' path to a verdict was also hampered by Eurton's position that, as a matter of company policy, it obtained oral consent from each recipient before sending any faxed advertisements.  As with other business records, Eurton did not retain any records documenting its contacts with potential fax recipients or the precise manner in which it obtained consent, making it difficult to determine whether recipients did indeed give consent to receive the advertisements. . . . [T]here remains a substantial risk that, without careful and exacting structuring of the evidence at trial, individualized issues of fact could take on increased prominence, warranting a mistrial and de-certification of the class.  These and other difficulties compel the conclusion that a verdict for the class at trial was far from a certainty.  In that sense, the $200 guaranteed to each class member by virtue of the settlement reflects a realistic weighing of the potential for class members to recover $500 in statutory damages following trial versus the distinct possibility of no recovery for the class at all.

(Dkt. 117 at 3.) Additionally, the expense, duration and complexity of any protracted litigation certain to occur in the absence of this Settlement would be substantial, and significant labor and expenses would be expended on both sides in advance of trial, let alone any potential appeal that

14

would follow. The potential for de-certification works only to exacerbate the inherent risk of pursuing and litigating the merits of this case, given that "[a] district court may decertify a class at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (citing *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1982)).

In light of these inherent risks and expenses involved in any continued litigation, and the evidentiary obstacles that Plaintiff and the Class would have to overcome in order to obtain a favorable judgment, this factor weighs in favor of approval.

### 3. Judgment of the Parties

The fourth factor considered by the Tenth Circuit—"the judgment of the parties that the settlement is fair and reasonable"—likewise supports final approval. *See O'Dowd*, 2019 WL 4279123 at *12. The Parties were able to reach the underlying settlement with the help of a professional mediator, and after considerable post-mediation negotiations. Though it took years of litigation to achieve a settlement, the agreed-upon relief to the Class Members has been accepted by the Parties because they deem it to be fair and reasonable. Accordingly, this factor also weighs in favor of granting approval to the settlement. Thus, all of the factors identified in Rule 23(e) of the Federal Rules of Civil Procedure, as well as the four primary factors considered by the Tenth Circuit for final approval, weigh in favor of the Court's final approval of the settlement.

### C. The Settlement Satisfies Other Factors Considered By The Tenth Circuit.

In addition to the four factors above, the Tenth Circuit has identified other factors that may be considered in the final approval analysis. Additional factors that may be relevant include: (i) the risk of establishing damages at trial; (ii) the extent of discovery and the current posture of the case; (iii) the range of possible settlement; and (iv) the reaction of class members to the

15

proposed settlement. *O'Dowd*, 2019 WL 4279123 at *12 (quoting *Belote v. Rivet Software, Inc.*, No. 12-cv-02792-WYD-MJW, 2014 WL 3906205, at *2 (D. Colo. Aug. 11, 2014). Of these four additional factors, the risk of establishing damages and range of possible settlements are of limited use here due to their uncertain application. For instance, with regard to damages, Plaintiff and the Class face some difficulty as a result of the lack of records kept by Eurton, but the TCPA provides a basis for statutory damages that would work to ameliorate the risk. Likewise, the range of settlements is largely a factor of speculation—the Parties settled for a particular amount and kind of relief, and any range above or below that is merely theoretical, uncertain to be accepted by either party. Additionally, as noted above, Eurton's records are not clear enough to permit distribution of payments to class members based on the number of fax messages received. (*See* Dkt. 117 at 3–4.) The remaining additional factors, however, weigh in favor of granting final approval to the settlement.

### 1. Extent of Discovery and Current Posture

The Tenth Circuit has identified "the extent of discovery and the current posture of the case" as one additional factor for consideration. *O'Dowd*, 2019 WL 4279123 at *12. While there is no specific stage or quantity of discovery that automatically tips this factor in favor of approval, courts consider whether "the parties have sufficient information to make an informed decision about settlement." *See, e.g.*, *Gardner v. GC Servs., LP*, No. 10CV0997-IEG CAB, 2012 WL 1119534, at *5 (S.D. Cal. Apr. 2, 2012) (quoting *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir. 1998)). Courts often find this factor satisfied even in cases that have not progressed beyond the pleadings stage—ultimately, all that is required is that the parties demonstrate a "clear view of the strengths and weaknesses of their cases." *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-CV-01413-W-AJB, 2008 WL 5458986, at *8 (S.D. Cal. Dec. 10, 2008).

This case has been heavily litigated, including a successful motion for class certification,

16

two rounds of class notice, discovery motions, a motion to decertify the class, motions for summary judgment, and a mediation session. The advanced stage of this litigation has allowed for a considerable amount of discovery, lengthy negotiations, and a holistic understanding of the strengths and weaknesses of the claims and defenses necessary to achieve the instant Settlement. As such, the Parties have sufficient information, and the proceedings are sufficiently advanced to support granting final approval to the settlement.

### 2. Reaction of Class Members

The reaction of Class members to the settlement also favors final approval. The deadline for Class Members to file claims, object to, or opt-out of the Settlement was set for August 8, 2022. All told, no Class Member requested exclusion or objected to the settlement (Peluso Decl. ¶ 13)—the absence of objections provides strong evidence of favorability and demonstrates the strength and reasonableness of the Settlement. *See e.g. Churchill Vill.,* 361 F.3d at 577; *In re Mego Fin. Corp.,* 213 F.3d at 459 (one objection out of a potential class of 5,400); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (zero objections and sixteen opt-outs out of a class of 329 members). While the claims rate was lower than anticipated, (typical take rates range from 3% - 5%)[2], this has had no impact on the benefits that will be provided to Settlement Class Members who chose to file claims. These results, specifically the lack of opposition to the Settlement, favor a finding of reasonableness and warrant final

---

[2] *See Shames,* 2012 WL 5392159, at *14 (approving settlement with 4.9% claims rate and collecting authorities); *see also In re TJX Cos. Retail Sec. Breach Litig.,* 584 F. Supp. 2d 395, 397, 406 (D. Mass. 2008) (approving settlement with rate of slightly more than 3%); *In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 370 F. Supp. 2d 320, 321 (D. Me. 2005) (noting approval 2% rate); *Strong v. BellSouth Telcoms., Inc.,* 173 F.R.D. 167, 169, 172 (W.D. La. 1997) (4.3%); *Forcellati v. Hyland's Inc.*, 2014 WL 1410264, at *6 (C.D. Cal., Apr. 9, 2014); ("[T]he prevailing rule of thumb with respect to consumer class actions is 3-5 percent.").

approval.

## IV. CONCLUSION

As outlined above, each of the factors for consideration of final approval, under Rule 23 itself and Tenth Circuit precedent, favor approval of the underlying settlement. For the foregoing reasons, Plaintiff respectfully requests the Court enter an Order granting Final Approval to the Class Action Settlement achieved in this matter and provide any such further relief as the Court deems reasonable and just.

Dated: September 16, 2022                           Respectfully submitted,

**TECH INSTRUMENTATION INC.**, individually and on behalf of all others similarly situated,

By: /s/ Patrick H. Peluso
One of Plaintiff's Attorneys

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF system on September 16, 2022, to all counsel of record.

/s/ Patrick H. Peluso