IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 16-cv-02981-MSK-KMT

**TECH INSTRUMENTATION INC.**, individually and on behalf of all others similarly situated,

 Plaintiff,

v.

**EURTON ELECTRIC CO. INC.**,

 Defendant.

---

**OPINION AND ORDER CERTIFYING SETTLEMENT CLASS, APPROVING CLASS SETTLEMENT, GRANTING IN PART MOTION FOR ATTORNEY FEES AND INCENTIVE AWARD, AND CLOSING CASE**

---

 **THIS MATTER** comes before the Court pursuant to the Plaintiffs' ("Tech") Motion for Final Approval Of Class Settlement **(# 121)** and Motion for Attorney Fees, Expenses, and Incentive Award **(# 120)**.[1]

 The Court assumes the reader's familiarity with the proceedings to date. In summary, the Plaintiff asserts that the Defendant, Eurton Electric Co. ("Eurton"), violated the Junk Fax Protection Act, 47 U.S.C. § 227, by sending unsolicited advertisements via fax. In May 2018, the Court certified **(# 47)** the case as a class action. The parties reached an agreement to settle the case and the Court granted preliminary approval **(# 117)** of that settlement, provisionally certifying a settlement class. The parties then notified class members of the settlement, solicited

---

[1]  Pursuant to D.C. Colo. L. Civ. R. 7.1(d), the Court finds that it is sufficiently advised of the issues in this matter and need not await the expiration of deadlines for any response or reply briefs.

1

objections, and created a claim structure for class members to make claims. The notice and claims process has now been completed and the parties request that the Court grant give final approval to the settlement. In addition, the Plaintiff requests an award of attorney fees and costs and an incentive award to Tech as named plaintiff.

### A. Approval of the settlement

Fed. R. Civ. P. 23(e)(2) governs the inquiry that the court must make in deciding whether to approve of a settlement that binds class members. The court must conduct a hearing[2] on the proposed settlement and determine that the settlement is "fair, adequate, and reasonable" after considering several factors, including: (i) whether the class representatives and counsel have adequately represented the class; (ii) whether the settlement was negotiated at arm's length; (iii) whether the settlement treats class members equitably relative to each other; and (iv) whether the relief provided is adequate, taking into account the costs, risks, and delay of trial, the effectiveness of distributing relief to the class, and the attorney fees claimed as part of the settlement. *Id.* In *Fager v. CenturyLink Communications, LLC*, 854 F.3d 1167, 1174 (10th Cir. 2016), the court characterized the Rule 26(e)(2) inquiry as examining: "(i) whether the proposed settlement was fairly and honestly negotiated; (ii) whether serious questions of law and fact

---

[2] Rule 23(e) contains no explicit requirement that the "hearing" must be conducted in-person. Given the modest response rate from class members claiming a share of the settlement, the absence of any objections from class members to the terms of the settlement despite notice of the settlement inviting such objections, and the thoroughness of the Plaintiffs' briefing on the remaining issues, this Court finds that convening an in-person hearing would constitute an inefficient use of the Court's and the parties' resources and that the matters to be resolved are adequately presented for consideration and resolution on the papers. Accordingly, the Court conducts the "fairness hearing" required by Rule 23(e) on the written record herein. *See* Newberg On Class Actions, § 13.42 ("The district court need not give every objector the opportunity to appear personally, as long as they have the opportunity to object in some manner and have their concerns considered by the court")

exist, placing the ultimate outcome of the litigation in doubt; (iii) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (iv) the judgment of the parties that the settlement is fair and reasonable."

The terms of the parties settlement are as follows. Eurton agreed to establish a "settlement fund" of $299,600. That figure was derived from multiplying an anticipated payment of $200 per class member by a total of 1,498 class members. Class members were notified of the litigation, the settlement, and their entitlement to a recovery and were directed to a website that contained a simple claim form. Those class members who completed and returned claim forms (and were deemed eligible to participate) would receive a single $200 payment. In addition, the settlement fund would be used to pay taxes, claim administration expenses and other costs, an anticipated attorney fee award to the Plaintiff's counsel (expressly limited to no more than 1/3 of the settlement fund, approximately $100,000), and potentially an incentive award to Tech of up to $5,000. The terms of the settlement provide that, to the extent that money remains in the settlement fund thereafter, 95% of those funds will revert back to Eurton, and the remaining 5% will be payable to a charitable *cy pres* recipient selected by the Court.

This Court preliminarily approved the settlement **(#117)** and the Plaintiff sent notice of the proposed settlement to all identified class members. According to the affidavit of the Settlement Administrator **(#120-3)**, of the 1,498 notices mailed to class members, 1,303 appeared to reach their destination and 195 were declared undeliverable despite the Administrator's subsequent efforts to locate the recipients. A total of 13 class members completed claim forms, amounting to a total payment of $2,600 to class members. Although the notice informed class members of their right to opt-out of the class or lodge objections to the settlement's terms, no class member requested exclusion or filed any objection.

The Plaintiff now requests final approval of the settlement. In addition, the Plaintiff moves **(# 120)** for an award of attorney fees in the amount of $99,866.67 (reflecting 1/3 of the total settlement fund); an award of costs and expenses to counsel of $3,467.76; an incentive award to the Plaintiff of $5,000; a total of $25,879 in costs and fees for the Settlement Administrator. With the $2,600 in class member claims, the total amount of payments from the settlement fund to any entity as requested by the Plaintiff is $136,813.43. Subtracted from the $299,600 total settlement fund, that leaves $162,786.57 that will go undistributed. Per the terms of the settlement, 95% of this sum, or $154,647.24, will revert to Eurton. The remaining 5%, or $8,139.33, is set aside for a *cy pres* payment to a charitable organization.

In this Court's May 24, 2022 Order preliminarily approving the settlement, the Court made several findings regarding the fairness and adequacy of the settlement, and the Court now incorporates those findings by reference in finally approving the settlement. In summary, this was a hard-fought litigation between the parties with several contested substantive motions, most of which required considerable analysis and review by the Court. *See e.g.* Docket #36 (Motion for Class Certification), #65 (Motion for Dissemination of Class Notice), #90 (Motion to Decertify Class), #103 (Motion for Summary Judgment). From its outset, the case was beset by a number of factual peculiarities that left both the outcome of the litigation on the merits and the likely amount of a potential judgment in substantial doubt. Among those factual difficulties are: (i) the time frame over which the challenged conduct occurred (much of it dating as far back as 2016), the fact that many of the class members were business entities subject to employee turnover, and the relatively minor inconvenience created by unwanted faxes, combining to make it difficult to locate witnesses who could recall receiving Eurton faxes and reliably testify as to whether they may have given prior consent for such transmissions; (ii) lack of any meaningful

recordkeeping by Eurton, making it difficult to identify which class members even received faxes and whether and how those recipients may have given prior consent; (iii) a lack of meaningful evidence as to how Eurton allegedly secured prior consent to fax class members (from either Eurton witnesses or a meaningful number of class members); and (iv) evidence that some potential class members did indeed consent to receive faxes.  The Court is satisfied that the outcome of this case was in substantial doubt for both sides if the parties proceeded to trial and that trial (and potential appeals) would significantly delay any class member's ultimate receipt of any relief.  Although Eurton's potential monetary exposure to any given class member was likely to be low – few class members would be able to demonstrate actual damages, and thus, most would receive statutory damages of up to $500 per incident, 47 U.S.C. §227(b)(3)(B)[3] – the large number of potential class members (nearly 1,500) created a risk of a substantial monetary judgment against Eurton that also favored a negotiated settlement.  In light of the considerable risk that both sides faced were the case to proceed to trial, the Court finds that the $200 per class member relief secured by the settlement reflects a fair balance of the maximum statutory recovery of $500, multiplied by a chance of success on the merits of no more than 50% (and perhaps considerably less), multiplied by the amount of delay in recovery should the case proceed through trial and potential appeals.  Moreover, the Court finds that the negotiated settlement delivers valuable relief to class members whose actual losses are little more than inconvenience.

---

[3]      As the Court previously noted, the statute contemplates the possibility of treble statutory damages – up to $1,500 -- for willful or knowing violations of the Act by Eurton.  47 U.S.C. §227(b)(3).  For the same reasons that there is considerable uncertainty as to the substantive merits of Tech's claims generally, there is also considerable uncertainty as to whether Tech could establish that Eurton's violations were willful or knowing.  Thus, the Court will assume that $500, rather than $1,500, is the maximum damage award any class member could reasonably expect to recover.

Thus, the Court finds that under Rule 23(e)(2)(A), Tech and its counsel have adequately represented the class; that under Rule 23(e)(2)(B), the settlement was negotiated at arms' length; and under Rule 23(e)(2)(C)(i), the relief provided by the settlement is adequate taking into account the costs and risks of trial. For the reasons noted in the Court's Order preliminarily approving the settlement, the Court finds that the notice procedures used to contact the class members and distribute relief is the best that can be employed under the circumstances, satisfying Rule 23(e)(2)(C)(ii). Although the settlement does not provide for class members who received more than one unwanted fax to receive higher awards, the aforementioned lack of recordkeeping and fading of memories make it difficult to confirm which class members might be entitled to multiple awards. In this sense, then, the Court finds that under Rule 23(e)(2)(D), the settlement treats class members equitably to one another, as all class members are eligible to receive the same payment.

That leaves the Court to address whether the payment of attorney fees to the Tech's counsel (and any incentive award to Tech) affect the adequacy of the settlement under Rule 23(e)(2)(C)(iii). The Court notes that although the fees and incentive award sought by Tech are payable from the settlement fund, the payment of those amounts in full as requested would not compromise any class member's entitlement to full payment of their individual claim. (Put differently, the total amount of the settlement fund exceeds the total of all claims from class members plus all of the fees and costs requested by Tech.)  The fees sought by Tech's counsel are certainly disproportionate to the total amount of the class recovery here – counsel's $100,000 fee award is nearly 40 times the total of $2,600 that will be paid out to class members – but that result is primarily attributable to the low number of class member claim forms returned. Proponents of class action reform could rightly point to this case as one where it appears that

receipt of attorney fees was the primary motivation for bringing the case, with recompense to injured parties being a distant second. But it appears to this Court that the low response rate from class members is largely a function of some of the factual issues discussed above, especially the long lapse of time between the unsolicited faxes and the settlement, resulting in few class members who can honestly claim (under the penalty of perjury) to recall receiving specific unsolicited faxes years ago.[4] This might be due to a predictive error on Tech's part about the number of class members actually affected by illegal conduct by Eurton, but it does not reflect an abuse of the legal system. Indeed, this Court previously expressed its own "concern" that, given the ability of each class member to receive $200 by simply filling out a simple form, the number of claimants might be so high as to exhaust the settlement pool before attorney fees, expenses, and other costs could be fully awarded. *See* Docket #117 at 6-7. In such circumstances, the Court finds that the fees claimed by Tech's counsel, although not proportional to the payments to class members, do not prevent a conclusion that the settlement as a whole is fair, reasonable, and adequate under Rule 23(e)(2).

Although not directly addressed in Tech's motion seeking approval of the settlement, the final issue for the Court on that motion is the question of addressing the *cy pres* provision of the settlement agreement and, if warranted, approving the recipients for the portion of the unused settlement fund -- $8,139.33, by the Court's calculation (although the Court's determination below regarding Tech's incentive award changes the calculations somewhat -- that does not

---

[4] The Court does not discount another possibility: that Eurton's efforts to ensure that faxes were only sent to those who granted prior permission for them were largely successful and that few class members actually received <u>unsolicited</u> faxes. This is a circumstance in which better recordkeeping from Eurton could have significantly altered the landscape of this case much earlier in the proceedings.

7

revert back to Eurton.[5]  In the class action context, *cy pres* "refers to the practice of distributing settlement funds not amenable to individual claims or meaningful *pro rata* distribution to nonprofit organizations whose work is determined to indirectly benefit class members." *See Frank v. Gaos*, 139 S.Ct. 1041, 1045 (2019).   As with all other aspects of the settlement, this Court must examine the *cy pres* provision for fairness, reasonableness, and adequacy.  *Allred v. ReconTrust Co.*, 787 Fed.Appx. 994, 996 (10th Cir. 2019).  Typically, the *cy pres* award should involve "a charitable purpose reasonably approximating the interests pursued by the class," and

---

[5]     No objections have been raised to vast majority of the unused settlement fund reverting back to Eurton.  The Court has examined that reverter provision (sometimes referred to as a "kicker" provision) mindful of the discussion in *In re Samsung Top-Load Washing Machine Marketing, Sales Practices, and Products Liability Litigation*, 997 F.3d 1077, 1089-90 (10th Cir. 2021). In *Samsung,* the 10th Circuit expressed wariness about class action settlement agreements that contained <u>both</u> a "kicker" provision (reverting unspent settlement funds back to the defendant) and a "clear sailing" provision (in which the defendant agreed not to contest the plaintiff's attorney fee request).  *Samsung* explains that settlements containing both provisions should be subjected to "heightened scrutiny" for potential collusion, as such provisions tend to disproportionately benefit the defendant and the class counsel at the expense of class members.  The agreement here technically does not fall within *Samsung*, as the Court's review of the parties' settlement agreement does not reveal the existence of any "clear sailing" provision (although the Court understands that Eurton does not object to Tech's fee motion).  Nevertheless, the Court has considered the reverter provision mindful of the cautions expressed in *Samsung*.

Despite that heightened scrutiny, the Court finds that a reverter is appropriate here.  The settlement amount was calculated on the assumption that <u>every</u> class member received an unsolicited fax, but there is evidence in the record that some class members had indeed given Eurton prior permission to send faxed advertisements.  Allowing a portion of the unused settlement fund to revert back to Eurton reflects the conclusion that some portion of the class members who did not submit claims were willing fax recipients and that Eurton did not violate the Act when communicating with them.  Thus, funds allocated for compensating these non-claiming class members should properly revert back to Eurton.  Moreover, the Court is further persuaded that there was no collusion between Eurton and Tech's counsel by the fact that the $200 award to aggrieved class members reflects a considerable recovery in light of the difficulties in proof in this case.  The low number of actual claimants under the settlement is concerning, but the Court believes that any one of several reasonable explanations for the low participation rate, some discussed herein, are more plausible explanations for that situation than is collusion.

the *cy pres* provision should "account[ ] for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Id.*, *citing cases*.

The settlement agreement proposes two possible *cy pres* recipients: the Colorado Legal Aid Foundation and Bet Tzedek Legal Services, located in Los Angeles, California. Neither entity necessarily focuses on the particular issues raised in this lawsuit – namely, preventing the sending of unsolicited fax advertising – but the Court is not independently aware of any charitable entity whose mission is so narrow and specific. The missions of the identified entities is to provide general civil legal advice to indigent persons. Thus, at least theoretically, these agencies might be called upon to provide assistance to an indigent person who has received nuisance "junk faxes". Indeed, a focus on *pro bono* legal services is relevant here because the limited award of statutory damages under the Act make it unlikely that paid counsel would be willing to take on individual cases such as this. Given the lack of an immediately apparent recipient that would be a more appropriate recipient for these funds, this Court finds that the *cy pres* provision identifying the two named entities is fair, reasonable, and adequate, and the Court approves that portion of the settlement.

For these reasons, the Court grants Tech's request for final approval of the settlement. The provisional settlement class is certified as the final settlement class and the settlement is approved.

**B.  Attorney fees and other awards from settlement fund**

Tech requests that the Court approve payment of various sums from the settlement fund for various purposes. The Court addresses each request as follows.

As to the costs and expenses incurred by the Settlement Administrator for providing notice of the settlement to class members and proceeding claims, Tech requests payment in the

9

amount of $26,879.  Having reviewed the Administrator's invoices **(#120-2)** for the services provided, the Court is satisfied that the services provided and costs charged are reasonable and the Court approves this request.

Turning next to the question of attorney fees[6] and costs, Tech's counsel requests a fee award of $99,866.67 – a figure calculated as 33% of the total amount of the settlement fund -- plus costs of $3,467.46.  Fed. R. Civ. P. 23(h) provides that the court may award attorney fees "that are authorized by law or the parties' agreement."

Here, the Act does not specifically provide for an award of attorney fees, but the parties' settlement agreement does.  Ordinarily, attorney fee awards in class action suits involving common fund recoveries are premised on the notion that all class members benefitted from the attorneys' efforts, and therefore, it is appropriate for the class to proportionately share the costs for the attorneys' efforts.  *See generally Rosenbaum v. MacAllister*, 64 F.3d 1439, 1444 (10th Cir. 1995).  *Rosenbaum* explains that "where there is a common fund created by a settlement, courts have applied one of two methods of determining reasonable attorney's fee awards: by a percentage of the fund, or by the lodestar method developed in the statutory fee shifting cases." 64 F.3d at 1445.  *Rosenbaum* expresses "a preference for the percentage of the fund method" in common fund cases such as this one.  *Id.*  Therefore, this Court applies that method.

---

[6]   Although Tech's Motion for Attorney Fees was filed at the same time as the motion for approval of the settlement, and thus, class members have not had an opportunity to object to the specifics of that motion, the Court finds that class members were given notice that Tech's counsel intended to seek a fee award of 1/3 of the settlement amount (approximately $100,000), and Tech's current request is entirely consistent with that representation.  No class member filed objections to that anticipated request for fees and the Court discerns no harm that results to class members from entertaining the specific fee request at this time.  *See Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1254-55 (11th Cir. 2020).

In "percentage of the fund" cases, the court considers the reasonableness of the fee request by examining twelve factors identified in *Johnson v. Georgia Highway Express*, *Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974): (i) the time and labor involved; (ii) the novelty and difficulty of the questions; (iii) the skill requisite to perform the legal services properly; (iv) the preclusion of other employment by the attorney due to acceptance of the case; (v) the customary fee; (vi) any prearranged fee; (vii) the time limitations imposed by the client or circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation, and ability of the attorneys; (x) the undesirability of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. *See Brown v. Phillips Petroleum Corp.*, 838 F.3d 451, 454 (10th Cir. 1988). The Court need not exhaustively address each factor, as the Court is persuaded that the most relevant and material factors tip in favor of granting Tech's counsel's request.

The Court's inquiry is primarily driven by the second and eighth factors: the degree of difficulty involved in the case and the results obtained. Here, Tech's counsel obtained substantially favorable results for class members in a case that was bedeviled by significant difficulties in proof. As noted, the recovery for most class members under the Act would have been the statutory maximum of $500. In that sense, a recovery of $200 per class member under the settlement reflects only a modest discount on the best-case scenario of prevailing and trial and receiving a favorable ruling within the range of possible statutory damage awards. In addition, the proof difficulties attendant to this case likely would have reduced the chances of a successful outcome for class members. The record before the Court contains evidence that Eurton's employees were trained to seek prior consent from recipients before sending faxes, and thus, instances in which unsolicited faxes were sent would be limited in number and the result of

11

employee error, not willful acts by Eurton. It is unclear from the record what evidence – if any – Tech intended to present (beyond its own experiences with Eurton) on behalf of the class to rebut these facts. Coupled with other difficulties discussed above, this case presented a difficult set of facts for Tech, warranting the conclusion that the chances of success were low and that a settlement that ensured that class members would receive roughly half of the maximum statutory award reflects a considerable benefit to affected class members. Thus, these factors favor a meaningful attorney fee award under the *Johnson* factors. The remaining factors are of lesser weight, but many also point in favor of a suitable fee award.

The Court finds that the $99,866.67 fee request by Tech's counsel (or, more specifically, a fee award reflecting 33% of the settlement fund) is reasonable under these circumstances. As noted, the litigation was lengthy and hard-fought, with several contested substantive motions. A 33% fee is common both in ordinary contingent fee litigation in this district and in common fund cases. *See Aguilar v. Pepper Asian, Inc.*, 2022 WL 408237 (D.Colo. Feb. 10, 2022), *citing Faulker v. Ensign United States Drilling, Inc.*, 2020 WL 550592 (D.Colo. Feb. 4, 2020). In the Court's experience, a roughly $100,000 fee award would be consistent with the level of effort expended by Tech's counsel in these circumstances.

Tech has submitted its own counsel's affidavit that reports a total of 505 hours incurred in this case by four attorneys and one law clerk, with the majority of hours billed by attorneys at hourly rates between $420 and $520. The total amount billed by Tech's counsel in this case is $217,802.50, and thus, the request for a fee award of roughly $100,000 reflects less than half of the hours actually billed. Because the Court conducts a "percentage of the fund" analysis rather than a lodestar analysis, it is not necessary to closely scrutinize counsel's rates and hours. However, when considering the 50+% discount that the requested fee reflects from the amounts

actually billed, the Court is content that a lodestar analysis would confirm that the amount sought by Tech's counsel is reasonable.

Accordingly, the Court grants Tech's counsel's request for a fee award of 33% of the settlement fund, being $99,866.67.

As to Tech's counsel's request for an award of $3,467.46 in costs, the only evidence of this figure is found in Mr. Peluso's affidavit **(#120-1)**, which notes that these otherwise unenumerated expenses reflect "the cost of mediation, filing fees, and service fees." The Court is somewhat troubled by the absence of any documentation of these fees, but the amount requested is otherwise consistent with the Court's experience and established evidence in the record. As the Plaintiff, Tech necessary paid a filing fee of $400 **(#1)**. It is well-documented that the parties attempted mediation in this case and the Court is aware that a party's 50% share of mediation costs (the most common method of allocating costs where neither party claims indigence) will often amount to several thousand dollars. In such circumstances, the Court finds that the request for $3,467.46 in out-of-pocket costs paid by Tech or its counsel is reasonable and the Court allows recoupment of that sum from the settlement fund.

Finally, the Court turns to Tech's request for a $5,000 incentive payment from the settlement fund. As *Chieftain* explains, "such awards are not uncommon." 888 F.3d at 464. Incentive awards are usually premised upon the risk or burden incurred by the named plaintiff in bringing the litigation or to compensate the named plaintiff for services rendered during the litigation. *Id.* at 467-68. As in *Chieftain*, Tech makes no meaningful argument that an incentive award is justified based on any risks or non-litigation burdens it incurred in deciding to bring this case, and thus, the Court turns to what, if any, incentive award is appropriate to compensate Tech for the services it rendered to the class during the litigation. Those tasks typically involve

"monitoring class counsel, being deposed by opposing counsel, keeping informed of the progress of the litigation, and serving as a client for purposes of approving any proposed settlement with the defendant." *Chieftain*, 888 F.3d at 468.  However, the Court is mindful that an incentive award should not be arbitrarily selected or "untethered to any service or value the lead plaintiff will provide to the class." *Chieftain*, 888 F.3d at 468, *quoting Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 960 (9th Cir. 2009).

In *Chieftain*, the 10th Circuit ultimately vacated the incentive award granted to the named plaintiff, finding that the record did not establish what services the recipient provided to the class.  It noted that courts should examine the "reasonable time expended on services rendered [by the incentive recipient] that were helpful to the litigation and did not duplicate what could be performed less expensively by counsel," and instructed that such matters "must be supported by sufficient evidence in the record," such as "affidavits submitted by class counsel and/or the class representatives, through which these persons testify to the particular services performed, the risks encountered, and any other facts pertinent to the award." 888 F.3d at 469.  It observed that the record before the district court on this issue consisted of counsel "sp[eaking] broadly about the tasks Mr. Abernathy had performed in the case," and that "[w]hen discussing the time Mr. Abernathy had expended on the case, counsel did not provide detailed contemporaneous records but offered only approximations and generalities." *Id.*  Finding this showing to be insufficient to justify an incentive award, the 10th Circuit reversed the award granted by the district court and remanded the case for further factfinding.

Here, Tech's request for a fee award is supported by even less evidence than in *Chieftain*. The bulk of the argument regarding an incentive award in Tech's motion is focused on the fact that, quantitatively, the $5,000 requested by Tech is similar to incentive awards approved in

14

other cases. Tech does not offer any estimate – even a rough one – of the number of hours it expended on the pursuit of this litigation, and the discussion of the tasks it performed are as generalized, if not more so, as those in *Chieftain*. Tech motion states that only that it "stepped forward, put its name out, and [did] everything asked of it as a named Plaintiff and representative of the class, including rejecting attempts by Defendant to settle Plaintiff's claims on an individual basis to the exclusion of the Class," and that it "has been a dedicated advocate for the interests of the Class and actively participated in discussions with Class Counsel concerning the litigation and settlement strategy." On this record, then, the Court cannot conclude that a $5,000 incentive award is appropriate.

     Nevertheless, the Court recognizes that Tech necessarily provided some services to the class. Among other things, the record reflects that it retained evidence of unsolicited faxes sent to it from Eurton and made a determination as to whether to accept or reject a settlement offer, among other tasks. Thus, the Court is satisfied that a small incentive award is appropriate for the few tasks that Tech clearly performed. Fixing a value for those tasks is difficult given the lack of a meaningful record on this point. Instead, the Court approaches the question from a different angle. According to the Complaint, Tech received two unsolicited faxes from Eurton, one on June 6, 2016, and a second on June 16, 2016. *Docket* #1, ¶12-13; *see also* Docket #1-1. Under the Act, Tech would be entitled to an award of statutory damages of up to $500 for <u>each</u> of the two faxes. 47 U.S.C. § 277(b)(3)(B). However, under the terms of the settlement, each class member, including Eurton, was entitled to a single payment regardless of how many unsolicited faxes they received from Eurton. It is plausible that, were it acting in its own individual interests, Tech may have attempted to accomplish a settlement that rewarded recipients based on the number of faxes received, but negotiations forced Tech to accept a fixed per capita settlement

15

instead.  In such circumstances, Tech forfeited its own individual right to recover damages for two faxes in order to secure a settlement for the entire class that rewarded Tech for only a single violation.  In these circumstances, this Court can find that Tech indeed suffered a burden from its status as named representative, justifying an incentive award the compensate it.  Accordingly, the Court finds that an incentive award of $500 – the maximum statutory award that Tech could have obtained for the second fax – fully compensates Tech for sublimating its own interests for the benefit of the class.  Thus, the Court grants Tech an incentive award of $500.

For the foregoing reasons, the Court **GRANTS** Tech's Motion for Final Approval of the Settlement **(# 121)**.  The Court **GRANTS IN PART AND DENIES IN PART** Tech's Motion for Attorney Fees, Expenses, and Incentive Award **(#120)** as set forth herein.  All matters in this litigation having been resolved, the Clerk of the Court shall close this case.

Dated this 23rd day of September, 2022.

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
Senior United States District Judge